UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————————

JERRY MASSEY,

                                        Petitioner,

                                                                9:18-CV-483
v.                                                              (BKS/TWD)

H. GRAHAM,

                                        Respondent.

————————————————————————————

APPEARANCES:                              OF COUNSEL:

JERRY MASSEY
Petitioner, *pro se*
15-B-1907
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13201

HON. LETITIA A. JAMES                     MICHELLE ELAINE MAEROV, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Counsel for Respondent
28 Liberty Street
New York, New York 10005

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        Jerry Massey ("Massey" or "Petitioner") filed a petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254, to challenge his 2014 conviction following a guilty plea in the

State of New York Supreme Court, County of Onondaga (the "Trial Court"), of robbery in the

second degree.  (Dkt. No. 1 at 1.[1])  Petitioner asserts he is entitled to relief because he should

———————————————

[1] Citations to page numbers in the filings refer to the pagination CM/ECF automatically
generates.

have been afforded the opportunity to withdraw his guilty plea and he was denied the effective assistance of counsel during his plea allocution.  *Id.* at 5, 7; *see also* Dkt. No. 10.  Harold Graham, through the State of New York, (the "State" or "Respondent") opposes Massey's petition.  (Dkt. Nos. 6, 7.)  For the reasons set forth below, this Court recommends denying Petitioner's request for a writ of habeas corpus in its entirety and declining to issue a certificate of appealability.

## I.   BACKGROUND

An Onondaga County grand jury charged Petitioner with second degree burglary.  (Dkt. No. 8-1 at 145.)  According to the indictment, Petitioner and two other men broke into a private home and stole marijuana.  *Id.*  On December 15, 2014, Petitioner pled guilty to second degree burglary.  (Dkt. No. 7-1.)  During the colloquy, the Trial Court described the terms of the guilty plea as Petitioner "capping off his exposure as no worse than nine years."  *Id.* at 4.  The district attorney representing the state noted the minimum sentence he could receive based on his plea was five years and Petitioner's attorney—Mr. Hennessy—was going to present equities to the District Attorney's Office and they would recommend a sentence later between five and nine years.  *Id.* at 3-4.

During the plea allocution, Petitioner said he understood the terms of his plea agreement and knew the consequences of his guilty plea.  *Id.* at 4-8.  Petitioner then admitted the relevant facts in the indictment and pled guilty to the crime of burglary in the second degree in violation of Penal Law 140.25.  *Id.* at 8.  The Trial Court set a tentative date for sentencing on February 13, 2015.  *Id.* at 10.

In February, at the sentencing hearing, the Trial Court discussed a letter it received from Petitioner that the Trial Court construed as a motion to withdraw his guilty plea.  *Id.* at 13.  The

Trial Court adjourned the sentencing at that time to February 17, 2015, because Mr. Hennessy was not present. *Id*. at 14.[2] Petitioner was held without bail after this hearing. *Id*. On February 27, 2015, the Trial Court considered Petitioner's motion to withdraw his guilty plea. At this hearing, Mr. Baska represented Petitioner. *Id*. at 21. Mr. Baska told the Trial Court that they intended to withdraw Petitioner's *pro se* motion to withdraw the guilty plea. *Id*. at 22. The proceedings were then adjourned, and Petitioner was released on his own recognizance. *Id*. at 23. On April 1, 2015, a hearing was scheduled but Petitioner did not appear. Thus, the presiding judge issued a warrant for his arrest. *Id*. at 25.

On June 12, 2015, Petitioner appeared in court after being arrested on other charges. *Id*. at 28. Prior to this hearing, Petitioner (through counsel) submitted a N.Y. C.P.L. § 330 motion contending the Trial Court erred in not letting him withdraw his guilty plea. *Id*. The motion included an affidavit from Mr. Hennessy, Petitioner's previous counsel, asserting Petitioner accepted the original plea agreement "with the understanding that if he did enough work with investigators, he would be allowed to withdraw his plea." *Id*. at 29. Mr. Hennessy also alleged Petitioner believed his sentencing would be postponed indefinitely if he was willing to work with investigators and that, *though no promises were made*, he could get a better disposition based on his cooperation. *Id*.

The Trial Court rejected Petitioner's arguments. *Id*. at 29. Specifically, the Trial Court noted Petitioner failed to holdup his end of the bargain in the plea deal and cooperate with law enforcement. *Id*. at 30. Mr. Baska, Petitioner's attorney, argued Petitioner lost trust in the court system when he was held in custody after a hearing where his attorney failed to show and that

---

[2] Petitioner returned to court on February 17, 2015, with attorney Robert Baska representing him but the Trial Court adjourned the hearing so Mr. Hennessy could be present. (Dkt. No. 7-1 at 18.)

was one reason why he did not continue to aid investigators. *Id*. at 31. Mr. Baska also argued Petitioner had hoped he could plead guilty to a crime that would not require any prison time at all. *Id*. at 32. Mr. Baska argued that Petitioner's guilty plea to second degree burglary was a "legal fiction" so he could get a better deal from the prosecution in the future after cooperating. *Id*. at 32. In other words, he argued Petitioner did not believe his guilty plea would result in a sentence for the crime he *admitted* to committing but would rather facilitate further cooperation with the prosecution who would then ultimately allow him to withdraw his plea.

The Assistant District Attorney ("ADA") for the case, Mr. Moran, agreed that the original understanding of the guilty plea was that, had Petitioner "gone above and beyond and solved four homicides, he could have been allowed to withdraw his plea and got a non-jail sentence." *Id*. at 36. Thus, Mr. Moran suggested that Petitioner's guilty plea was knowing because it provided him an opportunity to get a lesser sentence but Petitioner "chose to stop cooperating." *Id*. Mr. Moran also noted there were no promises made to allow Petitioner to withdraw his guilty plea automatically at some future date. *Id*. Rather, the agreement contemplated that the People *might* consent to a withdrawal of his original plea *if* Petitioner cooperated with investigators. *Id*. at 44-45.

Ultimately, the Trial Court sentenced Petitioner to nine years with five years of post-release supervision. *Id*. at 46.

Petitioner appealed, arguing, among other things, that he should have been afforded an opportunity to withdraw his guilty plea and that his counsel was ineffective. (Dkt. No. 8-1.) The Appellate Division, Fourth Department, rejected Petitioner's claims. *People v. Massey*, 149 A.D.3d 1524 (4th Dept. 2017) (*Massey I*), *amended on reargument*, 151 A.D.3d 1969 (*Massey II*) (4th Dept. 2017). First, the Fourth Department held that the record established Petitioner

understood the consequences of his guilty plea and that it was not an abuse of discretion to refuse

to deny the motion to withdraw the guilty plea. *Massey II*, 151 A.D.3d at 1969.  To that end, the

Fourth Department noted "[a]lthough [Petitioner] alleges that the prosecutor promised him the

opportunity to withdraw his guilty plea if he provided information concerning other crimes, the

record establishes that [he] refused to cooperate with the prosecutor in that regard.  Furthermore,

the minutes of the plea colloquy belie [Petitioner's] belated assertions of innocence and thus we

conclude that the court did not abuse its discretion in denying his motion without a hearing." *Id*.

Further, the Fourth Department held Petitioner's ineffective assistance claim was meritless

because he received an advantageous plea. *Massey I*, 149 A.D.3d at 1525 (citation omitted).

Petitioner's application to appeal to the New York Court of Appeals was denied. (Dkt. No. 8-1

at 128.)

In this action, Petitioner renews his argument that the Trial Court abused its discretion in

refusing to allow him to withdraw his guilty plea. (Dkt. No. 1.)  Specifically, Petitioner argues

his guilty plea was not entered "knowingly" because there were other promises the prosecution

made that were not placed on the record when he pleaded guilty. *Id*. at 17.  To that end,

Petitioner argues the ADA agreed the plea deal contemplated that, had Petitioner "gone above

and beyond and solved four homicides he could have been allowed to withdraw his plea and get

a non-jail sentence." *Id*.  In sum, Plaintiff argues his guilty plea should have been allowed to be

withdrawn because the plea allocution did not "encompass the complete understanding of the

parties." *Id*. at 20.

With respect to his claim for ineffective assistance of counsel, Petitioner argues Mr.

Hennessy failed to clarify the record at his plea allocution regarding the lowest possible

sentencing exposure. *Id*. at 20, 28.  According to Petitioner, Mr. Hennessy should have placed it

on the record that it was possible that Petitioner could withdraw the plea agreement if he worked with investigators. *Id*. To that end, Mr. Hennessy asserted in an affidavit that "[w]hen Mr. Massey accepted the plea, it was with the understanding that if he did enough work with investigators from the Sheriff's Department he would be allowed to withdraw his plea[.]" (Dkt. No. 1-1 at 16.) Mr. Hennessy also averred that Petitioner understood that, as long as the investigators were willing to work with him, his sentencing would be postponed so he could earn a better disposition. *Id*. Thus, Petitioner argues Mr. Hennessy was ineffective because he led Petitioner to believe that he could have received a lesser prison sentence if he cooperated with investigators. (Dkt. No. 1 at 26.) Petitioner contends Mr. Hennessy was also ineffective because he failed to file a motion to withdraw his guilty plea on Petitioner's behalf and then failed to show up to court on several occasions to represent Petitioner. *Id*. at 29.

Included in his petition are several exhibits including a text message conversation between Petitioner and Mr. Hennessy where Petitioner asks Mr. Hennessy to file a motion to withdraw his guilty plea. (Dkt. No. 1-1 at 1-2.) Petitioner has also enclosed his *pro se* motion to withdraw his guilty plea, *id*. at 3-4, and a letter he sent to the Trial Court for support. *Id*. at 5-6. In addition, Petitioner included a letter from the Attorney Grievance Committee indicating that it issued Mr. Hennessy a Letter of Caution related to his handling of the guilty plea. *Id*. at 8.

## II.    DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution . . . of the United States." 28 U.S.C. § 2254(a). However, before a federal court can consider a state prisoner's habeas application, the applicant must exhaust his state remedies. *Id*. § 2254(b)(1)(A). "[E]xhaustion of state remedies requires that [a] petitioner

fairly present federal claims to the state courts in order to give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (*citing Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and alterations omitted)); *see also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000). The exhaustion requirement is animated by "notions of comity between the federal and [s]tate judicial systems." *Strogov v. Attorney Gen. of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999); *see also Davila v. Davis*, ⸺ U.S. ⸺, 137 S. Ct. 2058, 2064 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'") (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). Though a state prisoner is not required to cite "chapter and verse of the Constitution" to satisfy this requirement, *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir.1982) (en banc), he must present his challenge in terms that are "likely to alert the [state] court[s] to the claim's federal nature." *Lurie*, 228 F.3d at 124 (*quoting Daye*, 696 F.2d at 192). The Second Circuit has instructed that a petitioner may satisfy the fair presentation requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194.

Here, there is no dispute that Petitioner raised the same facts in his state court actions as he now raises in his habeas petition. However, Respondent argues that Petitioner failed to present either of his claims as a federal constitutional claim and has therefore failed to exhaust his administrative remedies. (Dkt. No. 6-1.) Therefore, before proceeding to considering the

merits of Massey's petition, the Court must determine whether his legal arguments put the state

courts "on notice" of the federal nature of his claim.

With respect to his ineffective assistance of counsel claim, the state courts evidently

understood this claim as a challenge pursuant to the New York law.  Applying the *Daye* factors,

this Court recommends finding that no federal claim was fairly presented to the state courts.  His

challenge was consistently expressed as an argument raising the New York ineffective assistance

of counsel standards.  Petitioner did not invoke "pertinent federal cases employing constitutional

analysis," nor did he seek support for his contention from "state cases employing constitutional

analysis in like fact situations."  *Daye*, 696 F.2d at 194.  Though ineffective assistance claims are

commonly understood as raising a Sixth Amendment challenge, Petitioner primarily relied on

state court decisions interpreting state law.  Notably, though he cited *Strickland v. Washington*,

466 U.S. 668 (1984), in his brief, he did so specifically to *distinguish* federal and state law for

ineffective assistance of counsel and noted that the New York standard is easier to establish.

(Dkt. No. 8-1 at 39-40 (stating that "[t]he [New York] standard for determining ineffective

assistance of counsel is much more liberal than the Federal rule because New York's prejudice

component focuses on the fairness of the process as a whole rather than its particular impact on

the outcome of the case.").); *see Anderson v. Harless*, 459 U.S. 4, 7 n.3 (1982) (per curiam)

(noting that the Supreme Court "doubt[s] that a defendant's citation to a state-court decision

predicated solely on state law ordinarily will be sufficient to fairly apprise a reviewing court of a

potential federal claim.").

Importantly, his appeal to the Fourth Department hinged in large part on that court's

interpretation of the New York cases *People v. Harris*, 97 A.D.3d 1111, 1112 (4th Dept. 2012),

and *People v. Dale*, 142 A.D.3d 1287, 1290 (4th Dept. 2016).  *Harris* held that a petitioner does

not establish ineffective assistance of counsel for failing to bring a likely unsuccessful motion, *see Harris*, 97 A.D.3d at 1112, and *Dale* reiterated the New York law holding that, "[i]n the context of a guilty plea, a defendant has been afforded meaningful representation when he or she receives an advantageous plea and nothing in the record casts doubt on the apparent effectiveness of [defense] counsel." *Dale*, 142 A.D.3d at 1290. Accordingly, this Court does not consider the Fourth Department's conclusion as a ruling on federal law. Rather, read in context, the Fourth Department was opining on a matter of state law.

Similarly, Plaintiff's claim that he "should have been afforded the opportunity to withdraw his guilty plea" was an argument couched in state law. To that end, Petitioner's argument—and the Fourth Department's reasoning—hinged on whether the state court judge *abused his discretion* in denying the motion to withdraw pursuant to N.Y. C.P.L. § 220.60. The Fourth Department noted that, according to New York law, "it is well established that the denial of a motion to withdraw a guilty plea is not an abuse of discretion absent 'some evidence of innocence, fraud, or mistake in inducing the plea.'" *Massey II*, 151 A.D.3d 1969 (quoting *People v. Noce*, 145 A.D.3d 1456, 1457 (4th Dept. 2016)). Here, Petitioner's arguments to the State depended on whether he mistakenly took the plea bargain due to his understanding that he might be able to withdraw his plea if he provided substantial assistance to the prosecution. As the Fourth Department properly held, "[a]lthough defendant alleges that the prosecutor promised him the opportunity to withdraw his guilty plea if he provided information concerning other crimes, the record establishes that defendant refused to cooperate with the prosecutor in that regard. Furthermore, the minutes of the plea colloquy belie defendant's belated assertions of innocence[.]" *Massey II*, 151 A.D.3d 1969. As with his ineffective assistance of counsel claim, the Fourth Department relied on state decisions to reject his claim that the Trial Court should

have granted his motion to withdraw his guilty plea.  Thus, this Court concludes the Fourth

Department's consideration and ultimate rejection of Petitioner's argument regarding his motion

to withdraw his guilty plea was a state law issue.  *See, e.g.*, *Chodakowski v. Annucci*, No.

119CV00248LTSKHP, 2020 WL 9065795, at *7 (S.D.N.Y. Apr. 28, 2020) (finding petitioner

did not exhaust a Sixth Amendment claim because his arguments to the state courts were

understood as challenges to state procedural rules).

Put simply, the New York courts ruled—as a matter of state law—that Petitioner received

effective assistance throughout the plea-bargaining stage and that the Supreme Court judge did

not abuse his discretion in denying his motion to withdraw his guilty plea.  Thus, in recognition

of "our dual judicial system," and out of "concern for harmonious relations between the two

adjudicatory institutions," this Court cannot find that Petitioner properly presented his federal

claims to the state courts in a manner that would allow this Court to grant relief.  *Daye*, 696 F.2d

at 191; *see also DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006); *Galdamez v. Keane*, 394

F.3d 68, 72–73 (2d Cir. 2005).

If a habeas applicant fails to exhaust state remedies the Court can dismiss the case

without prejudice to allow the Petitioner to reargue the federal constitutional issues in state court.

However, where, as here, state courts would deem the claims procedurally barred, this Court

"must deem the claim [] procedurally defaulted."  *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir.

2001) (noting the "apparent salve" of deeming a claim not presented in state court exhausted is

"cold comfort").  The Court's dismissal of an application for habeas relief on the ground of

procedural default amounts to "a disposition of the habeas claim on the merits."  *Id*.  An

applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted

claim only by demonstrating "cause for the default and prejudice" or by showing that he is "actually innocent" of the crime for which he was convicted. *Id*.

The failure of Petitioner's counsel to press his arguments in federal constitutional terms "does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986). Moreover, the Court finds that there is no injustice done here because the New York courts were correct in their determinations regarding Petitioner's arguments. Even were the court to consider his claims as federal claims, the Court would still recommend rejecting his petition. Naturally, Petitioner's procedural defaults of his ineffective assistance and withdrawal of his guilty plea claims are prejudicial only if such claims are meritorious. *Cappiello v. Hoke*, 698 F. Supp. 1042, 1052 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988). Here, the Court finds they are not.

Under federal law, with respect to ineffective assistance of counsel in the context of guilty pleas, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In this regard, the fundamental question is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *United States v. Berger*, 826 F. Supp. 100, 104 (S.D.N.Y.1993). Here, the Court is satisfied that Petitioner understood his plea allocution as providing him the opportunity to work with investigators to obtain a more favorable disposition. As Respondent correctly notes, "[t]he plea record accurately set forth the entire agreement: that petitioner would receive a sentence between five and nine years in exchange for his guilty plea to the indictment, depending upon [his] degree of cooperation with the District Attorney." (Dkt. No. 6-1 at 22.) That he ultimately failed to

provide such assistance is the reason he received the sentence he did. The record does not, as Petitioner appears to assert, demonstrate that he was ever promised that he could withdraw his guilty plea even if he *failed to cooperate*. Rather, Mr. Hennessy stated Petitioner's "understanding that if he did enough work with investigators from the Sheriff's Department he would be allowed to withdraw his plea" was not based on any "promises [that] were explicitly stated . . . ." (Dkt. No 8-1 at 355.) Notably, the ADA explained at the plea allocution that "[n]o other promises have been made about potential sentences being any lower than five years." (Dkt. No. 7-1 at 4 (Petitioner answering in the affirmative when asked if he understood the plea agreement as providing that "the minimum sentence" was five years).) In sum, the record in front of the Court establishes his plea bargain could have been advantageous had he cooperated. Accordingly, the Court finds Petitioner has not established cause for the default and prejudice necessary to excuse his procedural default.

With respect to his contentions regarding his guilty plea, had he raised such a claim as a due process violation under the United States Constitution, it would also likely fail. To that end, "[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the [petitioner]." *Ferrer v. Superintendent*, 628 F. Supp. 2d 294, 304 (N.D.N.Y. 2008) (citation omitted). As a court in this District has explained:

> Applying this standard, to establish that a criminal defendant's guilty plea was knowingly, intelligently, and voluntarily entered the court must find, based upon the record of the relevant plea proceedings, that he or she 1) was competent to proceed and was fully aware of the nature of the charges faced; 2) had a rational and factual understanding of the proceedings; and, 3) was cognizant of the constitutional protections relinquished upon entry of the plea.

*Capra v. LeClair*, No. 06-CV-1230, 2010 WL 3323676, at *9 (N.D.N.Y. Apr. 12, 2010) (citing *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004)).  In evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [petitioner's] allocution statements." *Carpenter v. Unger*, No. 10-CV-1240, 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014) (citing *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)).  "Where . . . [petitioner] . . . has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on [petitioner's] sworn statements and hold him to them." *Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004); *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("[T]he representations of the [petitioner], his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.")

Petitioner's claim here turns on his allegation that the plea allocution did not include a full understanding of his plea agreement.  However, as discussed above, the record evidence establishes that Petitioner had a full understanding of the bargain at the time he pled guilty. Contrary to Petitioner's argument, there is no evidence that he was ever promised anything other than that he would be sentenced between five and nine years upon pleading guilty.  Petitioner openly admitted in court that he understood he could receive such a sentence as a result of his plea.  (Dkt. No.7-1 at 4.)  Though the Trial Court did not specifically ask Petitioner whether any other promises were made, the ADA confirmed that no other promises were made and Petitioner agreed with the ADA's explanation of the plea bargain.  *See id*.  Accordingly, the Court finds Petitioner's statements in open court and the record as a whole contradict Petitioner's claim that he only pleaded guilty because he believed his case would be dismissed.

Finally, Petitioner has not plausibly argued that he is "actually innocent" (meaning factually innocent) of the crime for which he was convicted.  The Court recognizes that Petitioner asserts in a conclusory way that he was innocent.  (Dkt. No. 10.)  Specifically, Petitioner asserts that there was conflicting witness statements regarding the theft and that his wallet being found in the car that was at the scene of the theft could be explained.  *See id.* at 1-2.  However, those arguments are belied by his admission in open court that he committed the crime of which he was accused.  (Dkt. No. 7-1 at 8); *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Accordingly, the Court recommends denying Petitioner's application for habeas relief because he failed to exhaust his state remedies.  *Aparicio*, 269 F.3d at 89–90.

## III.   CERTIFICATE OF APPEALABILITY

28 U.S.C. § 2253(c)(1) provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"  28 U.S.C. § 2553(c)(1).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2553(c)(2).

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court recommends declining to issue a Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).

## IV.   CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein the Court hereby

**RECOMMENDS** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED and DISMISSED**; and the Court further

**RECOMMENDS** that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims; and the Court further

**ORDERS** that the Clerk provide Petitioner with a copy of this Order and Report-Recommendation along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED**.

Dated: August 20, 2021
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[3]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2020 WL 9065795
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Szymon CHODAKOWSKI, Petitioner,

v.

Anthony J. ANNUCCI, Commissioner, New
York State Department of Corrections and
Community Supervision; and Akinyemi
Awopetu, Superintendent, Livingston
Correctional Facility, Respondents.

1:19-cv-00248 (LTS) (KHP)
|
Signed 04/28/2020

**Attorneys and Law Firms**

Mark M. Baker, The Baker Law Firm for Criminal Appeals,
PLLC, Riverdale, NY, for Petitioner.

Beth Fisch Cohen, New York County District Attorney's
Office, New York, NY, for Respondents.

### REPORT AND RECOMMENDATION

KATHARINE H. PARKER, United States Magistrate Judge

**\*1 TO: THE HONORABLE LAURA TAYLOR SWAIN,
United States District Judge**

**FROM: KATHARINE H. PARKER, United States
Magistrate Judge**

Petitioner Szymon Chodakowski filed a petition for a writ of
habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254.
Petitioner is challenging his conviction following a jury trial
in New York State Supreme Court, New York County (the
"Trial Court"), where he was found guilty of Rape in the
First Degree (New York Penal Law ("NYPL") § 130.35[2])
and Sexual Abuse in the First Degree (NYPL § 130.65[2])
and was sentenced to an aggregate prison term of five years
followed by five years of post-release supervision.

After the trial, the jury foreperson contacted Petitioner's trial
counsel and contended, among other things, that another
juror made an ethnic remark about Petitioner in the jury
room during deliberations. Petitioner's trial counsel requested
an adjournment of sentencing to investigate the claim and

potentially prepare a motion to set aside the verdict pursuant
to New York Criminal Procedure Law ("CPL") § 330.30(2).
The Trial Court, however, denied the request to adjourn
sentencing. Petitioner did not file a motion pursuant to CPL
§ 330.30(2), nor did he file a motion for a new trial pursuant
to CPL § 440.10. Instead, he appealed the denial of his
adjournment request arguing, *inter alia*, that an adjournment
was necessary to protect his constitutional rights under the
Sixth Amendment to the U.S. Constitution to confrontation
and a fair trial. The Appellate Division, First Department
held that Petitioner failed to preserve his Sixth Amendment
claim raised on direct appeal because he never made a motion
pursuant to CPL § 330.30(2). *See People v. Chodakowski*, 162
A.D.3d 476 (App. Div. 1st Dep't 2018). The New York Court
of Appeals subsequently denied Petitioner leave to appeal.
*People v. Chodakowski*, 84 N.Y.S.3d 862 (2018). This habeas
action followed.

The Petition asserts that the Appellate Division erred in
determining that Petitioner did not preserve his Sixth
Amendment claim for review on direct appeal. He now
asks this Court to grant the Petition, vacate the judgment of
conviction, and order a new trial. In the alternative, Petitioner
requests that this Court remand the matter to the Supreme
Court in New York County for purposes of conducting an
evidentiary hearing at which the trial jurors will be questioned
and the court would ascertain the merits of a CPL § 330.30(2)
motion to vacate the judgment. For the reasons that follow,
this Court respectfully recommends that the Petition be
dismissed without prejudice for failure to exhaust.

### BACKGROUND

Petitioner was accused of raping his girlfriend's sleeping
roommate after a night of heavy drinking. A New York State
grand jury indicted him on August 3, 2015, formally charging
him with Rape in the First Degree (NYPL § 130.35[2])
and Sexual Abuse in the First Degree (NYPL § 130.65[2])
for engaging in sexual intercourse with a person who was
incapable of consent by reason of being physically helpless.

#### I. *The Trial*
**\*2** During the trial, the People introduced evidence that,
on the night of June 25, 2015, Petitioner, A.G. (the victim),
and Petitioner's then-girlfriend, R.W., were drinking heavily
at a local bar in Manhattan. Petitioner flirted with A.G.
all night. At around 12:40 a.m. on June 26, 2015, A.G.

and Petitioner left the bar together and walked back to the apartment A.G. and R.W. shared, while R.W. stayed to pay the bill with another friend. R.W. and the friend arrived at the apartment shortly thereafter. At the apartment, Petitioner continued drinking from a bottle of whiskey. While R.W. was in a different room, Petitioner put his hand up A.G.'s skirt and proposed a "threesome." A.G. called R.W. into the room and told her about Petitioner's request for a "threesome," but she did not mention his touching. R.W. stated that it was "not happening." A.G. then went to her bedroom and went to bed.

Petitioner entered A.G.'s bedroom while she was asleep, and A.G. awoke to find Petitioner on top of her and felt his penis moving in her vagina. A.G., unable to fully realize what was happening, asked, "What about [R.W.]?" Petitioner responded, "No, it's okay, you are sexy." A.G. then said she was going to be sick, got up from the bed, and locked herself in the bathroom until she heard Petitioner leave her bedroom. When she returned to her bedroom, A.G. noticed that the shorts and underwear she had been wearing when she went to sleep were on the floor by the bed. A.G. first called her boyfriend on the phone and then called R.W. into her room to tell her what had happened. The two roommates decided to call their fathers for advice. A.G.'s father did not respond, but R.W.'s did, and he called the police. The police came to the apartment and arrested Petitioner at 4:35 a.m.

At trial, Petitioner defended his actions, arguing that because of his state of intoxication, he believed A.G. was physically interested in him. Petitioner did not testify in his defense, but obtained an expert, Richard Stripp, who holds a doctorate in pharmacology and toxicology from St. John's University. Based on the quantity of alcohol Petitioner consumed and the time period over which he consumed it, Stripp opined that Petitioner likely had a peak blood alcohol content ("BAC") of about .23 at around 2:00 a.m., the time of the incident. He further opined that this amount of alcohol would have caused Petitioner to be confused and have visible motor impairments, such as slurred speech, unsteadiness on his feet, clumsiness, and a staggering gait. However, Stripp was "not able to state whether the impaired ability to perceive surroundings that often results from a BAC of .2 to .23 would make the drinker unable 'to determine' whether another person 'was conscious or unconscious.' " (Dkt. No. 15 ("Resp't Mem. of Law and Answer in Opp'n"), 36.)

## II. *Verdict, Post-Verdict Proceedings, and Sentence*

Petitioner's trial took place between November 1 and 10, 2016. On November 10, 2016, after four hours of deliberation,

the jury convicted Petitioner on counts of Rape in the First Degree (NYPL § 130.35[2]) and Sexual Abuse in the First Degree (NYPL § 130.65[2]). The trial judge scheduled the sentencing for November 29, 2016.

On November 20, 2016, ten days after the verdict and four days before the Thanksgiving holiday, Steven Vazquez, the jury foreperson, left a message on defense counsel's phone indicating his desire to speak. Vazquez left an incorrect callback number, but defense counsel was able to reach him on November 23, 2016, the day before Thanksgiving. Defense counsel interviewed Vazquez and learned that another juror had "manifested ethnic bias toward Petitioner in the jury room." (Dkt. No. 8-1 ("Att'y Decl. in Supp. of Pet. for Writ of Habeas Corpus") ¶ 36.)

On November 25, 2016, just one day after Thanksgiving and four days before sentencing, defense counsel obtained an Affidavit from Vazquez (the "Vazquez Affidavit"). In the Affidavit, Vazquez stated that only eight jurors initially voted to convict. (Dkt. No. 8-4 Ex. D ("Vazquez Aff.") ¶ 5.) He also stated that, during deliberations, one juror said that "[A.G.] was a 'nice Jewish girl, a good *menza*,'[1] and that the defendant was 'just a big dumb Polack.' " (*Id.* ¶ 6.) Vazquez further attested that: "This not only indicated that this juror based his decision on racially prejudicial reasons, it also seemed to indicate that this juror knew more about the parties than was introduced in evidence at the trial. His comment also seemed to poison the entire jury."[2] (*Id.*)

[1]  As noted in the record, "*Menza*" could be a reference to the organization "Mensa International," which is a high IQ society that is "open to persons who have attained a score within the upper two percent of the general population on an approved intelligence test that has been properly administered and supervised." *See Resources*, MENSA INT'L, https://www.mensa.org/media/resources (last visited Apr. 24, 2020).

[2]  The Affidavit contained a litany of other assertions, including that "many of the jurors noted that the defendant did not call any character witnesses who could have testified to his good character and reputation" and that Vazquez "faced strong pressure from other jurors to change [his] vote" and that he has health problems that caused him to want to reach a verdict before the long holiday weekend. (*Id.* ¶¶ 7-8.) He also stated that he has "serious

and actual doubts about the elements of the crimes charged against the defendant." (*Id.* ¶ 4.)

**\*3** On the same day he obtained the Affidavit, defense counsel emailed the trial judge's court attorney and the prosecutor to notify them that he wanted an adjournment of the sentencing scheduled for November 29, 2016. In the email, defense counsel explained that he had been contacted by a juror who raised "various serious allegations of juror misconduct during the deliberations" that "if true, [would] constitute grounds for setting aside the verdict under CPL 330.30(2)." (Dkt. No. 8-4 Ex. E ("Farkas Email").) In his email, defense counsel did not specify what Vazquez had told him, but stated that he would need additional time to investigate the claims in order to make a meaningful motion under CPL § 330.30(2) to set aside the verdict.

On November 29, 2016, the day of the sentencing, defense counsel again requested an adjournment so that he could properly investigate Vazquez's claim of juror misconduct and make a CPL § 330.30(2) motion to set aside the verdict before sentencing. (Dkt. No. 8-4 Ex. F ("Sent'g Hr'g Tr.") 2:13-21.) Defense counsel then provided the Court with the details of Vazquez's claims, including that another juror made racial or ethnically prejudicial remarks about the defendant during deliberations. (*Id.* 5:21-25.) The prosecutor responded that, if sentencing were adjourned and a CPL § 330.30(2) motion filed, the People would have the right to respond. The prosecutor also stated that an investigation would be needed to determine the validity of the juror misconduct claim.

After hearing from both sides with respect to the adjournment, the Trial Court denied the request for an adjournment of the sentencing, stating that this is "precisely the type of issue that refers only to the content of the substance of the discussions in the jury room during the course of deliberations," which is insufficient to impeach a juror after the fact. (*Id.* at 9:14-19.) Citing *People v. DeLucia*, 20 N.Y.2d 275, 276–77 (1967), which stands for the proposition that jurors may not impeach their duly rendered verdicts with statements or testimony of juror misconduct, the Trial Court explained that exceptional circumstances must exist (such as juror intimidation or harassment) to overcome the "no impeachment" rule. (Sent'g Hr'g Tr. 9:20-25, 16:23-25.) The Trial Court also expressed skepticism of Vazquez's concern about juror misconduct, noting that Vazquez had the opportunity to raise his juror misconduct allegation when the jurors were individually polled, yet chose to affirm his guilty verdict instead. (*Id.* at 13:04-16.) Accordingly, the Court found there was an insufficient basis to adjourn the sentencing to allow defense

counsel to further investigate and decide whether to file a CPL § 330.30(2) motion.

Notably, defense counsel acknowledged that, if an adjournment were not granted, he would not be able to file a motion pursuant to CPL § 330.30(2) because such motions must be made in writing before sentencing. The prosecutor also noted that, were a CPL § 330.30 motion to be filed, the People would need an opportunity to respond. Defense counsel stated that his preference would be to obtain an adjournment of sentencing and to then have the Court hold a "330" hearing where it would call jurors in to be questioned. However, defense counsel also recognized that, if the adjournment request were denied, his investigators could question jurors to gather more evidence of juror misconduct and that Petitioner could then file a motion pursuant to CPL § 440.10 to vacate the judgment based on juror misconduct after sentencing. (*Id.* at 14:06-15.)

To complete the record, Defense counsel asked the Trial Court to read Vazquez's Affidavit and make it part of the record, which the Court did. (*Id.* at 13:17-20, 14:03-05.) Upon reading the Affidavit, the court stated, "All right. I have read the affidavit. It does not change my view...." (*Id.* at 18:18-19.) The Trial Court then proceeded to sentence Petitioner to an aggregate prison term of five years followed by five years of post-release supervision.

### III. *Appellate History*

**\*4** Petitioner timely filed a direct appeal to the Appellate Division, First Department with the assistance of counsel. As relevant to this Habeas Petition, Petitioner argued that his federal constitutional right to confrontation and a fair trial were violated when the Trial Court denied his trial counsel's request to adjourn sentencing for purposes of investigating whether a juror was biased against Petitioner's ethnicity and preparing a motion to set aside the verdict pursuant to CPL § 330.30(2). Petitioner argued that the Vazquez Affidavit raised the spectre of ethnic prejudice, and warranted an adjournment to conduct an investigation to determine whether Petitioner's Sixth Amendment rights were violated. He also explained that ethnic or racial bias is a basis to set aside a verdict under CPL § 330.30(2), and that both New York courts and the U.S. Supreme Court have recognized an exception to the no-impeachment rule when there is evidence that racial or ethnic animus affected a juror's vote to convict. *See People v. Leonti*, 262 N.Y. 256, 258 (1933) (holding that a juror who demonstrates ethnic bias against defendant necessitates a new trial because the juror "never was eligible

Case 9:18-cv-00483-BKS-TWD   Document 13   Filed 08/20/21   Page 19 of 68

to become a member of the jury, ... from the beginning he was disqualified on the ground of prejudice and ... his vote for conviction was, therefore, a nullity"); *see also Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 861 (2017) (holding that there is an exception to the "no-impeachment rule" when "a juror comes forward with compelling evidence that another juror made clear and explicit statements indicating that racial animus was a significant motivating factor in his or her vote to convict"); *People v. Rukaj*, 123 A.D.2d 277, 280 (App. Div. 1st Dep't 1986) (recognizing that "[t]he scourge of racial prejudice, toward any group, which impugns a jury's ability to impartially assess the evidence, constitutes a corrupt outside influence which cannot be sustained"). Thus, Petitioner asked the Appellate Division to reverse his conviction and order a new trial or, in the alternative, hold an evidentiary hearing.

In an order entered on June 12, 2018, the Appellate Division unanimously affirmed Petitioner's conviction. *Chodakowski*, 162 A.D.3d 476. The Appellate Division treated Petitioner's argument as a backdoor effort to set aside the verdict pursuant to CPL § 330.30(2), and held that Petitioner's effort to set aside the verdict based on suspected juror misconduct was "unpreserved based upon his failure to file the appropriate [CPL § 330.30(2)] motion in Supreme Court...." *Id.* The Appellate Division further noted that Petitioner never requested a new trial or hearing regarding his CPL § 330.30(2) claim prior to sentencing. *Id.* Rather, all he requested was an adjournment of sentencing to further investigate the grounds for his contemplated CPL § 330.30(2) motion.

On the same day the Appellate Division rendered its order, Petitioner applied, through counsel, for leave to appeal to the New York State Court of Appeals, once again raising his quasi-CPL § 330.30(2) claim. Petitioner posed the question on appeal as: "[D]id the trial court deprive Defendant of his Sixth Amendment and New York State Constitutional rights ... to determine whether he had a fair and impartial jury by summarily denying counsel's request to adjourn sentencing so that he could investigate whether, under then newly obtained information, a juror had been prejudiced against Defendant by virtue of Defendant's perceived ethnicity ... in furtherance of preparing a potential motion to set aside the verdict pursuant to CPL § 330.30(2)?" (Dkt. No. 8-6 Ex. I ("Initial Crim. Leave Appl.") 2.)

Petitioner filed an Amplified Criminal Leave Application on June 28, 2018. On the issue of preservation, Petitioner elaborated that the legal question would be: "Is an e-mailed defense application for an adjournment of sentencing to enable counsel to investigate the merits of a claim of ethnic bias on the part of a juror, as supplemented by the foreperson's affidavit, which bias, if substantiated by the requested questioning of the jury by the court, would result in disqualification of that juror and the nullification of his or her vote, sufficient to preserve the denial of such request for appellate review, absent the filing of a formal CPL § 330.30(2) motion?" (Dkt. No. 8-7, Ex. J ("Amplified Crim. Leave Appl.") 10.) On the substantive issue, Petitioner stated that the question before the court would be: "In light of the holdings of *People v. Leonti* and *Peña–Rodriguez v. Colorado*, where the defense raises a good faith, *prima facie* claim of ethnic bias on the part of a single juror, do the Sixth Amendment and the New York State Constitution ... require a trial court, absent the filing of a formal CPL § 330.30(2) motion, to grant a defense request to adjourn sentencing and question the jury in furtherance of determining whether the 'no impeachment' rule should be disregarded and whether such juror's participation is subject to nullification, *ab initio*?" (*Id.* at 12-13.) The Court of Appeals denied Petitioner's application for leave to appeal on August 9, 2018. *Chodakowski*, 84 N.Y.S.3d 862.

**\*5** Petitioner, under the impression that he exhausted his remedies before the New York state courts, then filed the instant petition for relief pursuant to 28 U.S.C. § 2254. Petitioner believes the Appellate Division erred in determining that he did not preserve his Sixth Amendment claim for review on direct appeal. Respondent counters that the claim advanced in the Petition is unexhausted, procedurally barred, and otherwise without merit. Petitioner filed a reply brief in further support of his Petition, in which he argues that, even if there was a procedural default with respect to a formal CPL § 330.30(2) motion, he exhausted his remedies with respect to the denial of the motion for an adjournment. Thus, he contends that this Court should address the merits of his application, vacate the sentence, and remit the matter to the New York Supreme Court with the direction that defense counsel be afforded an opportunity to conduct the requested investigation to determine whether there are meritorious grounds upon which to premise a formal written motion to set aside the verdict.

At oral argument, Respondent noted that Petitioner never filed, and still can file, a motion for a new trial pursuant to CPL § 440.10. Petitioner conceded that he could make such a motion, but argued that he was not required to make such a motion prior to seeking habeas relief. Petitioner's counsel

also argued that it would have been a waste of time to file such a motion, and that the likely outcome would be denial on the ground that the issue already was raised and addressed on direct appeal, notwithstanding the fact that the Appellate Division held that the issue had not been raised and was not preserved for direct appeal.

## DISCUSSION

### I. Legal Standard

#### A. Exhaustion and Procedural Default

Prior to seeking federal habeas review, a petitioner in state custody is required to exhaust all remedies available in state court. *See* 28 U.S.C. § 2254(b)(1); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). This means that a petitioner "must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (emphasis added). A "complete round," *id.*, requires the petitioner to present the "essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson*, 763 F.3d at 133 (internal quotation marks and citation omitted). "[T]he exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance." *Id.* at 132; *see also Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("[t]he exhaustion requirement is animated by notions of comity between the federal and state judicial systems" (internal quotation marks, alteration, and citation omitted)).

When a habeas petition presents an unexhausted claim, the federal court must determine whether the petitioner would be able to return to state court to exhaust the claim. *See Jackson*, 763 F.3d at 133. If the petitioner's claim is unexhausted and the petitioner cannot obtain further review of that claim in state court for procedural reasons, then the federal court must deem the claim procedurally defaulted. *See Carvajal*, 633 F.3d at 104; *see also Jackson*, 763 F.3d at 133 ("if the state prisoner fails to exhaust his state remedies in a manner in which, were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule, we must deem the claim procedurally defaulted" (internal quotation marks and citation omitted)).

"The Second Circuit has made clear that 'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.' " *Martinez v. Colvin*, No. 1:17-cv-00757 (PKC) (KHP), 2018 WL 7047148, at *5 (S.D.N.Y. Nov. 6, 2018) (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)), *adopted by* 2018 WL 6649608 (S.D.N.Y. Dec. 19, 2018). "Thus, 'as long as the state court explicitly invokes a procedural bar rule as a separate basis for decision,' the adequate and independent doctrine 'curtails reconsideration of the federal issue on federal habeas.' " *Martinez*, 2018 WL 7047148, at *5 (quoting *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)). The only exceptions to this rule are if the petitioner establishes either " 'cause for the default and prejudice' " or that he is " 'actually innocent' of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (quoting *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001)).

**\*6** Additionally, there are certain "exceptional cases in which [the] exorbitant application of a generally sound rule renders the state ground inadequate" to preclude federal habeas review. *Lee v. Kemna*, 534 U.S. 362, 376 (2002); *see also Cotto v. Herbert*, 331 F.3d 217, 239–40 (2d Cir. 2003). Courts analyze three factors to determine whether the procedural bar rule is an "adequate" independent state ground: (1) whether the trial court actually relied on the alleged procedural violation, and "whether perfect compliance with the state rule would have changed the trial court's decision"; (2) whether compliance with the rule was required by the governing caselaw under the "specific circumstances presented"; and (3) "whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and therefore, whether demanding perfect compliance with the rule would serve a legitimate government interest." *Cotto*, 331 F.3d at 240 (quoting *Lee*, 534 U.S. at 381–85).

#### B. Standard for Habeas Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). A state prisoner may obtain federal habeas relief only by showing that the state court's decision on the merits was either "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court," or based on an unreasonable determination of the facts presented to the state court. 28 U.S.C. § 2254(d)(1)-(2).

"To be 'contrary to' clearly established law, a state court must reach a conclusion of law antithetical to a conclusion of law by the Supreme Court, or decide a case differently than the Supreme Court has when the two cases have 'materially indistinguishable facts.' " Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring)). In the AEDPA context, "clearly established" law refers to "only the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions." Woods v. Donald, 575 U.S. 312, 316 (2015) (internal quotation marks and citation omitted). It is not enough that the facts of a case are "similar to" those at issue in the relevant Supreme Court case—the two cases must involve the same specific question. Id. at 317.

Once the clearly established Supreme Court holding has been distilled, "an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." Id. at 316 (internal quotation marks and citation omitted). To satisfy the high bar for habeas relief, a petitioner must establish that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

### II. Analysis of Petitioner's Claim for Relief

#### A. Exhaustion and Procedural Default

To exhaust state court remedies, a petitioner must present his federal constitutional claim to the highest state court capable of reviewing it and give the state court one full opportunity to resolve any issues through the State's established appellate process. See O'Sullivan, 526 U.S. at 845. To invoke one complete round of New York's established appellate process, the criminal defendant must appeal his conviction to the Appellate Division, and then seek leave to appeal to the Court of Appeals. See Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005). Here, Petitioner never filed a claim to set aside the verdict under CPL § 330.30(2). Rather, he sought an adjournment on the grounds that further investigation could substantiate his belief that ethnic bias may have infected a juror's guilty vote. The Sixth Amendment claim was never

squarely presented to the Trial Court – all that was presented was that the possibility of such a claim was the basis for the adjournment request. Although defense counsel presented the Trial Court with the Vazquez Affidavit, he also stated that the Affidavit would not be the sole support for a motion brought pursuant to CPL § 330.30(2). In other words, defense counsel indicated that the Affidavit, alone, was insufficient to support the proposed motion. Although Petitioner could have simply made a motion under CPL § 330.30(2), Petitioner declined to do so and, instead, chose to seek an adjournment and hearing in connection with the proposed motion. [3] Defense counsel also conceded that, if the adjournment request was denied, Petitioner could file a motion under CPL § 440.10 for a new trial based on juror misconduct. Defense counsel even represented to the trial judge that he would conduct further investigation in pursuit of such a motion post-sentencing. Yet, no CPL § 440.10 motion was ever filed.

[3]   CPL § 330.40(2)(a) provides that a motion to set aside a verdict pursuant to CPL § 330.30(2) or CPL § 330.30(3) "must be in writing and upon reasonable notice to the people" and "must contain sworn allegations." See also People v. Fisher, 266 A.D.2d 308 (App. Div. 2d Dep't 1999) (holding that defendant's oral motion to set aside the jury verdict under CPL § 330.30(3) was denied because CPL § 330.40(2)(a) requires that the "motion be in writing, upon reasonable notice, and supported by sworn allegations of fact"). Here, Petitioner only made an adjournment request to allow time to potentially file such a motion. At sentencing, the prosecution noted that if the Trial Court permitted an adjournment, the People would need an opportunity to respond. Had Petitioner filed a CPL § 330.30(2) motion, the Trial Court could have elected to hold a hearing and question jurors prior to making a decision to set aside the verdict.

\*7   On appeal, Petitioner never squarely presented his Sixth Amendment claim. Instead, he appealed the denial of the adjournment and argued, in essence, that the Vazquez Affidavit raised a sufficient possibility of a Sixth Amendment violation, such that the adjournment should have been granted so that the claim could be further investigated and, depending on the results of that investigation, presented in a CPL § 330.30(2) motion. The Appellate Division correctly concluded that the Sixth Amendment claim, which should have been presented in a CPL § 330.30(2) motion, was unpreserved on direct appeal. Plaintiff's argument to the

Court of Appeals similarly did not squarely present the Sixth Amendment claim, and his request for appeal was denied.

Notably, the Appellate Division, First Department ruled in a similar case that the trial court did not abuse its discretion by denying a motion to adjourn sentencing to allow defense counsel to further investigate a claim of potential juror misconduct, stating that although the denial of the adjournment prevented the defendant from making a CPL § 330.30(2) motion before sentencing, the defendant could, nevertheless, make a CPL § 440.10(1)(f) motion post-sentencing if he uncovered evidence outside the record demonstrating juror misconduct. *See People v. Rivera*, 157 A.D.3d 534 (App. Div. 1st Dep't 2018), *leave denied*, 31 N.Y.3d 1016 (2018); *see also Covington v. Warden, Five Points Corr. Facility*, No. 11cv8761–AT–FM, 2014 WL 7234820 (S.D.N.Y. Dec. 8, 2014) (denying habeas petition and noting that the trial court did not err by denying petitioner's motion to set aside the verdict because it relied on inadmissible hearsay), *adopted by* 2016 WL 3407845 (S.D.N.Y. June 16, 2016); *People v. Johnson*, 54 A.D.3d 636, 636 (App. Div. 1st Dep't 2008) (court properly denied, without granting a hearing, defendant's CPL § 330.30(2) motion to set aside verdict where papers did not contain "sworn allegations of all facts essential to support the motion ... and defendants were not entitled to a hearing based on expressions of hope that a hearing might reveal the essential facts" (internal quotation marks and citation omitted)), *leave denied*, 11 N.Y.3d 898 (2008), *leave denied* 12 N.Y.3d 759 (2009). Thus, in other similar cases, New York courts have required defendants seeking to file a motion to aside a verdict due to juror misconduct to strictly adhere to the procedures outlined in CPL § 330.40(2).

Here, Petitioner never made a CPL § 330.30(2) motion squarely presenting the Sixth Amendment claim to the Trial Court. Instead, he merely suggested to the Trial Court that further investigation could potentially substantiate the basis for such a motion. His appeal then attempted to skip over the express requirements of making such a motion by arguing that he was seeking to appeal the denial of his adjournment request, while simultaneously seeking the same relief he would have sought if he had filed the proposed CPL § 330.30(2) motion in the first place.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of [the habeas statute], if he has the right under the law of the State to raise, by any available procedure,

the question presented." 28 U.S.C. 2254(c). As noted above, Petitioner can, but has not, filed a CPL § 440.10 motion for a new trial based on juror misconduct. Accordingly, Petitioner has not exhausted his state court remedies, and his Sixth Amendment claim must be dismissed, without prejudice, due to his failure to exhaust his available remedies in state court. *See Butti v. Supt. Gowanda Corr. Facility*, No. 99 CIV. 1667 DLC, 2000 WL 280039 (S.D.N.Y. Mar. 14, 2000) (dismissing habeas petition where claim presented was unexhausted). [4]

[4]    If Petitioner files the motion, the state court will be able to determine, in accordance with *Peña–Rodriguez* and *Leonti*, whether the juror's statements tend to show that "[ethnic] animus was a significant motivating factor in the juror's vote to convict." *Peña–Rodriguez*, 137 S. Ct. at 869. In *Peña–Rodriguez*, a case decided after the Trial Court declined to adjourn Petitioner's sentencing, two jurors spoke to defense counsel immediately after the jury was discharged. *See id.* at 861. The two jurors informed counsel that another juror "expressed anti-Hispanic bias toward petitioner and petitioner's alibi witness." *Id.* After defense counsel relayed what the jurors told him to the court, the court allowed defense counsel to obtain sworn affidavits from the two jurors. *See id.* This resulted in the presentment of two affidavits detailing the extent of ethnic prejudice against the defendant and his alibi witness. However, because of Colorado's no-impeachment rule, which mirrored federal law, the state court denied the petitioner's motion for a new trial. On appeal, the U.S. Supreme Court found that "the alleged statements by a juror were egregious and unmistakable in their reliance on racial bias," and that his statements "encouraged other jurors to join him in convicting on that basis." *Id.* at 870. Thus, the Supreme Court remanded the proceeding back to the Colorado state court, holding that the no-impeachment rule could not be used to deny consideration of racial or ethnic bias of a juror in a motion for a new trial, stating "[w]hen jurors disclose an instance of racial bias as serious as the one involved in this case, the law must not wholly disregard its occurrence." *Id.*
Unlike Petitioner in this case, the defendant in *Peña–Rodriguez* actually filed a motion for a new trial. Also, unlike the Colorado state and federal law at issue in *Peña–Rodriguez*, New York has

long held that juror racial bias is grounds for a new trial. However, Petitioner did not squarely present the issue to the Trial Court for a ruling. This Court agrees with Petitioner that the statements attributed to the juror by Vazquez, if true, could evidence ethnic bias. However, the state court has not been given an opportunity to rule on that issue. Indeed, the New York court may very well deem the Affidavit sufficient to support a 440.10 motion and conduct a hearing, especially in light of *Peña–Rodriguez*.

### B. Adequacy of the State Procedural Ground

**\*8**  To the extent Petitioner argues that his case fits into the category of exceptional cases where an "exorbitant application of a generally sound" rule renders the state ground inadequate to preclude federal review, he is mistaken. *See Lee*, 534 U.S. at 376. In this case, the Appellate Division's decision was not based on Petitioner's failure to file a written motion, but on his failure to file a CPL § 330.30(2) motion altogether. Clearly the requirement of making a motion is an independent and adequate procedural ground precluding habeas review. Even if Plaintiff had made an oral motion under CPL § 330.30(2), the three factors articulated in *Lee*, 534 U.S. at 381–85 and *Cotto*, 331 F.3d at 240, referenced *supra*, that are used to determine whether the application of a generally sound procedural rule was "exorbitant," are not met. Petitioner claims that the Appellate Division failed to apply CPL § 470.05(2), which states that preservation of an issue is sufficient "if the party made his position with respect to the ruling or instruction known to the court...." Here, Petitioner merely stated that he was considering making a motion under CPL § 330.30(2) for juror misconduct, if supported based on further investigation. At no time did Petitioner claim to have sufficient evidence to file a motion to set aside the verdict, nor did he file such a motion. Thus, neither the Trial Court nor the appellate court relied on the technical requirements of CPL § 330.30(2), that a written motion be filed, when denying petitioner's request for an adjournment. (*See* Sent'g Hr'g Tr. 9:14-19.) And, even if Petitioner had made a proper CPL § 330.30(2) motion supported by the Vazquez Affidavit, it is unlikely that the motion would have changed the Trial Court's decision, given that defense counsel conceded that the Affidavit, alone, was insufficient to support a motion to set aside the verdict. Indeed, after reading the Affidavit at sentencing, the presiding judge stated, "All right. I have read the affidavit. It does not change my view...." (*Id.* at 18:18-19.)

In any event, New York case law indicates that the procedural requirements for motions made pursuant to CPL § 330.30(2) are strictly enforced in similar circumstances. Indeed, CPL § 330.40(2)(a) expressly provides that a motion brought pursuant to CPL § 330.30(2) or (3) must be made in writing with reasonable notice, and must contain sworn allegations. *See People v. Windsor*, 165 A.D.3d 709, 710 (2d Dep't 2018) (denying CPL § 330(3) motion without a hearing where the motion was unaccompanied by a sworn allegation, and explaining that the "power to grant a new trial" pursuant to a CPL § 330.30(3) motion "is of statutory origin and in strict compliance with [CPL § 330.40(2)(a)] is necessary." (internal quotation marks and citation omitted)); *Fisher*, 266 A.D.2d at 309 (denying oral CPL § 330.30(3) motion). Here, Petitioner never made an oral CPL § 330.30(2) motion. All he did was request an adjournment of sentencing, and this was insufficient to preserve his CPL § 330.30(2) claim for direct appeal. Petitioner cannot challenge the "adequacy" of a state court procedural rule that he never attempted to invoke.

Lastly, Petitioner clearly did not substantially comply with CPL § 330.30(2) given "the realities of trial." *Cotto*, 331 F.3d at 240 (quoting *Lee*, 534 U.S. at 381–85). It is indisputable that because Vazquez contacted Petitioner's counsel just nine days before sentencing, counsel had little time to conduct an investigation and a prepare a CPL § 330.30(2) motion. However, because Petitioner's counsel was able to conduct a full interview of Vazquez and obtain an affidavit from Vazquez four days prior to sentencing, it is clear that Petitioner had sufficient time to make the contemplated CPL § 330.30(2) motion. Yet, instead of making a motion with the Affidavit he had in hand, Petitioner chose only to request an adjournment of sentencing in order to further investigate the juror misconduct claim. Importantly, Petitioner could have completed his investigation after the sentencing by contacting jurors and then filing a motion, supported by additional evidence, pursuant to CPL § 440.10. Defense counsel even told the sentencing judge that he would do this, but never followed through.

The written motion requirement CPL § 330.40(2)(a) is important because, if granted, CPL § 330.30(2) and (3) motions give criminal defendants a new trial based on evidence not found in the record, thus vacating jury verdicts. The requirement of a written motion promotes the integrity and finality of jury verdicts by creating a written record on which to base a decision vacating a verdict. The U.S. Supreme Court recognized that "[t]he jury is the tangible implementation of the principle that the law comes from

2020 WL 9065795

the people." *Peña–Rodriguez*, 137 S. Ct. at 855. Because of the fundamental role the jury and its verdict plays in our democracy, our courts afford "substantial protection to verdict finality ... to assure jurors that, once their verdict has been entered, it will not later be called into question based on the comments or conclusions they expressed during deliberations." *Id.* at 861.

**\*9** Furthermore, it is clear that New York courts take CPL § 330.30(2) motions to set aside verdicts for juror racial or ethnic bias seriously. Indeed, New York's rule, as announced in the *Leonti* case, was established long before the Supreme Court's recent decision in *Peña–Rodriguez*. Moreover, New York courts routinely conduct hearings after a CPL § 330.30(2) motion for juror misconduct is made, during which jurors are called to testify. *See, e.g.*, *People v. Estella*, 68 A.D.3d 1155 (App. Div. 3rd Dep't 2009) (affirming decision setting aside verdict where a hearing was conducting after defendant filed a motion pursuant to CPL § 330.30(2) and the juror confirmed his racial bias); *People v. Rivera*, 304 A.D.2d 841 (App. Div. 2nd Dep't 2003) (ordering new trial in light of juror testimony showing they harbored racial bias against defendant). Thus, the written requirement for filing a CPL § 330.30(2) motion is an appropriate and adequate state court procedural rule.

In sum, Plaintiff should have utilized either CPL § 330.30(2) or CPL § 440.10 to present his Sixth Amendment claim to the state court. And, even if he had made an oral CPL § 330.30(2) motion, which he did not, there is no basis for finding that this case is so exceptional that the written motion requirement should be waived.

### C. "Cause for the default and prejudice" Exception

When a petitioner fails to preserve a claim, federal review of the habeas petition is barred. However, federal review is permitted if petitioner establishes either "cause for the default and prejudice" or that he is "actually innocent of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (internal quotation marks and citation omitted). In this case, Petitioner has a remedy in state court. He may file a motion for a new trial pursuant to CPL § 440.10. Respondent and Petitioner agree that this relief is still available to Petitioner. Thus, while it is clear that Petitioner defaulted on filing a CPL § 330.30(2)

motion, he still has the ability to present his Sixth Amendment claim to the state court. For this reason, this Court does not address the parties' arguments regarding procedural default.

If and when Petitioner files the CPL § 440.10 motion, the state court will be able to determine, in accordance with *Peña–Rodriguez*, whether the juror's statement tends to show that "racial animus was a significant motivating factor in the juror's vote to convict" warranting a new trial. *See Peña–Rodriguez*, 137 S. Ct. at 859.

### CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the Petition be dismissed without prejudice for failure to exhaust.

### NOTICE

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). If either party files written objections to this Report and Recommendation, the other party may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b) (2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Laura Taylor Swain at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Swain. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**

**All Citations**

Slip Copy, 2020 WL 9065795

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:18-cv-00483-BKS-TWD   Document 13   Filed 08/20/21   Page 25 of 68
Capra v. LeClair, Not Reported in F.Supp.2d (2010)
2010 WL 3323676

2010 WL 3323676
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Anthony CAPRA, Petitioner,

v.

Darwin LeCLAIR, Respondent.

Civil Action No. 9:06–CV–1230 (GTS/DEP).
|
April 12, 2010.

**Attorneys and Law Firms**

Anthony Capra, Attica, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Hannah S. Long, Esq., Assistant Attorney General, of Counsel, New York, NY, for Respondent.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

 **\*1** Anthony Capra, a New York State prison inmate as a result of a 2004 felony weapons possession conviction entered in Albany County Court, based upon a plea of guilty, has commenced this proceeding pursuant to 28 U.S.C. § 2254 requesting federal habeas intervention. At the center of petitioner's habeas claims is his contention that in pleading guilty, despite the fact that during his plea allocution the crime of conviction was described by the court as criminal possession of a weapon in the third degree, which is a felony, and being informed that if his plea was accepted he would be sentenced to a determinate period of incarceration for seven years, a sentence commensurate with a felony conviction, his plea was in actuality to a charge of fourth degree criminal possession of a weapon, a misdemeanor. Capra asserts that the trial court therefore erred in sentencing him as a convicted felon to more than one year in prison, and additionally argues that he received ineffective assistance from his counsel, who permitted him to be sentenced as a felon despite the fact that his conviction was for a misdemeanor, and that both the district attorney and the court were obligated but failed to properly apprise him that he was pleading guilty to a misdemeanor count. Respondent opposes Capra's petition,

arguing both that his claims remain unexhausted but are now procedurally forfeited and that, in any event, they lack merit.

Having carefully considered Capra's petition, applying the requisite deferential standard to determinations by the state courts regarding certain of the issues now raised, I conclude that the claims now raised were not properly presented in the first instance to the state's highest court and are thus both unexhausted and procedurally barred. I further find that in any event petitioner's principal claim, in which he contests having pleaded guilty to a felony count, lacks merit.

I. *BACKGROUND*

Section 265.01 of the New York Penal Law ("Penal Law"), which addresses criminal possession of a weapon in the fourth degree, *inter alia,* makes it a Class A misdemeanor to possess "any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol, or any other dangerous or deadly instrument or weapon with the intent to use the same unlawfully against another; ...". N.Y. Penal Law § 265.01(2). Under section 265.02 of the Penal Law, a person is guilty of criminal possession of a weapon in the third degree, a Class D felony, when he or she commits an act prohibited by section 265.01, defining fourth degree weapon possession, under either subsection(2) or other alternate provisions, and additionally has been previously convicted of a crime.[1] *See* N.Y. Penal Law § 265.02(1).

[1]     In New York, the term "crime" is defined by statute to include felonies and misdemeanors. N.Y. Penal Law § 10.00(6).

After his arrest on April 22, 2003 upon a felony complaint charging him with robbery in the first degree, Capra was indicted by an Albany County grand jury on May 28, 2003 and charged with two counts, including robbery in the first degree and criminal possession of a weapon in the third degree. *See* State Court Records (Dkt. No. 11) Exh. A (Felony Complaint) and Exh. B (Indictment). Those charges stemmed from an incident on April 21, 2003 when the petitioner allegedly stole money from a petitioner store by displaying what appeared to be a knife and demanding money from store employees. *Id.* The indictment was supplemented by the filing of a special information, also on May 28, 2003, alleging that at the time of the incident petitioner had previously been convicted of a crime.[2] *Id.* Exh. C.

[2]     Under New York law an indictment may not permissibly make reference to a prior conviction

even though it may serve as an essential element of the crime charged. *See* N.Y.Crim. Proc. Law § 200.60(1).

**\*2** Following what are described as extensive negotiations, petitioner appeared on June 16, 2003 before Albany County Court Judge Thomas A. Breslin for the purpose of entering the plea to the second count of the indictment. State Court Records (Dkt. No. 11) (Plea Minutes) Exh. E. During the plea colloquy, the court advised Capra that he would be pleading to criminal possession of a weapon in the third degree, in full satisfaction of the two count indictment and that based upon his plea he would be sentenced to a determinate sentence of seven years of imprisonment. *Id.* at p. 2. The court later inquired as to whether petitioner admitted to having possessed a knife with the intent to use it against another person on the date in question. State Court Records (Dkt. No. 11) Exh. E at pp. 8–9. The court did not, however, ask Capra to admit, or otherwise question him regarding, the allegation that he was previously convicted of a crime. *See generally, id.*

At the conclusion of the proceedings the court asked Capra "[h]ow do you plead to criminal possession of a weapon in the third degree?", to which he responded "[g]uilty." *Id.* at p. 10. Petitioner's plea was thereafter accepted by the court, and the matter was adjourned for later sentencing. *Id.*

Petitioner came before the court again on August 26, 2003 for the purpose of sentencing. State Court Records (Dkt. No. 11) Exh. F (Sentencing Minutes I). At the outset of those proceedings, petitioner was asked to admit the contents of a special information, filed with the court on August 11, 2003, alleging that he was convicted of a felony drug charge in Schenectady County Court in December of 2002. *Id.* at pp. 1–2. In response, petitioner admitted this additional element of the crime of criminal possession of a weapon in the third degree charge. *Id.* at p. 3. Sentencing was adjourned, however, in order to permit respondent's counsel to conduct legal research concerning the interplay between petitioner's impending sentence on the weapons possession charge and a potential parole violation. *Id.* at p. 5.

Petitioner was sentenced on September 9, 2003 in connection with his weapon possession conviction to the promised seven-year determinate sentence, despite what the court described as "an outrageously extensive criminal history" disclosed in his presentence report. State Court Records (Dkt. No. 11) Exh. G (Sentencing Minutes II) at pp. 6–7. Petitioner was later returned to the Albany County Court for resentencing, however, after it was brought to the trial court's attention by

the New York State Department of Correctional Services that a determinate sentence was not appropriate since petitioner had not been convicted of a violent felony, as defined under the Penal Law.[3] State Court Records Exh. H. At the ensuing court hearing, petitioner for the first time asserted that he should be resentenced as having been convicted of a class A misdemeanor because the crime to which he entered a plea of guilty was not a felony. State Court Records (Dkt. No. 11) Exh. J. The court rejected that argument, and on March 12, 2004 resentenced Capra to the minimum permissible indeterminate sentence of between three and one-half and seven years of incarceration. State Court Records (Dkt. No. 11) Exh. L (Resentencing Minutes) at pp. 6–7.

[3]     While violations of subdivisions (5) for possessing of three or more firearms or of one firearm by a person previously convicted of a felony or class A misdemeanor in the preceding five years outside of the person's home or place of business; (6), which prohibits knowing possession of a disguised gun; (7), for possession of an assault weapon; or (8), involving possession of a large capacity ammunition feeding device of N.Y. Penal Law § 265.02 represent crimes of violence, a conviction under subsection (1) of that statute does not. N.Y. Penal Law § 70.02; *see People v. Donhauser,* 37 A.D.3d 1053, 829 N.Y.S.2d 773 (4th Dep't 2007).

**\*3** Capra appealed his conviction to the New York State Supreme Court Appellate Division, Third Department. Among the issues raised in that appeal was his contention that the crime to which he pleaded was a misdemeanor offense of criminal possession of a weapon in the fourth degree and that he therefore should have been sentenced accordingly. The Third Department rejected that argument, noting that even though the court did not specifically require Capra to admit that he had previously been convicted of a crime during his plea allocution, at that time petitioner made no statements calling into question his actual guilt or raising a possible defense. *People v. Capra,* 28 A.D.3d 824, 798 N.Y.S.2d 791 (3d Dep't 2005). The Third Department thus concluded that Capra knowingly entered a plea to a felony charge of criminal possession in the third degree and affirmed his conviction.[4] Petitioner's application for leave to appeal to the Court of Appeals was subsequently denied on November 4, 2005. *See* State Court Records (Dkt. No. 11) Exh. Q (Letter Request For Permission To Appeal) and Exh. R (Certificate Denying Leave). It appears that petitioner did not file any state court

proceedings, including under New York Criminal Law § 440.10, collaterally challenging his conviction.

4      The Appellate Division also noted that to the extent petitioner was challenging the sufficiency of his plea allocution based upon the fact that he did not admit a prior conviction, that claim was unpreserved based upon his failure to move to withdraw the plea or vacate his judgment of conviction. *Capra,* 28 A.D.3d at 825, n.*, 798 N.Y.S.2d 791, n*.

## II. *PROCEDURAL HISTORY*

Petitioner commenced this proceeding on October 6, 2005 and was thereafter granted leave to proceed *in forma pauperis*. Dkt. Nos. 1, 3. Appropriately named as the respondent in Capra's petition is Darwin LeClair, superintendent of the prison facility in which he was housed at the time of filing. *See* Petition (Dkt. No. 1). In his petition, Capra has raised four grounds for habeas relief. In the first, petitioner reiterates his argument that the crime to which he entered a plea of guilty was a misdemeanor, and he therefore should not have received a felony sentence. Petitioner's second basis for relief is that he received ineffective assistance of counsel when advised to enter a felony plea to what, he contends, was a misdemeanor charge in the indictment against him. Although the constitutional basis upon which they are predicated is unclear, the third and fourth grounds petitioner asserts complain that he was never informed by the district attorney or the court that he was actually charged with a misdemeanor rather than a felony. Issue was joined on February 15, 2007 by respondent's filing of an answer to Capra's petition, accompanied by a memorandum of law and the relevant state court records, which were well-organized and helpfully indexed. Dkt. Nos. 9, 10 and 11.

This matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Exhaustion Of Remedies/Procedural Default*

As a threshold matter, respondent asserts that the court need not reach the merits of Capra's petition because his misdemeanor conviction argument, though raised in the

Third Department, was not based upon federal constitutional principles. Respondent further contends that in any event, the argument was not referenced in Capra's application for leave to appeal to the New York Court of Appeals and is therefore both unexhausted and procedurally defaulted. Respondent additionally argues that petitioner's second ground, alleging ineffective assistance of counsel, has never been properly presented to the state courts, thereby precluding him from seeking habeas relief at this juncture from this court. 5

5      Although not specifically mentioned in the section of respondent's brief addressing exhaustion, the same argument applies equally to Capra's third and fourth grounds for relief.

**\*4** Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies, or establish either an absence of available state remedies or that such remedies cannot adequately protect his or her rights. *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir.1994), *cert. denied,* 515 U.S. 1118, 115 S.Ct. 2269 (1995). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of N. Y.,* 696 F.2d 186, 191 (2d Cir.1982) (citations omitted). "Comity concerns lie at the core of the exhaustion requirement." *Galdamez v. Keane,* 394 F.3d 68, 72 (2d Cir.), *cert. denied,* 544 U.S. 1025, 125 S.Ct. 1996 (2005). Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Id.* "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye,* 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been " 'fairly presented' " to the state courts. *See Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (quoting *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye,* 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192.

1. *Guilty Plea*

Petitioner's contention that he entered a plea to a misdemeanor, and should have been sentenced accordingly, was presented to the Third Department, though ultimately rejected. While acknowledging that the factual predicate for this argument was raised in context of petitioner's direct appeal, respondent asserts that petitioner's submissions to the Third Department did not alert that court to the constitutional underpinnings of his arguments.

The only reference to the Constitution or federal authority found in petitioner's state court appellate brief was his cite to the double jeopardy clause of the Fifth Amendment; his brief otherwise relied upon cases interpreting New York State law for the proposition that a criminal defendant who enters a plea to a misdemeanor charge cannot be sentenced to a term of incarceration of longer than one year. The gravamen of petitioner's argument to the state appellate court, however, was that the trial court exceeded its powers in accepting a misdemeanor plea and then sentencing him as a convicted felon. This argument plainly implicates the due process clause of the Fourteenth Amendment.

**\*5** The fact that the petitioner did not cite the Constitution or any federal cases in his brief to the Third Department is not necessarily dispositive of the question of whether proper exhaustion has occurred. *Jackson v. Edwards,* 404 F.3d 612, 619 (2d Cir.2005). A federal court may find that a claim has been properly exhausted if the factual predicate for the claim is fairly presented, and it would be obvious to a court that the argument implicates federal constitutional concerns. It is well established that "[e]xhaustion does not require citation of 'book and verse of the federal constitution' ". *Id.* (quoting *Picard,* 404 U.S. at 278, 92 S.Ct. at 513). Since the policy considerations underlying the exhaustion requirement are focused upon insuring that state courts are given the first opportunity to remedy violations of a defendant's federal rights, this concern is satisfied when an argument, though not explicitly referencing a federal constitutional provision, is addressed and decided by the state courts. *Jackson,* 404 F.3d at 619–20.

In this instance, while the issue is undeniably a close one, the argument raised by the petitioner to the Third Department appears to fairly implicate the question of whether his due process rights were violated when sentenced to more than one year on a conviction which, he contends, was for a misdemeanor. Accordingly, giving the petitioner the benefit

of the doubt, I conclude that his first ground for habeas relief was fairly presented to the Third Department.

As an adjunct to his main exhaustion argument, respondent further asserts that even if raised to the Third Department, petitioner's letter to the New York Court of Appeals did not alert that court to the argument and instead was focused specifically on whether it was proper for him to have been resentenced to an indeterminate period of incarceration after having previously received a determinate sentence. *See* State Court Records (Dkt. No. 11) Exh. Q. As a result, respondent argues, regardless of whether the constitutional argument now raised was presented to the Third Department, it clearly was not properly raised to the Court of Appeals, the state's highest court. Petitioner's letter submission to that court enclosed other materials, including his brief to the Third Department wherein the argument now forming the basis for Capra's first ground for habeas relief was set forth; by merely including this argument in a secondary submission, however, without specifically drawing the Court of Appeals' attention to his claim, Capra cannot establish that the court was fairly apprised of the argument now interposed. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) ("The only possible indication that [petitioner's] other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court. This did not fairly apprise the court of the two claims.... [T]he New York Court of Appeals has no 'duty to look for a needle in a paper haystack.' ") (citations omitted); *see also, Morgan v. Bennett,* 204 F.3d 360, 369 (2d Cir.), *cert. denied,* 531 U.S. 819, 121 S.Ct. 59 (2000).

**\*6** The exhaustion requirement mandates that before seeking federal habeas relief a petitioner must fairly present his or her claims to the highest court in the state of conviction. *O'Sullivan v. Boerkel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 1732 (1999). Since none of petitioner's claims were raised before the Court of Appeals, his claims remain unexhausted.

Respondent argues that Capra's claims, in addition to being unexhausted, are procedurally barred and thus can be denied on this procedural basis. When a claim has never been presented to a state court, a federal court may find that there is an absence of available state corrective process under § 2254(b) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio,* 269 F.3d at 90 (citing *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997)); *Lurie v. Wittner,* 228 F.3d 113, 124 (2d Cir.2000) (federal court may address merits of a habeas petition containing

unexhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile), *cert. denied, 532 U.S. 943, 121 S.Ct. 1404 (2001).* As such, I must determine whether it would be futile for petitioner to present the newly-asserted theories regarding the indictment on which he was tried to the state courts.

Petitioner cannot now file an appeal with the Third Department in order to advance any potentially unexhausted claim, since in New York a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio,* 269 F.3d at 91. Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing N.Y.Crim. Proc. Law § 440 .10(2)(c)), petitioner cannot now properly raise any of his claims, which are all based upon the record, in a section 440 motion. *Aparicio,* 269 F.3d at 91; *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436 (1995). To the extent petitioner's claims have not been fairly presented to the state courts, they are therefore "deemed exhausted" for purposes of the pending habeas application. *Spence v. Superintendent, Great Meadow Corr. Fac.,* 219 F.3d 162, 170 (2d Cir.2000); *Senor v. Greiner,* No. 00–CV–5673, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002). [6]

[6]      Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

In addition to being deemed exhausted, petitioner's four grounds for habeas relief are also procedurally defaulted. *See Aparicio,* 269 F.3d at 90, 96. Accordingly, a federal court may not engage in habeas review of the claim unless the petitioner demonstrates either 1) both good cause for and actual prejudice resulting from his procedural default, or 2) that the denial of habeas relief would leave unremedied a fundamental miscarriage of justice. *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000); *Garcia v. Lewis,* 188 F.3d 71, 76–77 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995), *cert. denied,* 520 U.S. 1106, 117 S.Ct. 1112 (1997). Under this second exception, which is both exacting and intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent [,]" *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649 (1986); *see also, House v. Bell,* 547 U.S. 518, 536,126 S.Ct. 2064, 2076 (2006); *Lebron v. Mann,* 40 F.3d 561, 564 (2d Cir.1994), "the

principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *Murray,* 477 U.S. at 495, 106 S.Ct. at 2649 (quoting *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576 (1982)).

**\*7** To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant state procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 2566–67 (1991) (citing *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645); *Restrepo v. Kelly,* 178 F.3d 634, 640 (2d Cir.1999) (citing, *inter alia, Coleman* ). Examples of such external mitigating circumstances can include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. [7] *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. When a petitioner has failed to establish adequate cause for his or her procedural default, the court need not go on to also examine the issue of prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985); *Long v. Lord,* No. 03–CV–0461, 2006 WL 1977435, at *6 (N.D.N.Y. March 21, 2006) (McCurn, S.J.) (citing, *inter alia, Stepney* ); *Staley v. Greiner,* No. 01 Civ. 6165, 2003 WL 470568, at *7 (S.D.N.Y. Feb. 6, 2003) (citing *Stepney* ). In such a case, absent evidence to show the petitioner's innocence of the crime of conviction, no basis is presented to conclude that the failure to consider the merits of the federal claim would result in a fundamental miscarriage of justice, which has been interpreted as amounting to "an unjust incarceration." *Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 170 (2d Cir.2000).

[7]      It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error .' " *Coleman,* 501 U.S. at 753, 111 S.Ct. at 2566–67 (quoting *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645).

Here, petitioner has offered nothing that would suffice to establish cause for his procedural default. Nor has he advanced any credible claim of actual innocence, a claim that would fly in the face of his plea allocution during which he admitted the essential elements of the crime of his conviction.

Capra v. LeClair, Not Reported in F.Supp.2d (2010)

2010 WL 3323676

Accordingly, petitioner's four claims are deemed exhausted but procedurally forfeited and thus subject to dismissal on this procedural basis without the need to reach the merits of those claims.

B. *Standard Of Review*

Before turning to the merits of petitioner's claims as an alternative potential basis for dismissal, it is important to understand the backdrop against which those claims must be judged. Enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), brought about significant new limitations on the power of a federal court to grant habeas relief to a state court prisoner under 28 U.S.C. § 2254. Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *see also Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001) (quoting § 2254(e)(1)) (internal quotations omitted). Significantly, a federal court may not grant habeas relief to a state prisoner on a claim

**\*8** that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Thibodeau v. Portuondo,* 486 F.3d 61, 65 (2d Cir.2007); *Noble v. Kelly,* 246 F.3d 93, 98 (2d Cir.), *cert. denied,* 534 U.S. 886, 122 S.Ct. 197 (2001); *Boyette,* 246 F.3d at 88. When applying this test, the Second Circuit has noted that

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? (2) If so, was the

> state court's decision "contrary to" that established Supreme Court precedent? (3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Francis S. v. Stone,* 221 F.3d 100, 108–09 (2d Cir.2000) (citing *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495 (2000)).

Because the AEDPA's restriction on federal habeas power was premised in no small part upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's exacting review standards apply only to federal claims which have been actually adjudicated on the merits in the state court. *Washington v. Schriver,* 255 F.3d 45, 52–55 (2d Cir.2001). Specifically, as the Second Circuit explained in *Sellan v. Kuhlman,* "[f]or the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." 261 F.3d 303, 312 (2d Cir.2001); *see Jimenez v. Walker,* 458 F.3d 130, 140 (2d Cir.2006) (citing *Sellan* ), *cert. denied sub nom., Jimenez v. Graham,* 549 U.S. 1133, 127 S.Ct. 976 (2007). Significantly, the Second Circuit further held that when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d) (1) to the state court's decision on the federal claim—*even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.*" *Sellan,* 261 F.3d at 312 (emphasis added). [8] , [9]

[8] 
In the past, when wrestling with interpretation and application of the AEDPA's deference standard the Second Circuit had suggested, although leaving open the question, that deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim in a manner adequate to justify deference under the AEDPA, in which case pre-AEDPA standards would apply. *Washington,* 255 F.3d at 52–55; *see also, Noble,* 246 F.3d at 98. That court clarified in *Sellan,* however, that the question of whether or not a state court makes specific reference to a constitutional principle is not controlling.

9

    In his opinion in *Sellan,* Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA deference standard. *Sellan,* 261 F.3d at 312. He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so. *Id.*

When it is determined that a state court's decision was decided "on the merits", that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405–06, 120 S.Ct. at 1519–20. Additionally, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable". *Sellan,* 261 F.3d at 315 (quoting *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521 (O'Connor, J.)). The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great [.]" *Francis S.,* 221 F.3d at 111.

### C. *Merits Of Petitioner's Claims*

  **\*9** Petitioner's four habeas claims all hinge upon his contention that when pleading guilty he was not informed by the court, the district attorney, or his counsel that he was pleading to a felony charge. In Capra's view, he admitted the commission of a misdemeanor offense, but was sentenced as a convicted felon. While the precise nature of the constitutional claim associated with this ground is unclear, I have interpreted it as asserting a due process claim, based upon an assertion that his plea was not knowingly and voluntarily entered, to the extent that it is construed by the trial court as a felony plea.

### 1. *Clearly Established Supreme Court Precedent*

The standard governing the acceptance of guilty pleas is neither recently evolved nor controversial. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct.

160, 164 (1970) (citations omitted)); *see also Parke v. Raley,* 506 U.S. 20, 28–29, 113 S.Ct. 517, 523 (1992) (plea is valid when it is both knowingly and voluntarily made); *Boykin v. Alabama,* 395 U.S. 238, 242–43, 89 S .Ct. 1709, 1711–12 (1969) (United States Constitution requires that guilty plea be intelligently and voluntarily entered). A knowing plea is entered " 'with understanding of the nature of the charge and the consequences of the plea.' " *Santobello v. New York,* 404 U.S. 257, 261 n. 1, 92 S.Ct. 495, 498 n. 1 (1971) (quoting Fed.R.Crim.P. 11); *see Martinez v. Costello,* No. 03 CIV 2763, 2004 WL 26306, at \*5 (S.D.N.Y. Jan. 5, 2004) (citing *Santobello* and Fed.R.Crim.P. 11); *see also Hanson v. Phillips,* 442 F.3d 789, 798 (2d Cir.2006).

Applying this standard, to establish that a criminal defendant's guilty plea was knowingly, intelligently, and voluntarily entered the court must find, based upon the record of the relevant plea proceedings, that he or she 1) was competent to proceed and was fully aware of the nature of the charges faced; 2) had a rational and factual understanding of the proceedings; and, 3) was cognizant of the constitutional protections relinquished upon entry of the plea. *Oyague v. Artuz,* 393 F.3d 99, 106 (2d Cir.2004); *Matusiak v. Kelly,* 786 F.2d 536, 543 (2d Cir.), *cert. dismissed,* 479 U.S. 805, 107 S.Ct. 248 (1986). While "the question of whether a plea of guilty has been entered voluntarily within the meaning of the Constitution is often a complex one that involves mixed questions of law and fact[,]" the ultimate issue of whether a plea represents an effective waiver of federal Constitutional rights is controlled by federal law. *Oyague,* 393 F.3d at 104.

### 2. *Contrary To Or Unreasonable Application Of Clearly Established Supreme Court Precedent*

When judged against this standard, the evidence in this case is fully supportive of the Third Department's finding that the petitioner's guilty plea to a felony charge was knowing, voluntary, and intelligent. As a result of plea negotiations petitioner was permitted to plead to a Class D felony in full satisfaction of an indictment that also included a Class B violent felony charge of first degree robbery. The count to which the plea was entered, the second count of a two-count indictment returned on May 28, 2003, charged plaintiff with criminal possession of a weapon in the third degree, a Class D felony, and specifically noted that it did in fact charge at that felony level. While it is true that the section cited actually pertains to criminal possession of a weapon in the fourth degree, a Class A misdemeanor, it is abundantly clear from reading the text of the indictment that this represents a typographical error. The indictment was accompanied by the

filing, also on May 28, 2003, of a special information charging a predicate offense, thereby plainly signaling to the petitioner and his counsel that a third degree weapons charge, for which such a conviction is an essential element, was being lodged.

**\*10** Even if one were to find that the indictment was equivocal concerning the level of offense charged in count two, the colloquy exchange between Capra and the court prior to the entry of his plea provided the necessary clarification. During his plea allocution petitioner was informed that if he pleaded guilty to the second count, described as criminal possession of a weapon in the third degree, he would be sentenced to a determinate sentence of seven years, a sentence consistent with a felony conviction, and was further informed that as a second felony offender, an additional period of post-release supervision for five years would be imposed. State Court Records (Dkt. No. 11) Exh. E (Plea Minutes) at p. 2. At the conclusion of the plea proceedings when petitioner was asked how he pleaded to criminal possession of a weapon in the third degree, he responded, "[g]uilty." *Id.* at p. 10. Tellingly, when plaintiff was initially sentenced to a determinate sentence of seven years of incarceration based upon his plea, he made no request to withdraw his guilty plea despite the imposition of a sentence far exceeding that which would be proper for a misdemeanor weapon possession conviction. Under these circumstances, the Third Department's conclusion that defendant's plea to a Class D felony charge of criminal possession of a weapon in the third degree was knowing and voluntary is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. I therefore recommend that the habeas claims set forth in Capra's petition be denied.

## IV. *SUMMARY AND RECOMMENDATION*

The record in this case firmly establishes that the petitioner entered a plea to third degree weapon possession, a Class D felony, in full satisfaction of an indictment that also charged him with a violent Class B felony, and that when entering his plea he knew full well that he was pleading guilty to a felony count and would be sentenced accordingly. Significantly, at no point did petitioner seek leave in the state courts to withdraw his plea in order to take advantage of an obvious typographical error regarding the Penal Law section cited in the indictment; indeed, his current effort to do so amounts to nothing more than an attempt to obtain an unanticipated windfall from that innocuous circumstance. Having concluded that petitioner is procedurally barred from raising the claims now advanced and that in any event petitioner's habeas claims lack merit, it is therefore respectfully

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

**\*11** It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3323676

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4105398
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Frederic C. CARPENTER, Jr., Petitioner,
v.
David UNGER, Superintendent of Wyoming
Correctional Facility, Respondent.
Frederic C. Carpenter, Jr., Petitioner,
v.
David Unger, Superintendent of Wyoming
Correctional Facility, Respondent.

Nos. 9:10–CV–1240 (GTS/TWD),
9:12–CV–0957 (GTS/TWD).
|
Signed Aug. 20, 2014.

**Attorneys and Law Firms**

Frederic C. Carpenter, Jr., Cortland, NY, pro se.

Hon. Eric T. Schneiderman, Paul B. Lyons, Esq., Assistant
Attorney General, Lisa Fleischmann, Esq., of Counsel, New
York, NY, for the State of New York Counsel for Respondents.

***DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

*\*1* Frederic C. Carpenter ("Petitioner") filed Petitions for a
writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 in both
of the above-captioned actions. By Report–Recommendation
dated March 28, 2014, United States Magistrate Judge
Thérèse Wiley Dancks recommended that both actions be
dismissed pursuant to 28 U.S.C. § 2253(c)(2), and that a
certificate of appealability not be issued with regard to any
of Petitioner's claims. (Dkt. No. 52.) On April 23, 2014,
Petitioner filed Objections to the Report–Recommendation.
(Dkt. No. 55.) For the reasons set forth below, Magistrate
Judge Dancks' Report–Recommendation is accepted and
adopted in its entirety; both actions are dismissed; and a
certificate of appealability not be issued with regard to any of
Petitioner's claims.

# I. RELEVANT BACKGROUND

For the sake of brevity, the Court will not repeat the factual
background of Petitioner's conviction of July 31, 2000, for
rape in the second degree (Indictment 99–112), and his
conviction of and March 30, 2000, for sexual abuse in the
first degree (Indictment 98–82). Rather, the Court will simply
refer the parties to the relevant portions of Magistrate Judge
Dancks' Report–Recommendation, which accurately recite
that factual background. (Dkt. No. 52, at Part II.)

## A. Petitioner's Claims

**1. Petitioner's Claims in Lead Case No. 9:10–CV–1240**
Petitioner filed his original Petition in the lead case on
October 18, 2010. (Dkt. No. 1.) He filed an Amended Petition
in that case on August 20, 2012, asserting the following
six claims: (1) a claim that his motion to withdraw his
guilty plea under Indictment 99–112 and his motion to
vacate his judgment of conviction under Indictment 98–82
were improperly denied in violation of the Fifth, Sixth, and
Fourteenth Amendments; (2) a claim that the Government
failed to disclose exculpatory evidence in violation of the
Fifth, Sixth, and Fourteenth Amendments; (3) a claim that
the trial judge violated Fed.R.Crim.P. 11(c)(1) by threatening
Petitioner to accept the prior plea agreement, and defense
counsel refused to provide legal advice causing Petitioner to
enter an involuntary and unknowing guilty plea, in violation
of the Fifth, Sixth, and Fourteenth Amendments; (4) a claim
that Judge Smith lacked jurisdiction to compel Petitioner to
withdraw his guilty plea under Indictment 99–112 as part
of his plea in pending Indictment 98–82; (5) a claim that
the Government's prosecutor improperly promised Petitioner
that his postrelease supervision under Indictment 99–112
would run concurrently with his probation violation; and (6)
a claim that Petitioner received ineffective assistance from
Attorneys Butler and Adinolfi in violation of the Fifth, Sixth,
and Fourteenth Amendments. (Dkt. No. 35, at "Ground One"
Through "Ground Six.")

**2. Petitioner's Claims in Member Case No. 9:12–CV–
0957**
Petitioner filed his Petition in the member case on June 13,
2012, asserting the following four claims: (1) a claim that
his guilty plea was not voluntary, knowing, and intelligent
because he was coerced to plead guilty by Attorney Butler;
(2) a claim that Petitioner was denied effective assistance
of counsel by Attorney Butler; (3) a claim that Judge Ames
improperly denied Petitioner a hearing on his Section 440.10
motion; and (4) the Appellate Division overruled the Judge's

denial of the Section 440.10 motion. (Dkt. No. 1, at "Ground One" Through "Ground Four.")

### B. Magistrate Judge Dancks' Report–Recommendation

#### 1. Recommendations as to Lead Case (No. 9:10–CV–1240)

*2 On March 28, 2014, Magistrate Judge Dancks issued her Report–Recommendation. (Dkt. No. 52.) Generally, in her Report–Recommendation, Magistrate Judge Dancks made the following seven recommendations: (1) that the Court deny Petitioner's claim that his guilty plea to rape in the second degree (Indictment 99–112) was not voluntarily, knowingly and intelligently made, because there is insufficient evidence in the state court record to overcome the strong presumption of verity of statements made by him in his plea allocution; (2) that the Court deny Petitioner's claim that Judge Smith violated Fed.R.Crim.P. 11(c)(1), because the statute does not apply to state court judges; (3) that the Court deny Petitioner's ineffective-assistance-of-counsel claim, because he has failed to put forth evidence that Attorney Adinolfi's representation fell below reasonable standards or that he was prejudiced in any way; (4) that the Court deny Petitioner's claim that Judge Smith lacked jurisdiction to withdraw his motion, because Petitioner failed to include this claim in his direct appeal; (5) that the Court deny Petitioner's claim that the prosecutor improperly promised a concurrent sentence and probationary term in exchange for his guilty plea, because the state court transcript reveals that a concurrent probationary term was never discussed during Petitioner's plea hearing; (6) that the Court deny Petitioner's claim that prosecutors failed to turn over exculpatory evidence, because the claim is unexhausted and procedurally barred; and (7) that the Court deny Petitioner's claim that Judge Smith violated his due process rights by denying his motion to withdraw his guilty plea or failing to hold an evidentiary hearing, because the Court has determined that Petitioner's plea was voluntary and knowing. (Id. at Part III.)

#### 2. Recommendations as to Member Case (No. 9:12–CV–0957)

Also in her Report–Recommendation of March 28, 2014 (Dkt. No. 52), Magistrate Judge Dancks made the following three recommendations with respect to Petitioner's claims in the member case: (1) that Petitioner failed to submit evidence to support the allegation that his guilty plea was coerced; (2) that, during his plea allocution before Judge Ames, Petitioner

acknowledged he was ready to enter guilty plea, indicated he was satisfied with representation by counsel, and denied that he had been subjected to any acts of coercion or threats; and (3) that the trial court's denial of Petitioner's Section 440.10 hearing request does not constitute a violation of federal law, because procedural errors in post-conviction proceedings do not implicate federal law and thus, are not applicable to Section 2254 review. (Id. at Part IV.)

### C. Petitioner's Objections to the Report–Recommendation

On April 23, 2014, Petitioner filed his Objections to the Report–Recommendation. (Dkt. No. 55.) Generally, in his 47–pages of Objections, Petitioner asserts a variety of factual and legal arguments, the "crux" of which is that Magistrate Judge Dancks erred by failing to cite, and "adhere to [the] mandates" of, *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), which (he argues) requires that, before deciding his ineffective-assistance-of-counsel claim, the Court hold a hearing, to establish the off-the-record remarks made between Petitioner and Judge Smith and/or Attorney Adinolfi, before sentencing. (Id. at 6 [attaching page "2" of Petitioner's Supporting Affid.].)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard Governing Review of Report–Recommendation

*3 When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.,* 04–CV–0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug.15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the

magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley,* 752 F.Supp.2d 311, 312–13 (W.D.N.Y.2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

1   See also *Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

2   See *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [4]

3   See *Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept.20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–1077, 2010 WL 2985968, at *3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan.18, 2006) (Sharpe, J.).

4   See also *Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

### B. Standard Governing Review of Petitioner's *Habeas* Petition

*4 Magistrate Judge Dancks has recited the correct legal standard governing review of Petitioner's *habeas* petition pursuant to 28 U.S.C. § 2254(d). (Dkt. No. 52, at Parts III.A. through III.C.) As a result, this standard is incorporated by reference in this Decision and Order, which is intended primarily for review of the parties.

### III. ANALYSIS

After carefully reviewing all of the papers in this action, the Court can find no error in Magistrate Judge Dancks' Report–Recommendation, clear or otherwise. Magistrate Judge Dancks employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Dkt. No. 52, at Parts II through IV.) As a result, the Court accepts and adopts Magistrate Judge Dancks' Report–Recommendation in its entirety for the reasons stated therein. (*Id.*)

The Court will merely add a few brief observations regarding the primary argument in Petitioner's Objections. *See, supra,* Part I .C. of this Decision and Order. As an initial matter, the argument is sufficiently repetitive of arguments submitted to Magistrate Judge Dancks (*see, e.g.,* Dkt. No. 50, at 57 [attaching page "52" of Petitioner's Traverse] ) to subject the relevant portion of the Report–Recommendation to only a clear-error review (which it survives). *See, supra,* note 3 of this Decision and Order. In any event, the Court does not read Massaro as requiring a hearing in this circumstance. The Court notes that Petitioner's claims of off-the record interactions with Attorney Adinolfi and/or Judge Smith (in addition to being wholly inconsistent with the record) are so unreasonably conclusory and/or incredible as to be facially invalid.

### ACCORDINGLY, it is

**ORDERED** that Magistrate Judge Dancks' Report–Recommendation (Dkt. No. 52) is *ACCEPTED* and *ADOPTED* in its entirety; and it is further

**ORDERED** that both of the above-captioned actions are *DISMISSED;* and it is further

**ORDERED** that a certificate of appealability shall not issue with respect to any of the claims set forth in the Petition, because Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).

### *ORDER and REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

### I. INTRODUCTION

Petitioner Frederic C. Carpenter, Jr., a New York State prison inmate appearing *pro se,* has filed two timely petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [1] The proceedings were consolidated in July 24, 2012, Text Orders in *Carpenter v. Unger,* No. 9:10–CV–1240 and No. 9:12–CV–957. [2]

[1]     Respondent has conceded that both proceedings are timely. (Dkt. No. 44 at 29–30.)

[2]     Petitioner's first filed habeas corpus proceeding, *Carpenter v. Unger,* No. 9:10–CV1240, has been designated as the lead case, and the parties have been directed to file all papers in proceedings No. 9:10–CV–1240 and No. 9:12–CV–957 under No. 9:10–CV–1240. *See* Text Order of August 20, 2012, in *Carpenter v. Unger,* No. 9:10–CV–1240.

In his Amended Petition in No. 9:10–CV–1240, Petitioner challenges the judgment of conviction entered in Broome County Court under Indictment No. 98–82, based upon his July 31, 2000, guilty plea to Rape in the Second Degree under N.Y. Penal Law ("Penal Law") § 130.30, as well as the judgment of conviction entered in Cortland County Court under Indictment No. 99–112, based upon his March 30, 2000, guilty plea to Sexual Abuse in the First Degree under Penal Law § 130.65. [3] (Dkt. Nos. 35 and 46–1 at 28.) [4] The Petition in No. 9:12–CV–957 is limited to the judgment of conviction under Indictment No. 99–112. (Dkt. No. 46 at 224; No. 9:12–CV–957, Dkt. No. 1.) For the reasons that follow, the Court recommends that Petitioner's Amended Petition in No. 9:10–CV–1240 (Dkt. No. 35) and his Petition in No. 9:12–CV–957 (No. 9:12–CV957, Dkt. No. 1) be denied.

3    The Amended Petition is identified as having been filed solely to seek habeas relief with regard to Indictment No. 98–82. (Dkt. No. 35 at 1). The claims in the Amended Petition that relate to Indictment No. 99–112 arise out of Petitioner's agreement to withdraw his motion to withdraw the guilty plea entered on Indictment No. 99–112 as a part of his guilty plea under Indictment No. 98–82. *Id.* at 5–7.

4    Unless otherwise indicated, docket references made herein refer to No. 9:10–CV–1240.

## II. BACKGROUND

### A. Indictment No. 98–82
**\*5** In 1998, Petitioner was indicted for Sexual Abuse in the Second Degree, Penal Law § 130.60(2) (subjecting a person less than fourteen years old to sexual conduct); Rape in the Second Degree, Penal Law § 130.30 (a person eighteen or more engaging in sexual intercourse with a person to whom he is not married who is less than fourteen years old); and Endangering the Welfare of a Child, Penal Law § 260.10(1) (knowingly acting in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old, by subjecting the child to sexual intercourse). (Dkt. No. 46–3 at 253–55.)

Plaintiff entered a guilty plea to Rape in the Second Degree, Penal Law § 130.30, in satisfaction of the charges on July 31, 2000, before the Hon. Martin E. Smith, a Broome County Court Judge assigned to the case after Cayuga County Court Judge Emerson R. Avery, Jr. granted Petitioner's third motion for recusal on bias grounds. (Dkt. Nos. 46 at 298–299, 325; 46–1 at 28.) Judge Smith agreed to sentence Petitioner, adjudicated a second violent felony offender, to two to four years to run concurrently with a four to twelve year sentence Petitioner was already serving in connection with a probation violation.[5] *Id.* at 17–18; *see also* Dkt. No. 46 at 211, 214. Petitioner also agreed to waive his appeal rights. (Dkt. No. 46–1 at 17–18.)

5    Petitioner was originally sentenced to a term of probation on a charge of Criminal Possession of a Controlled Substance in the Fourth Degree, Penal Law § 220.09. (Dkt. No. 46 at 214, 204.) The substance involved was crack cocaine. *Id.* at 214. At a probation violation hearing in Cortland

County Court on June 15, 1999, Petitioner was found to have violated the terms of his probation by continuing to use crack cocaine and given an indeterminate sentence of four to twelve years, with a minimum of four years to be served. *Id.* at 172–73, 206–07, 211.

### B. Indictment No. 99–112
On August 12, 1999, while the charges under Indictment No 98–82 were pending, Petitioner was indicted on charges of Unlawful Imprisonment Second, Penal Law § 135.05 (restraint of another person); Attempted Sodomy in the First Degree, Penal Law §§ 110.00 and 130.50 (attempting to engage in oral or anal sexual conduct with another person by forcible compulsion); Sodomy in the First Degree, Penal Law § 130.50(1) (engaging in oral or anal sexual conduct with another person by forcible compulsion); and Sexual Abuse in the First Degree, Penal Law § 130.65(1) (subjecting another person to sexual contact by forcible conduct), in connection with an incident involving his estranged wife. (Dkt. No. 46 at 7, 152–55.) At his March 30, 2000, plea allocution, Petitioner admitted that on March 26, 1999, he tied his wife's wrists together behind her back and had sexual intercourse with her against her will. *Id.* at 229.

Cortland County Court Judge William F. Ames agreed to sentence Petitioner to a determinate sentence of three years to run concurrently with the four to twelve year sentence Petitioner was already serving and any sentence imposed under Indictment No. 98–82, and five years post-release supervision; waiver of the right to appeal except as to certain issues; performance of an HIV test; waiver of a sex offender risk assessment hearing; and an order of protection in favor of the victim for six years. (Dkt. Nos. 46 at 223; 46–1 at 136–140, 149–150.)

### C. Petitioner's Dissatisfaction with Defense Counsel and Motion to Withdraw His Guilty Plea Under Indictment No. 99–112
**\*6** When Petitioner appeared for sentencing on his guilty plea under Indictment No. 99–112 on May 31, 2000, Matthew Butler, from the Butler Law Firm, appearing as Petitioner's counsel, informed Judge Ames that Petitioner wanted an opportunity to address the Court. (Dkt. No. 46 at 238.) Petitioner told Judge Ames that he had not been informed before pleading guilty that he would have to swear and lie under oath to take this plea. *Id.* at 238–39. When Judge Ames cautioned Petitioner that he should express his concerns

through his attorney because anything he said could be used against him at trial were the plea vacated, Petitioner informed the Court that he had not heard from his attorney since he entered the guilty plea. *Id.* at 239.

Judge Ames adjourned the sentencing because Petitioner requested an opportunity to talk to his attorney, David Butler ("Butler"), also of the Butler Law Firm. (Dkt. No. 46 at 242.) On June 1, 2000, Public Defender David J. Adinolfi, II ("Adinolfi"), Petitioner's defense counsel on Indictment No. 98–82, wrote to Assistant District Attorney Wendy Franklin ("ADA Franklin") informing her that he had spoken with Petitioner and the Butler Law Firm, and was advised by Petitioner that if his guilty plea on Indictment No. 99–112 were vacated, Petitioner would accept: (1) an *Alford* plea relative to Indictment No. 99–112, conditioned upon the previously agreed three year determinate sentence to run concurrently with the probation violation sentence; and (2) a plea to Attempted Rape in the Second Degree relative to Indictment No. 98–82, conditioned upon a sentence of one and a half to three years to run concurrently with the terms imposed for the probation violation and under Indictment No. 99–112. *Id.* at 240, 242.

When Petitioner reappeared for sentencing before Judge Ames on June 2, 2000, accompanied by his attorney, Butler informed the court that Petitioner had been in contact with a number of attorneys and had advised Butler that he was not satisfied with the services he had rendered at the plea. *Id.* at 244. According to Butler, Petitioner had indicated to him that he wanted to terminate Butler's services and potentially make a motion to withdraw his guilty plea. *Id.* Petitioner told the Court he wanted time to obtain another attorney, most likely Adinolfi, and to discuss moving to withdraw the plea with him. *Id.* at 244–47. Judge Ames adjourned sentencing until July 5, 2000. *Id.* at 247–48.

ADA Franklin responded to Adinolfi's June 1st letter on the following day after sentencing had been adjourned. *Id.* at 250–51. Franklin informed Adinolfi that the People would accept only the sentence agreed to at the time of the guilty plea on Indictment No. 99–112. With regard to Indictment No. 98–82, the District Attorney would accept a plea to Rape in the Second Degree, provided Petitioner agreed to a full allocution of the crime; three and a half to seven years to run concurrently with the probation violation sentence and any sentence on Indictment No. 98–82; waiver of appeal rights; HIV test; order of protection for the victim for ten years; and

registration as a sex offender with a waiver of the right to a risk level hearing. (Dkt. No. 46 at 251.)

**\*7** Thereafter, on June 14, 2000, Adinolfi filed a motion to withdraw Petitioner's guilty plea under Indictment No. 99–112. *Id.* at 252. Adinolfi filed a supplemental motion to withdraw on June 29, 2010.[6] *Id.* at 258. According to Petitioner's moving papers, his family had retained Butler to represent him on Indictment No. 99–112 in 1999. *Id.* at 261. In February of 2000, when Petitioner's family could not meet Butler's demands for additional money, Butler cut off communications with Petitioner, leading him to contact the Public Defender's Office in March of 2000, to find out if Butler was still representing him.

[6]     Petitioner initially moved to withdraw his guilty plea under CPL § 440.10. (Dkt. No. 46 at 252.) Petitioner's counsel filed the supplemental motion after determining that because no sentence had yet been imposed or judgment of conviction had yet been entered, the motion was properly made under CPL § 220.60(3), which provides in relevant part that "[a]t any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, ... to withdraw such plea, and in such event the entire indictment, as it existed at the time of such plea, is restored."

Petitioner claims that on the date of the plea, Butler met with him in a holding room at the courthouse and told him he was going to plead him out because Petitioner could not pay him an additional $4,500. *Id.* In two heated conversations, Butler instructed Plaintiff to plead guilty to sexual abuse pursuant to a plea bargain Butler had worked out. *Id.* Butler told Petitioner that the terms of the plea bargain were a three year determinate sentence to run concurrently with his sentence for the probation violation, a six year order of protection for his wife, and waiver of the right to appeal. (Dkt. No. 46 at 262.) According to Petitioner, he was a nervous wreck and was very frightened when he appeared before the court because he felt betrayed by his attorney, who had been paid $8,000 to take the case to trial. *Id.* Petitioner claims that when he attempted to speak with Butler during the plea allocution, Butler repeatedly told him to shut up and answer yes to the Judge's questions. *Id.* Petitioner contends he entered the plea under duress and as the result of coercion, without effective assistance of counsel, even though he wanted to take the case to trial because he

was innocent of the charges. *Id.* Petitioner believed that his estranged wife, the sole witness for the prosecution, had no credibility, and he himself had witnesses who would testify about being told by her that she was setting Petitioner up for a fall out of concern he would expose her drug use and drug dealing and obtain custody of their three infant children. *Id.*

In a July 5, 2000, appearance before Judge Ames, Adinolfi argued that Petitioner was entitled to a hearing on his motion under CPL § 220.60(3), while the People took the position that because the motion was made pre-sentencing, court review was confined to the plea record. *Id.* at 266–270. Judge Ames adjourned the motion and asked counsel to submit law on the hearing issue for his consideration. *Id.* at 271–72. The People submitted an affirmation and letter-memorandum of law in opposition to Petitioner's motion to withdraw his guilty plea on July 6, 2000. *Id.* at 275–281. Petitioner's counsel submitted case law to the court on July 11, 2000. *Id.* at 282.

On the adjourned date, Judge Ames referenced a letter he had sent to counsel informing them that he felt he could decide the matter on the papers and was inclined to grant the defense request to withdraw the guilty plea. *Id.* at 287. The People had responded to Judge Ames' letter with a July 25, 2000, letter advising the Court of a change in position with regard to a hearing on Petitioner's motion and requesting that a hearing be held. (Dkt. No. 46 at 282–85.) When Petitioner's counsel asked Judge Ames to issue an order vacating the plea in accordance with his letter during the appearance, Judge Ames indicated that his letter was not an order as much as what he was thinking. ADA Franklin reiterated the People's request for a hearing and Judge Ames ultimately agreed that a hearing would be held. *Id.* at 287–88.

### D. Petitioner's Withdrawal of His Motion to Withdraw His Guilty Plea Under Indictment No. 99–112 and His Guilty Plea Under Indictment No. 98–82

**\*8** On July 31, 2000, the parties appeared before Judge Smith for oral argument on the People's motion for re-argument and reconsideration of an adverse discovery order, and Petitioner's motions to dismiss Indictment No. 98–82 and for disclosure of records. (Dkt. No. 46 at 325–27.) During the course of oral argument, Judge Smith learned about Indictment No. 99–112 and Petitioner's pending motion to withdraw his guilty plea. (Dkt. No. 46–1 at 15–16.) The Judge thereupon told counsel he wanted to see them in chambers. *Id.* Following the in-chambers conference, Judge Smith called Petitioner up to the bench and informed him that during his discussion with counsel, a disposition of the case had been

proposed to the Court. *Id.* at 17. The Judge told Petitioner that he had informed Petitioner's counsel that for purposes of plea negotiations and disposition, he would consent to the proposal. *Id.*

Judge Smith described the proposed disposition to Petitioner as follows:

> Mr. Carpenter, there's several things involved here. First of all, if you were to enter a plea of guilty under this indictment, 98–82, if you were to enter a plea of guilty to the second count of that indictment which charges you with rape in the second degree, you would receive a sentence as a second felony offender. I am advised you are a second felony offender and you've already been adjudicated the same. I would impose a sentence of two to four years. That sentence of two to four years would run concurrent to a sentence you're now serving on a violation of probation. It would also involve thirdly, you withdrawing a motion that has apparently been made on your behalf in front of Judge Ames where you entered a plea of guilty to sexual abuse in the first degree in satisfaction of an indictment that charges you with sodomy in the first degree and for which you're to receive a sentence of three years determinate. And that all three sentences would run concurrently; that is, they would run at the same time. And it would also, fourthly involve you withdrawing all motions filed in this particular case. Agreed. Is that fairly stated, Mr. Adinolfi?

(Dkt. No. 46–1 at 17–18.) Judge Smith indicated that under the plea agreement, Petitioner would also be required to give up his right to appeal under Indictment Nos. 98–82 and No. 99–112. *Id.* The Court asked Adinolfi if Petitioner was willing to do that and Adinolfi responded in the affirmative. *Id.* at

19. When Judge Smith asked Petitioner if that was correct, Petitioner also responded in the affirmative. *Id.*

Petitioner accepted the plea agreement as explained to him in court. *Id.* at 17–27. Because of the prior nature of the proceedings involving Petitioner, Judge Smith insisted that the plea be under oath. *Id.* at 19–20. In his plea allocution on Indictment No. 98–82, Petitioner admitted to having engaged in sexual intercourse with an under fourteen year old female visitor at his home in April of 1998. (Dkt. No. 46–1 at 24–25, 28.) He conceded that the victim's grand jury testimony that Petitioner sat on the couch with her, pulled down his pants and engaged in sexual intercourse with her involving some degree of penetration was correct. *Id.* at 27–28.

### E. Petitioner's Motion to Withdraw his Guilty Plea on Indictment No. 98–82 and Sentencing by Judge Smith

**\*9** On August 14, 2000, Petitioner sent a letter to the State of New York Commission on Judicial Conduct ("CJC") complaining about Judge Smith. [7] (Dkt. No. 46–1 at 33–35.) Petitioner claimed that Adinolfi had told him that Judge Smith made an off the record statement that if Petitioner did not accept the plea agreement on Indictment No. 98–82 the Judge would:

[7]    Plaintiff sent more than one letter to the CJC complaining about Judge Smith and claiming he had been coerced into pleading guilty. (Dkt. No. 46–1 at 57–58, 114–16.)

use his "power" to have the Administrative Judge remove Judge Ames from the other pending case, and after removal, he would consolidate both cases for trial. Justice Smith said that if I was convicted of both Indictments, he would give me severe sentences to run consecutively, and to run consecutive to the current 4–to–12 year sentence. He also made it clear to my attorney that he would make sure that I didn't have appellate issues if convicted.

*Id.* at 34. Petitioner wrote that he was coerced by Judge Smith's threats into pleading guilty to a felony even though he was innocent of the charge. *Id.*

Petitioner sent a copy of his letter to the CJC to Adinolfi and asked him to use the facts set forth in the letter to prepare a motion to withdraw his plea and recuse Judge Smith. *Id.* at 36. In an August 16, 2000, letter to Petitioner, Adinolfi responded: "It does not appear to me that there are any non-frivolous issues on which to file motions for recusal or withdrawal of your Guilty Plea. Attorneys are ethically

obligated not to file frivolous motions, so we cannot file the motions you have requested unless there are some non-frivolous issues." at 37.

On August 21, 2000, Petitioner wrote to Judge Smith to inform him that Adinolfi had told him he would not move to withdraw the guilty plea and recuse the Judge on Petitioner's behalf. *Id.* at 49. Petitioner requested that Judge Smith appoint a Syracuse, New York attorney to represent him. *Id.* In an August 22, 2000, affirmation in reply to Petitioner's written request to relieve the Cortland County Public Defender's as his assigned counsel, Adinolfi stated that Petitioner and the Public Defender's Office had reached an impasse with regard to strategy moving forward in the criminal cases in County Court. (Dkt. No. 46–1 at 55.) The specific nature of the impasse was described as the firm belief held by the Public Defender's Office that Petitioner's request that motions be filed for vacatur and recusal was not the correct strategy at that time. *Id.* Adinolfi also noted that Petitioner's allegation that Adinolfi could be a witness regarding his *pro se* motion for vacatur and recusal might have "some merit." *Id.* Adinolfi concluded that there was good cause for the Public Defender's Office to be relieved as counsel for Petitioner. *Id.* at 56.

On August 30, 2000, Plaintiff made a *pro se* motion for an order:

(1) Recusing Hon. Martin E. Smith on the ground that he is hopelessly biased and prejudiced against Defendant—the Court coerced, directly and indirectly, Defendant to plead guilty on July 31, 2000, to the only count contained in the Indictment;

**\*10** (2) Vacating Defendant's plea of guilty entered on or about July 31, 2000, on the ground that said plea was induced by threats of Hon. Martin E. Smith;

(3) Assigning new counsel to the Defendant on the ground that the Cortland County Public Defender recently filed and served an "Affirmation" seeking to be relieved.

*Id.* at 69. In his August 30, 2000, affidavit in support of his motion, Petitioner referenced an August 18, 2000, affidavit he had sent to Judge Smith reiterating the circumstances of alleged coercion and averring:

9. Lastly, I have resisted a plea bargain since 1998, and but for the threats conveyed by my attorney and but for

the comments that this Court made in my presence, I wouldn't have been induced to plead guilty to a crime that I am absolutely innocent of. Commendably, my attorney worked extremely hard on the defense of this case and I do not think that he wanted me to plead guilty, however, he was duty-bound to convey to me what the Court had said. He left the decision up to me, but I was *scared to death* of serving *life in prison* for a crimes that I did not commit .... (emphasis in original)

(Dkt. No. 46–1 at 62–65.) Petitioner also included Adinolfi's August 22, 2000, reply affirmation in support of his motion. *Id.* at 75–76. The People opposed the motion in its entirety. *Id.* at 90–95.

Petitioner's sentencing was held before Judge Smith on September 11, 2000. (Dkt. No. 46–1 at 153–161.) Adinolfi appeared as Petitioner's counsel. *Id.* at 153. The habeas record does not reflect the issuance of an order on Petitioner's motion to withdraw his guilty plea. However, it is apparent from the sentencing transcript that the motion was denied in full. *Id.* at 153–161. When asked by Judge Smith if he wanted to say anything before sentence was imposed, Petitioner stated that the hospital records provided by the People revealed no indication of rape, and he had only taken the plea because of the fear of consolidation of the two indictments before Judge Smith. *Id.* at 158. Petitioner was sentenced as a second felony offender to two to four years to run concurrently with the sentence for probation violation.[8] *Id.* at 158–62. After imposing sentence, Judge Smith stated:

[8]    Petitioner also waived his right to appeal as a part of his guilty plea. (Dkt. No. 46–1 at 161.)

I note, Mr. Carpenter, what you've just said to the Court, and I also note, as I've already alluded to this morning, that I find it beyond coincidence that you would plead guilty to sex abuse in the first degree and seek to withdraw your plea, then file—enter a plea of guilty to rape in the second degree and seeking withdrawal of your plea. And the basis of your arguments with regard to both is you were forced into doing so by your counsel. And except when I put you under oath

and you pled guilty, you told me, under oath, that did not occur, so that speaks greatly in this Court's mind to your credibility, and in short, you have none with this Court.

It strikes me that your tactics, personal, legal tactics throughout the course of these proceedings has been nothing more—I say these proceedings, by reference, I mean including the proceedings, indictment in front of Judge Ames—nothing more than an effort on your part to engage in dilatory tactics, that is keep putting it off, putting it off, and maybe it will go away. That's the only way I can figure this ended up being the oldest indictment in Cortland County. All that being said, sentence is imposed.

**\*11** (Dkt. No. 46–1 at 158–59.)

Plaintiff filed a timely notice of appeal from the judgment of conviction based upon his guilty plea on Indictment No. 98–82. *Id* . at 164.

### F. Petitioner's Sentencing on his Guilty Plea under Indictment No. 99–112

By the time Petitioner was sentenced by Judge Smith under Indictment No. 98–82, he had already been sentenced by Judge Ames under Indictment No. 99–112. (Dkt. No. 46–1 at 118–148.) Judge Ames noted at the outset of the September 6, 2000, sentencing that he had received copies of August 17 and 21, 2000, letters Petitioner had sent Judge Smith. (Dkt. No. 46–1 at 38–39, 49.) In the August 17th letter, Plaintiff had informed Judge Smith that he intended to move to withdraw his guilty plea under Indictment No. 98–82 and had included a draft affidavit. *Id.* at 40–43. The August 21 st letter was the one in which Petitioner sought to have Adinolfi replaced with a Syracuse attorney on Indictment No. 98–82. *Id.* at 49.

At the sentencing, both Petitioner and Adinolfi argued that Adinolfi should be replaced as Petitioner's counsel in both criminal proceedings because attorney and client had an irreconcilable conflict regarding strategy going forward, and Adinolfi could be a witness in a hearing on Petitioner's motion to withdraw his plea under Indictment No. 98–82. *Id.* at 119–21. Carpenter also argued that Adinolfi had been non-responsive to his telephone calls and letters subsequent to Petitioner's guilty plea on Indictment No. 98–82. (Dkt. No. 46–1 at 127–28.) The People argued against allowing Petitioner to replace Adinolfi, and Judge Ames denied the request, failing to see any conflict that would serve as an impediment to the sentencing under Indictment No. 99–112. *Id.* at 129–31.

Judge Ames also concluded that unless the plea in Indictment No. 98–82 was withdrawn by Judge Smith or overturned on appeal, he was bound by Petitioner's agreement to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112. *Id.* at 124. As a result, whether or not the plea on Indictment No. 99–112 could be withdrawn hinged on what happened with Petitioner's motion to withdraw his guilty plea before Judge Smith—the motion that was subsequently denied by Judge Smith on September 11, 2000.

Finding no impediment to going forward with sentencing, Judge Ames sentenced Petitioner under Indictment No. 99–112 to a determinate term of three years and post-release supervision for five years, in accordance with the plea agreement under which Petitioner had pled guilty to Sexual Abuse in the First Degree. *Id.* at 132, 136. The three year sentence was made concurrent with the sentence being served for the probation violation and any sentence rendered on Indictment No. 98–82. *Id.* at 137. The sentence also included an order of protection in favor of petitioner's wife; an HIV test; certification as a sex offender; and a waiver of appeal except as to the limited issues for which there is always a right to appeal. *Id.* at 138–39.

**\*12** Plaintiff filed a timely notice of appeal from the judgment of conviction based upon his guilty plea in Indictment No. 99–112. *Id.* at 165.

### G. CPL § 440.10 Motions to Vacate Both Convictions

In December of 2009, Petitioner filed a *pro se* motion pursuant to CPL § 440.10 to vacate the judgment of conviction under Indictment No. 99–112. (Dkt. No. 46–2 at 110–134.) Petitioner raised numerous grounds including ineffective assistance of counsel and a claim that the People had engaged in fraudulent and illegal plea negotiations that tricked him into waiving his right to trial against his will. [9] *Id.* at 11–12. In February of 2010, Petitioner filed a *pro se* motion under CPL § 440.10 to vacate the judgment of conviction with regard to Indictment No. 98–82. *Id.* at 136–230; Dkt. No. 46–3 at 2. Among the numerous grounds raised by Petitioner was a claim that his plea had not been voluntary, knowing and intelligent. *Id.* at 137. In his notice of motion, Petitioner indicated that he believed his new attorney, Michael Cardinale, Esq. ("Cardinale"), would be joining him on the motion. (Dkt. No. 46–2 at 136.)

[9]  Petitioner claimed that the plea was fraudulent and illegal because Judge Ames told him that he would agree to a determinate sentence of three years and five years of post-release supervision which would run concurrently with the four to twelve year sentence for probation violation. (Dkt. Nos. 46–2 at 14.) In August of 2008, after learning that pursuant to Penal Law §§ 70.30(1) and 70.45.5(a), post-release supervision had to be calculated to commence upon his release from prison and would not, as he had thought, commence running as soon as he had served the three year determinate sentence, even though he was still incarcerated, Petitioner sought relief from the timing of the post-release supervision first from Judge Ames (Dkt. No. 46–1 at 203) and later in a proceeding under New York Civil Practice Rule and Laws Article 78, both without success. *Id.* at 235–329.

It appears from the record that Petitioner's *pro se* § 440.10 motions were superseded by an April 6, 2010, counseled § 440.10 motion filed by Cardinale seeking to have both judgments of conviction vacated. (Dkt. No. 46–3 at 3–132.) The grounds raised for vacatur of Petitioner's guilty plea on Indictment No. 99–112 included: (1) the plea allocution was insufficient in that the Court improperly delegated its authority to conduct the plea allocution to the prosecutor; (2) the plea allocution was insufficient in that it failed to establish each element of the offense to which Petitioner pleaded guilty; (3) the guilty plea was not knowing and voluntary inasmuch as Petitioner was forced by his attorney to make admissions and plead guilty because his attorney had informed him that he would not be able to provide him with a zealous defense since his legal bill had not been completely paid; and (4) the Court represented that the five year period of postrelease supervision would run concurrently with the four to twelve year sentence for probation violation, when the law required that the period commence upon his release from imprisonment. (Dkt. No. 46–3 at 7–15.)

The grounds asserted for vacatur of Petitioner's guilty plea on Indictment No. 98–82 included: (1) Judge Smith lacked jurisdiction to adjudicate matters relating to Indictment No. 99–112, *i.e.,* requiring Petitioner to withdraw his motion to withdraw his guilty plea in that case, because he was temporarily assigned from Broome County only to handle Indictment No. 98–82; (2) Petitioner's guilty plea was not knowing and voluntary because he did not know at the time he pleaded guilty on Indictment No. 99–112 that neither the Court nor the New York State Department of Corrections

could enforce the five year post-release supervision period to run concurrently with the probation violation sentence; and (3) Petitioner's guilty plea was not knowing and voluntary because he was coerced to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112 by the duress of the circumstances. *Id.* at 16–21.

**\*13** The counseled § 440.10 motion was denied by Judge Ames on May 10, 2010. *Id.* at 146–50. Judge Ames rejected Petitioner's two arguments that the guilty plea under Indictment 99–112 was insufficient on the grounds that a § 440.10 motion was not the proper method for challenging the sufficiency of a plea made on the record, and the arguments were in any event without legal merit. (Dkt No. 46–3 at 147.) Judge Ames also rejected Petitioner's claim that his guilty plea on Indictment 99–112 was not voluntary and resulted from coercion by Butler. The claim was rejected based upon Petitioner's failure to provide any supporting evidence, as well as Petitioner's affirmative response when asked during his plea allocution whether he was satisfied with the services provided by Butler. *Id.* at 148.

Petitioner's argument that he was not given the sentences promised him in his plea agreements under Indictment Nos. 98–82 and 99–112 because of the timing of post-release supervision was also rejected. *Id.* at 148–49. Judge Ames found the argument to be without merit because the plea transcript revealed that the Court had agreed only that the three year determinate sentence would be concurrent and also because the argument was one that should be asserted on a direct appeal. *Id.* at 149; *see also* Dkt. No. 46 at 226.

The County Court also rejected Petitioner's claims relating to his guilty plea under Indictment No. 98–82. Judge Ames rejected Petitioner's claim that Judge Smith was without jurisdiction to require him to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112 on the grounds that a § 440.10 motion was not the proper method of challenging the sufficiency of a plea made on the record. Judge Ames rejected the claim on the further grounds that requiring Petitioner's withdrawal of the motion in Indictment No. 99–112 did not constitute an exercise of jurisdiction over Indictment No. 99–112 by Judge Smith. *Id.* Judge Ames also rejected Petitioner's post-release supervision claim asserted with respect to Indictment No. 98–82. (Dkt. No. 46–3 at 149–50.)

The Appellate Division denied Petitioner's application to appeal from the denial of his § 440.10 motion on July 28, 2010. (Dkt. No. 46–3 at 188.)

## H. Petitioner's Direct Appeal from Both Judgments of Conviction

*1. Delay in Granting Petitioner's Application to Proceed as a Poor Person and Appointing Appellate Counsel so that His Direct Appeals Could Be Perfected*

Plaintiff filed timely notices of appeal from the judgments of conviction under Indictments Nos. 98–82 and 99–112. (Dkt. No. 46–1 at 164–65.) By letter of October 24, 2002, the Appellate Division Clerk's Office sent Petitioner an application to proceed as a poor person on his appeals. (Dkt. No. 46–2 at 73.) Petitioner completed and executed the application on October 31, 2002, and submitted it to the Clerk. *Id.* at 20, 79–80.

Petitioner wrote to the Clerk's Office on November 23, 2004, requesting the dates of motions and decisions involving him in that Court. *Id.* at 74. The Clerk's Office responded with information on filings and decisions. *Id.* None of the information appears to have related to Petitioner's appeals from the judgments of conviction. *Id.* Petitioner continued to communicate with the Clerk's Office regarding his appeals without success. On May 27, 2009, Petitioner sent a letter to the Clerk's Office indicating that he had filed two notices of appeal and the October 31, 2002, application to proceed as a poor person. *Id.* at 72, 76. Petitioner noted that a copy of the application had been provided to him with a May 10, 2006, letter from the Clerk's Office. *Id.* at 72, 75. He wrote "I have relentlessly over the years written this court for an decision on this application and have been evaded from the truth." (Dkt. No. 46–2 at 72.)

**\*14** In an August 4, 2010, letter responding to a June 12, 2010, letter from Petitioner, the Assistant Deputy Clerk in the Clerk's Office informed Petitioner that they were in the process of reviewing Clerk's Office files in an attempt to clarify the circumstances of his poor person application dated October 31, 2002. (Dkt. No. 1–4 at 8.) The letter included a request for all of Petitioner's correspondence to the Clerk's Office over the years regarding his poor person application. *Id.* Finally, on September 28, 2010, the Clerk's Office sent Petitioner a letter, informing him that his application to proceed as a poor person was being submitted for consideration by the Court on October, 4, 2010. (Dkt. No. 1 at 75.) On November 4, 2010, more than ten years

after Petitioner's convictions, the Appellate Division issued Orders granting Petitioner leave to proceed as a poor person on both of his direct appeals and appointing appellate counsel to represent Petitioner on the appeals. [10] (Dkt. No. 46–3 at 190–91.)

[10]    One of the issues raised by Petitioner in his original Petition in No. 9:10–CV–1240, filed on October 18, 2010, was that he had been deprived of a timely direct appeal from the judgment of conviction on Indictment No. 98–82. (Dkt. No. 1 at 4.) The Second Circuit has recognized that a failure to exhaust may be excused where there has been "a substantial delay in the state criminal appeal process." *Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir.1991); *see* 28 U.S.C. § 2254(b)(1)(B)(ii) (excusing failure to exhaust where circumstances render state corrective process ineffective to protect rights of petitioner). The Court finds the ten year delay of Petitioner's direct appeal attributable to clerical errors in the Appellate Division Clerk's Office very disturbing. However, despite the delay, Petitioner did have the opportunity to seek review of non-record based claims under § 440.10 motion and ultimately to seek direct review of the record based claims on both indictments, including those claims Judge Ames had determined were record based and not the proper subject of Petitioner's § 440.10 motion.

### 2. *Petitioner's Direct Appeal*

Petitioner's combined direct appeal to the Appellate Division appears to have been perfected in or about August of 2011. (*See* Dkt. No. 46–3 at 192–252.) The issues raised on appeal with regard to both cases were: (1) whether Petitioner's guilty pleas were entered into in a voluntary, knowing, and intelligent manner; (2) whether the trial courts erred by failing to grant Petitioner's motions to withdraw his guilty pleas, or at the very least holding hearings on the issue; and (3) whether Petitioner's former attorneys rendered ineffective assistance of counsel warranting vacatur of the guilty pleas. (Dkt. No. 46–3 at 193.)

The Appellate Division affirmed both judgments of conviction on March 8, 2012. *See People v. Carpenter*, 93 A.D.3d 950, 939 N.Y.S.2d 658 (3d Dept.2012). On Petitioner's arguments regarding his guilty plea on Indictment No. 98–82, the Appellate Division found that the record clearly reflected "a voluntary, knowing and intelligent plea

without any indication of coercion," and concluded that the plea had been properly entered and that the County Court had not abused its discretion in denying Petitioner's motion to withdraw his guilty plea. *Id.* at 660. The Court also rejected Petitioner's claim that he was denied ineffective assistance of counsel, finding that "[t]he fact that counsel did not join in defendant's motion to withdraw the plea does not constitute ineffective representation." *Id.* Petitioner's remaining claims regarding ineffective assistance of counsel with respect to Indictment No. 98–82 were found to implicate matters outside the record that were more properly addressed in the context of a CPL Article 440 motion. *Id* .

Petitioner's claim that his plea under Indictment No. 99–112 was not voluntary was found to be unpreserved for appeal because Petitioner had withdrawn his motion to withdraw his guilty plea as a part of his plea agreement on Indictment No. 98–82 and had not moved to vacate the judgment of conviction. *Id.* The Appellate Court concluded that Petitioner's claim that he was denied effective assistance of counsel implicated the voluntariness of his plea, and because Petitioner failed to move to withdraw the plea or vacate the judgment of conviction, the claim was also unpreserved for review. *Id.* Petitioner's claim that Butler failed to adequately communicate with him and pressured him into pleading guilty was found not to be a proper subject for direct appeal because it involved matters outside the record. *Id.* at 661.

**\*15** The issues identified for review in Petitioner's application for leave to appeal to the Court of Appeals included: (1) whether his guilty pleas were entered into in a voluntary, knowing, and intelligent manner; (2) whether the trial courts erred in failing to grant his motions to withdraw his guilty pleas; and (3) whether his attorneys rendered ineffective assistance of counsel. (Dkt. No. 46–4 at 301–02.) The Court of Appeals denied leave to appeal on May 18, 2012. *See Carpenter*, 19 N.Y.3d 863, 947 N.Y.S.2d 411, 970 N.E.2d 434 (2012).

### I. Amended Habeas Petition Relative to Indictment Nos. 98–82 and 99–112

Petitioner filed an Amended Petition in No. 9:10–CV–1240 after the Appellate Division affirmed the judgments of conviction under Indictment Nos. 98–82 and 99–112, and the Court of Appeals denied leave to appeal. [11] (Dkt. No. 35.) The grounds for relief raised by Petitioner in his Amended Petition are: (1) Petitioner's motion to withdraw

his guilty plea before Judge Smith and his § 440.10 motion to vacate his judgments of conviction before Judge Ames were improperly denied in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution; (2) the People failed to disclose exculpatory evidence in violation of Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments; (3) the trial judge violated Federal Rule of Criminal Procedure 11(e)(1) during an in chambers conference with counsel by engaging in threats of retaliation if Petitioner did not accept the plea agreement being offered, and Petitioner's attorney subsequently refused to provide legal services to him allowing the court to impose its will on Petitioner by coercing him to enter a guilty plea that was not voluntary, knowing, or intelligent, in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments; (4) Judge Smith lacked jurisdiction to require Petitioner to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112 as a part of his plea agreement on Indictment No. 98–82; (5) the prosecutor improperly offered inducements on which she could not follow through by promising Petitioner that the five year post-release supervision imposed as a part of his plea agreement under Indictment No. 99–112 would run concurrently with the four to twelve year sentence for probation violation; and (6) Petitioner was deprived of effective assistance of counsel by both Butler and Adinolfi in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. (Dkt. No. 35 at 4–7.)

[11]    The Court is mindful that, as with all *pro se* pleadings, a habeas corpus petition that is filed *pro se* must be construed liberally. *See Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983).

**J. Habeas Petition Relative to Indictment No. 99–112**

The grounds for habeas corpus relief set forth in Petitioner's Petition in No. 9:12–CV–957 are: (1) Petitioner's guilty plea was not knowing, intelligent or wilfully made in that his attorney forced him to plead guilty by refusing to provide trial services and indicating that he would intentionally lose if he was forced to take the case to trial in violation of Petitioner's Fifth, Sixth, and Fourteenth Amendment rights; (2) Petitioner was denied effective assistance of counsel in connection with his guilty plea in violation of the Fifth, Sixth, and Fourteenth Amendments because his counsel refused to provide representation at trial as agreed and instead acted as an advocate for the prosecution by using threats, malicious promises, coercion, and duress to force Petitioner to plead guilty; (3) Petitioner was improperly denied a hearing relating to non-record events on the § 440.10 motion made prior to the

time the Appellate Division ruled that certain matters raised on Petitioner's direct appeals should be heard on a § 440.10 motion, and as a result has been left without an opportunity to seek relief; and (4) the trial court erred in denying Petitioner a hearing on his § 440.10 motion despite acknowledging that there were witnesses to non-record events leading up to his involuntary plea, and the Appellate Division erred in failing to recognize that Petitioner had filed a § 440.10 motion. (No. 9:12–CV–957, Dkt. No. 1.)

**III. STANDARD OF REVIEW**

**A. Exhaustion Requirement under the Antiterrorism and Effective Death Penalty Act of 1996**

**\*16**  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs applications of incarcerated state court defendants seeking federal habeas corpus relief. *See* 28 U.S.C. § 2254. Before a federal court may consider an application for habeas corpus relief pursuant to 28 U.S.C. § 2254, the petitioner must generally have exhausted all the remedies available in the courts of the state in which he or she was convicted.[12] 28 U.S.C. § 2254(b)(1)(A); *see also Cullen v. Pinholster,* 563 U.S. ––––, ––––, 131 S.Ct. 1388, 1399 (2011) ("Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief."); *Jones v. Murphy,* 694 F.3d 225, 246–47 (2d Cir.2012), *cert. denied,* –––– U.S. ––––, 133 S.Ct. 1247, 185 L.Ed.2d 192 (2013) ("Under AEDPA, a prisoner in custody pursuant to a state court judgment must generally exhaust state court remedies before seeking federal habeas corpus review.").

[12]    Exhaustion may be excused where it appears that "there is an absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." *See* 28 U.S.C. § 2254(b)(1)(B)(i)-(ii).

"Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoner's federal rights."[13] *Cornell v. Kirkpatrick,* 665 F.3d 369, 375 (2d Cir.2011) (citation omitted); *Daye v. Attorney General of State of N.Y.,* 696 F.2d 186, 191 (2d Cir.1982) (*en banc* ) (proper exhaustion requires that both the factual and legal premises of claim be "fairly presented" to the state court). "Passage through the state courts, in and of itself, 'is not sufficient.' *Picard [v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) ].

To provide the State with the necessary 'opportunity,' the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and 'giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.' *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)." [14] *Wilens v. Superintendent of Clinton Correc. Fac.,* No. 11–CV–1938 (JFB), 2014 WL 28995, at *5, 2014 U.S. Dist. LEXIS 182111, at * 13 (E.D.N.Y. Jan.2, 2014). [15] Petitioner has the burden of proving exhaustion. *Colon v. Johnson,* 19 F.Supp.2d 112, 119–20 (S.D.N.Y.1998) (citations omitted).

[13]    The ways in which a state defendant may fairly present to the state courts the constitutional nature of his or her claims include: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney. General of State of N.Y.,* 696 F.2d 186, 194 (2d Cir.1982).

[14]    Petitioner must seek discretionary review where it is available at the highest state court and raise the same federal constitutional claims. *O'Sullivan,* 526 U.S. at 847–48.

[15]    Copies of unreported cases cited herein will be provided to Petitioner. *See Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009).

A claim that was not fairly presented to the state courts and does not satisfy the requirements of 28 U.S.C. § 2254(b)(1) may still be "deemed" exhausted by the federal court in a habeas proceeding "if it is clear that the state court would hold the claim procedurally barred." *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991); *see also Clark v. Perez,* 510 F.3d 382, 390 (2d Cir.2008) ("when a petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the federal habeas court should consider the claim to be procedurally defaulted.") (citation and internal quotation marks omitted).

*17 If a claim is procedurally defaulted, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he or she can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A petitioner may demonstrate cause with "a showing that the factual or legal basis for a petitioner's claim was not reasonably available to counsel, ... or that some interference by state officials made compliance impracticable, ... [or that] the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Only if a petitioner can establish cause will a court proceed to consider prejudice, which requires a showing of "actual prejudice resulting from the errors of which [petitioner] complains." *United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (internal quotation marks omitted). A fundamental miscarriage of justice involves showing that the petitioner is actually innocent of the crime. *Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir.2003).

### B. Mixed Petition

A habeas petition containing both exhausted and unexhausted claims is a "mixed petition." *Rhines v. Weber,* 544 U.S. 269, 271, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). When presented with a mixed petition, a federal court may stay the petition and hold it in abeyance to give the petitioner an opportunity to exhaust all of his claims in state court. *Id.* at 276–77. However, the court should only do so where it "determines there was good cause for the petitioner's failure to exhaust." *Id.* Otherwise, a federal court must dismiss a mixed petition in its entirety on exhaustion grounds, *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), or allow petitioner to withdraw the unexhausted claims. *Rhines,* 544 U.S. at 278. In addition, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." [16] 28 U.S.C. § 2254(b) (2); *see also Pratt v. Greiner,* 306 F.3d 1190, 1197 (2d Cir.2002).

[16]    In *Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), the Supreme Court determined it would be an abuse of discretion to stay a mixed petition when the unexhausted claims are "plainly meritless."

Petitioner's habeas petitions are both mixed petitions containing exhausted and unexhausted claims. As discussed in detail below, because the Court finds Petitioner's unexhausted claims to be without merit, no recommendation will be made to either stay one or both of the petitions while Petitioner exhausts, or to dismiss the petitions in their entirety.

### C. Federal Habeas Corpus Review
Under the AEDPA, an application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**\*18** 28 U.S.C. § 2254(d). Recognizing the principle that "[s]tate courts are adequate forums for the vindication of federal rights...., AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 571 U.S. ——, —— 134 S.Ct. 10, 15–16 (2013).

"For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). Where AEDPA's deferential standard of review applies, "[a] state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." *Bierenbaum v. Graham,* 607 F.3d 36, 48 (2d Cir.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 1693, 179 L.Ed.2d 645 (2011) (citing 28 U .S.C. § 2254(e)(1)). "[A] state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 293, 130 S.Ct.

841, 175 L.Ed.2d 738 (2010). Claims not adjudicated on the merits in state court are not subject to the AEDPA deferential standard of review and are reviewed *de novo. See Cone v. Bell,* 556 U.S. 449, 472, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009).

In determining whether a state court has adjudicated a claim "on the merits," a federal habeas corpus court must classify the state court decision as either (1) fairly appearing to rest primarily on federal law or to be interwoven with federal law; or (2) fairly appearing to rest primarily on state procedural law. *Jimenez v. Walker,* 458 F.3d 130, 145 (2d Cir.2006). Decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id.*

A decision "on the merits" is contrary to clearly established federal law when it is either contrary to Supreme Court precedent on a question of law or opposite to a relevant Supreme Court case with materially indistinguishable facts. [17] *Williams v. Taylor,* 529 U.S. 362,405–06 (2000). A state court unreasonably applies federal law when it correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). "It is settled that a federal habeas corpus may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.' " [18] *Nevada v. Jackson,* U.S., —— U.S. ——, ——, 133 S.Ct. 1990, 1992, 186 L.Ed.2d 62 (2013) (quoting *Harrington v. Richter,* 562 U.S. ——, ——,131 S.Ct. 770, 786 (2011)). Where a claim has been adjudicated on the merits by a state court, federal habeas review is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen,* 131 S.Ct. at 1398.

[17] "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decisions.' " *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "[F]ederal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v.*

*Miller,* 289 F.3d 36, 42 (2d Cir.2002). "[C]ircuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court ... and cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews,* ––– U.S. ––––, 132 S.Ct. 2148, 2155, 183 L.Ed.2d 32 (2012) (citation and internal quotation marks omitted).

18    *See also Cullen,* 131 S.Ct. at 1399 (The § 2254(d) standard of review is a " 'difficult to meet,' *Harrington v. Richter,* 562 U.S. ––––, ––––, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011), and 'highly deferential standard' [which] demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam* ).").

*19 Federal habeas corpus review is limited to determining whether petitioner is in custody in violation of the Constitution, laws, or treaties of the United States.[19]  *See* 28 U.S.C. §§ 2241(c), 2254(a); *see also Wainwright v. Goode,* 464 U.S. 78, 83, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983) ( "[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."). Federal habeas relief does not "lie for errors of state law." *Swarthout v. Cooke,* ––– U.S. ––––, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Richter,* 131 S.Ct. at 786; *see also Jean v. Greene,* 523 F. App'x 744, 747 (2d Cir.2013) ("Under AEDPA, the deference we ascribe to the determination of the state court is 'high[ ],' and we must give the state court's decision 'the benefit of the doubt.' ") (quoting *Cullen,* 131 S.Ct. at 1398).

19    Petitioner has the burden of proving by a preponderance of the evidence that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *see also Smalls v. Batista,* 191 F.3d 272, 278 (2d Cir.1999).

## III. ANALYSIS OF CLAIMS ASSERTED BY PETITIONER IN NO. 9:10–CV–1240[20]

20    Petitioner has claimed in both of his habeas proceedings that his guilty plea under Indictment No. 99–112 was not voluntary, knowing, and intelligent, and that he was entitled to a hearing on the claim asserted in his counseled CPL § 440.10.

The Court will address those claims in its analysis of the Petition filed under No. 9:12–CV–957.

### A. Claim that Petitioner's Guilty Plea to Rape in the Second Degree Under Indictment No. 98–82 was not Voluntarily, Knowingly, and Intelligently Made

Petitioner claims that he was coerced into pleading guilty as a result of threats made by Judge Smith during an in-chambers plea discussion with counsel regarding Indictment Nos. 98–82 and 99–112. (Dkt. No. 35 at 4–5.) According to Petitioner, Adinolfi informed him of Judge Smith's threats, and the threats induced him to plead guilty. (Dkt. No. 46–4 at 54.)

Petitioner asserted the claim that his guilty plea under Indictment No. 98–82 was not voluntarly, knowingly, and intelligently made in his direct appeal. *Id.* at 234–37. Respondent has conceded that the claim was exhausted in state court .[21] (Dkt. No. 44 at 30.)

21    On his direct appeal, Petitioner did not identify a specific constitutional right as the basis for his claim that his guilty plea was not voluntarily, knowingly, and intelligently made, nor did he cite federal case law employing constitutional analysis. Respondent's concession of exhaustion is based on Petitioner having asserted the plea-coercion claim in "terms that brought to mind federal constitutional rights." (Dkt. No. 44 at 30.) *See Daye,* 696 F.2d at 194 (identifying "assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution" as a way to fairly apprise the state court of the constitutional nature of a claim). Because Respondent has unequivocally conceded exhaustion, the Court need not determine whether petitioner adequately alerted the state courts to the federal nature of his plea-coercion claim for purposes of habeas review. *See Cornell v. Kilpatrick,* 665 F.3d 369, 376–77 (2d Cir.2011) (where respondent unequivocally conceded, albeit erroneously, that a habeas petitioner exhausted a claim in the state courts, exhaustion is deemed waived and the claim may be considered on the merits).

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient knowledge of the relevant circumstances and

likely consequences.' " *Bradshaw v. Stumpf,* 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (citing *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). [22] "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). A guilty plea must be voluntary, knowing, and intelligent "because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." *Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1973). "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." [23] *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

[22]  The requirement that a guilty plea be a voluntary and intelligent choice derives from the Fifth Amendment privilege against compulsory self-incrimination. *See Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

[23]  A guilty plea is not coerced because a defendant is confronted with the threat of conviction and a severe punishment. *See Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas.") (citation and internal quotation marks omitted).

### 1. *Petitioner's Guilty Plea*

A court may determine whether a defendant knowingly and voluntarily entered into a plea bargain by, among other things, his allocution statements. *United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997). Sworn statements made by a defendant in entering a guilty plea carry "a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). "[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge in accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" to withdraw the plea or

vacate the judgment of conviction based on the plea. *Id.* at 73–74.

**\*20**  On Petitioner's direct appeal, the Appellate Division rejected his contention that his guilty plea was not intelligent, knowing, and voluntary because it was procured by duress from Judge Smith, finding that "[w]ith regard to the 1998 indictment, the record clearly reflects a voluntary, knowing and intelligent plea without any coercion. In fact, defendant stated during the colloquy that he had not been threatened or coerced into entering his plea. Accordingly, we find that the plea was properly entered...." *Carpenter,* 939 N.Y.S.2d at 660. The record of Petitioner's plea allocution supports the conclusion reached by the Appellate Division.

Judge Smith fully explained the terms of the plea agreement to Petitioner. (Dkt. No. 46–1 at 17–20.) After Petitioner was sworn in, the Judge informed him that by pleading guilty he would be giving up his rights to a trial by jury, to call witnesses to testify on his behalf, and to present a defense, and asked Petitioner whether he understood the rights he would be giving up. *Id.* at 21–22. Petitioner responded in the affirmative. *Id.* at 22. Petitioner acknowledged that no one had promised him anything other than the sentences proposed under Indictment Nos. 98–82 and 99–112. *Id.* at 22–23. The record from Petitioner's July 31, 2000, plea allocution reveals that Judge Smith questioned him further and Petitioner responded as follows:

> Court: Has anybody threatened you, forced you, coerced you in any way in order to get you to plead guilty?
>
> Defendant: No, your Honor.
>
> Court: Are you telling me you're pleading guilty after having conferred with your attorney?
>
> Defendant: Yeah.
>
> Court: And this plea that you're entering freely and voluntarily, this is what you want to do?
>
> Defendant: Yes, your Honor.
>
> Court: And are you satisfied with the services of your attorney in this case?
>
> Defendant: Yes, your Honor.
>
> Court: Do you understand that ... your plea of guilty will have the same legal effect, this will mean exactly the same thing as if you did go to trial on August 14th and

as a result at the end of that trial, a jury found you guilty of this charge, do you understand?

* * *

Defendant: Yes.

Court: Do you also realize, sir, by pleading guilty you're going to be admitting to me on April 26th, 1998, in Cortland County you engaged in sexual intercourse with a female who was less than 14 years old, specifically-

* * *

Court: ... Those are the legal admissions you make if you plead guilty, you understand that?

Defendant: Yes, your Honor.

*Id.* at 23–25. After Petitioner responded in the affirmative to Judge Smith's question whether he admitted having sexual intercourse with the victim, the Court accepted his plea of guilty to rape in the second degree. [24] *Id.* at 28.

[24] Petitioner requested an opportunity to speak with his counsel privately before admitting that he had sexual intercourse with the victim. (Dkt. No. 46–1 at 26.) Judge Smith granted the request. *Id.*

2. *Circumstances Surrounding Petitioner's Guilty Plea*

While the voluntariness of a guilty plea "can be determined only by considering all of the relevant circumstances surrounding it," *Brady,* 379 U.S. at 750, "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Hirsch,* 239 F.3d 221, 225 (2d Cir.2001) (citation and internal quotation marks omitted).

**\*21** In support of his *pro se* motion to vacate his guilty plea under Indictment No. 98–82 on the grounds it was made under duress, Petitioner claimed that he had always resisted pleading guilty because he was innocent and had only done so because of Judge Smith's threats. (Dkt. No. 46–4 at 55.) However, in a letter to ADA Franklin, dated June 1, 2000, nearly two months before Petitioner's guilty plea, Adinolfi stated that Petitioner had indicated to him that he would plead guilty to rape in the second degree on Indictment No. 98–82,

conditioned upon a sentence of one and a half to three years, to run concurrently with his sentences on the probation violation and Indictment No. 99–112. (Dkt. No. 46 at 240.)

At his September 11, 2000, sentencing, Petitioner claimed his innocence was established by the victim's hospital records which did not establish penetration and showed no semen, no hair, no sexually transmitted disease, no trauma, and no indication of rape. [25] (Dkt. No. 46–1 at 158.) However, the records did reflect the presence of sperm consistent with Petitioner's DNA on the victim's underwear. (Dkt. No. 46 at 32–33, 43–44.) In addition, the Appellate Division, in reinstating the second degree rape charge dismissed by Judge Avery, concluded that there was legally sufficient evidence before the grand jury to support the element of penetration required for a rape indictment. *People v. Carpenter,* 268 A.D.2d 798, 702 N.Y.S.2d 228, 229 (3d Dep't 2000).

[25] Petitioner claims he never would have pleaded guilty if he had seen the medical reports on the victim. (Dkt. No. 50 at 21.) However, the hospital records were turned over to defense counsel in February of 2000, and Petitioner did not plead guilty until July 31, 2000. (Dkt. Nos. 46 at 72; 46–1 at 20–28.)

Petitioner also contends that an affirmation submitted by Adinolfi following Petitioner's guilty plea under Indictment No. 98–82 supports his claim that he was coerced to plead guilty by Judge Smith's threats. [26] (Dkt. No. 50 at 10.) In the affirmation submitted by Adinolfi, in which he requested that the Public Defender's Office be relieved as counsel for Petitioner in both cases, Adinolfi identified as one reason for the request that "[t]he defendant also alleges, possibly with some merit, that your affiant could be a witness regarding some of the claims in his *pro se* motions for vacatur and recusal of Hon. Martin Smith." (Dkt. No. 46–4 at 59.) Petitioner has interpreted Adinolfi's statement as support for his claim that Judge Smith made threats during the in-chambers conference with counsel. (Dkt. No. 50 at 10.) However, it appears that in his affirmation Adinolfi went no further than to agree that there was some merit in Petitioner's argument that he might be a witness, not that he would testify that Judge Smith had issued threats. That limited interpretation finds support in Adinolfi's refusal to file a motion to withdraw Petitioner's guilty plea on Indictment No. 98–82 and to recuse Judge Smith because there were no "non-frivolous issues on which to file motions for recusal or withdrawal of [Petitioner's] Guilty Plea," and "[a]ttorneys are

ethically obligated not to file frivolous motions." [27] (Dkt. No. 46–1 at 36–37.)

26    *See Brady v. United States,* 397 U.S. 742, 751–52, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (a guilty plea is constitutionally valid where it is "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."); *see also Gaines v. Murray,* No. 03–CV–016A, 2008 WL 4890249, at *5, 2008 U.S. Dist. LEXIS 94809, at 15 (W.D.N.Y. Nov.12, 2008) ("Every defendant involved in plea negotiations suffers the threat of conviction (often of greater charges or with a greater penalty) and must face such 'difficult choices.'") (citing *Bordenkircher,* 434 at 364).

27    A statement made by Adinolfi at Petitioner's sentencing before Judge Ames under Indictment No. 99–112 on September 6, 2000, might arguably be construed as contradicting, in part, his letter of August 16, 2000, to Petitioner. (Dkt. No. 46–1 at 121.) In explaining why he believed there was a conflict of interest preventing him from continuing to represent Petitioner, Adinolfi stated that:

> [O]ne of the motions that Mr. Carpenter would like to make and which may have some merit, I would be a witness to it, a vacator motion before Judge Smith. Judge Smith in conference pretty much aligned that case, I believe is 98–82, with this case, 99–112, in that he was saying that if a plea was not entered in that court—in his court, and if vacator were granted in this court, he might take both cases and consolidate them for trial. And since as I guess I would likely be a witness to a vacator motion that Mr. Carpenter's succeeding assigned counsel would make, I can't be his attorney any more.

*Id.* at 121–22. Adinolfi did not, however, describe Judge Smith's indication that he might consolidate the two cases for trial as a threat to Petitioner, nor did he suggest that Judge Smith had made any threats that could be found to have coerced Petitioner to plead guilty against his will. *Id.*

### 3. *Court's Recommendation*

Evidence supporting Petitioner's self-serving statements contradicting his plea allocution adequate to overcome the strong presumption of verity of statements made by him in his plea allocution, *see Blackledge,* 431 U.S. at 74, is clearly missing from the state court record. There is nothing in the state court record or relevant law that would render the state court's determination on Petitioner's guilty plea so erroneous that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Richter,* 131 S.Ct. at 786. Therefore, the Court recommends that Petitioner's claim that his guilty plea under Indictment No. 98–82 was not voluntary, knowing, and intelligent be denied. [28]

28    *See United States v. Davis,* 48 F. App'x 809, 811 (2d Cir.2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words, and stated that his plea was free and voluntary, that no threats or untoward promises had been made to induce his plea, and that he was satisfied with advice of counsel.... Although since his guilty plea [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence.").

### B. Claim that Judge Smith Violated Federal Rule of Criminal Procedure 11(c)(1) Prohibiting the Court From Participating in Plea Discussions

**\*22** Petitioner claims that Judge Smith violated Federal Rule of Criminal Procedure 11(c)(1) by actively participating in the plea discussions, and that his coercive tactics forced Adinolfi to quit representing Petitioner and forced him to plead guilty to a charge of which he was innocent under Indictment No. 98–22 and to agree to the withdrawal of his motion to withdraw his pending guilty plea under Indictment No. 99–112. (Dkt. Nos. 35 at 5; 35–1 at 10–14.)

Rule 11(c) (1), governing guilty pleas, prohibits judicial involvement in plea discussions. *United States v. Davila,* 569 U.S. ——, ——, 133 S.Ct. 2139, 2146, 186 L.Ed.2d 139 (2013). "[T]he prohibition was included out of concern that a defendant might be induced to plead guilty rather than risk displeasing the judge who would preside at trial." *Id.* Rule 11(c)(1) was adopted as a prophylactic measure. *Id.* at 2149.

The Rule was not "impelled by the Due Process Clause or any other constitutional requirement." *Id.* There is no clearly established federal law providing otherwise.

Furthermore, Rule 11(c)(1) does not apply to state court judges. *McMahon v. Hodges,* 382 F.3d 284, 289 n. 5 (2d Cir.2004). State court judges in New York are permitted to participate in plea negotiations with defendants. *Id.* (citing *People v. Fontaine,* 28 N.Y.2d 592, 319 N.Y.S.2d 847, 268 N.E.2d 644 (1971)); *see also Bivens v. Poole,* 302 F. App'x. 598, 599 (9th Cir.2008) ( "[T]here is no clearly established federal law, as determined by the Supreme Court of the United States, prohibiting a state court's participation in plea negotiations"). Inasmuch as federal habeas review is limited to whether petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, which does not include Rule 11(c)(1), the Court recommends that Petitioner's claim for violation of the Rule be denied.

### C. Ineffective Assistance of Counsel Claim on Indictment No. 98–82

Petitioner has asserted an ineffective assistance counsel claim with respect to Adinolfi's legal representation on Indictment No. 98–82. (Dkt. No. 35.) Petitioner claims that Adinolfi quit representing him and refused to provide him with legal services at the time he pleaded guilty under the indictment before Judge Smith, thereby allowing the Judge to force his will on Petitioner by forcing him to plead guilty. *Id.* at 5, 7; Dkt. Nos. 35–1 at 2–3, 12; 50 at 41–42, 44.

On his direct appeal, Petitioner claimed that Adinolfi had provided ineffective assistance of counsel by: "(1) advising him to accept the plea deal based upon Judge Smith's threats and his political power; (2) acting at cross-purposes with Mr. Carpenter when Mr. Carpenter moved to withdraw his guilty plea; and (3) failing to adequately communicate with him after Mr. Carpenter's guilty plea was entered." *Id.* at 247–249. The Appellate Division rejected Petitioner's contention that Adinolfi's refusal to join in Petitioner's motion to withdraw his guilty plea constituted ineffective representation. *Carpenter,* 939 N.Y.S.2d at 660.

**\*23** The Court found that the remainder of Petitioner's ineffective assistance claims with regard to Adinolfi implicated matters outside the record more properly addressed in a CPL Article 440 motion. *Id.* Petitioner did not assert an ineffective assistance of counsel claim in the counseled CPL § 440.10 motion made and denied before his

direct appeal and has made no further CPL § 440.10 motions. (Dkt. No. 46–3 at 3–21, 52–53.)

Respondent has argued that Petitioner's ineffective assistance of counsel claim against Adinolfi is unexhausted except as to his claim that Adinolfi refused his request to move for withdrawal of Petitioner's guilty plea, which is exhausted. [29] (Dkt. No. 44 at 30.) Respondent asserts that Petitioner's claims that Adinolfi advised him to accept the plea deal based upon Judge Smith's threats and his political power and failed to adequately communicate with him after his guilty plea was entered, are unexhausted because Petitioner has not filed a CPL § 440.10 motion subsequent to his direct appeal. *Id.* at 34.

[29]     In the brief filed on Petitioner's behalf on his direct appeal, the sole reference to a federal constitutional right to the effective assistance of counsel was the statement "[t]he right to effective assistance of counsel is guaranteed by both the federal and state constitution" followed by a citation to *People v. Baldi,* 54 N.Y.2d 137, 444 N.Y.S.2d 893, 897, 429 N.E.2d 400 (1981), in which the New York Court of Appeals acknowledged a right to the effective assistance of counsel under the Sixth Amendment. (Dkt. No. 46–3 at 244.) Petitioner's argument of the issue was couched in state law terms and relied solely upon New York cases analyzing the claim under New York law and the New York Constitution, with no mention of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and no application of the analysis to be applied to Sixth Amendment ineffective assistance of counsel claims set forth therein. Thus, there is some doubt in the Court's mind whether Petitioner fairly presented a federally based ineffective assistance of counsel claim regarding Adinolfi to the state court on his direct appeal. *See Cornell,* 665 F.3d at 376 ("mere mention of ineffective assistance of counsel ... without more was insufficient to alert the New York courts to the possible federal basis of the claim.") (citation and internal quotation marks omitted); *Gantt v. Martuscello,* No. 9:12–CV–657 (MAD/CFH), 2014 WL 112359, at \*9, 2014 U.S. Dist. LEXIS 183258, at \*18 (N.D.N.Y. Jan.10, 2014) (finding a failure to exhaust ineffective assistance of counsel claim where petitioner had relied upon state cases that did not employ a

federal constitutional analysis and did not cite federal cases employing the relevant constitutional analysis). Nonetheless, because Respondent has conceded exhaustion as to Adinolfi's refusal to move to withdraw Petitioner's guilty plea, the exhaustion requirement will be deemed waived as to that claim. *See Cornell*, 665 F.3d at 376–77 (exhaustion is waived when respondent unequivocally concedes exhaustion).

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const., amend VI. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The Sixth Amendment right to counsel extends to the plea-bargaining process and sentencing. *Lafler v. Cooper*, 566 U.S. ——, ——,132 S.Ct. 1376, 1384 (2012). To prevail on an ineffective assistance of counsel claim in connection with a guilty plea, a habeas petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a showing that his or her counsel's performance was deficient, and that the deficient performance caused actual prejudice to the petitioner. [30] *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

[30]  "Counsel should be strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment." *Strickland*, 666 U.S at 690.

Recently, in *Titlow*, —— U.S. ——, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013), the Supreme Court, reiterated the requirement that federal courts use a " 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." (quoting *Cullen*, 131 S.Ct. at 1403. In *Richter*, —— U.S. ——, ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624, addressing the *Strickland* standard and its relationship to the AEDPA, the Supreme Court explained:

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland* ], 466 U.S. at 688[ ]. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional

assistance. *Id.*, at 689[ ]. The challenger's burden is to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687[ ].

**\*24**  With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* at 693[ ]. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687[ ].

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. [356, 371], 130 S.Ct. 1473, 1485[ ] (2010).... Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge..... The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom." *Strickland*, 466 U.S., at 690.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [because] the standards created by *Strickland* and § 2254(d) are both "highly deferential" ... and when the two apply in tandem, review is "doubly" so.... Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. (some internal citations omitted).

1. *Refusal to File a Motion to Withdraw Petitioner's Guilty Plea* [31]

[31]  In his Traverse, Petitioner denies he is challenging Adinolfi's refusal to move to withdraw his guilty plea under Indictment No. 98–82 in habeas proceeding No. 9:10–CV–1240. (Dkt. No. 50 at 48.) Because of Petitioner's *pro se* status and

because the claim was raised on Petitioner's direct appeal, the Court nonetheless considers it.

Adinolfi refused Petitioner's request to file a motion to withdraw his guilty plea and for Judge Smith's recusal on Indictment No. 98–82 because in his opinion, the motion would be frivolous. (Dkt. No. 46–1 at 36–37.) Effective assistance of counsel does not require the filing of every possible motion, rather only those that have a solid foundation. *United States v. Nersesian,* 824 F.2d 1294, 1322 (2d Cir.1987). "Counsel is certainly not required to engage in the filing of futile or frivolous motions." *Id.; see also Aparicio v. Artuz,* 269 F.3d 78, 99 (2d Cir.2001) ("The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled.") (quoting *Strickland,* 466 U.S. at 690) (additional citation omitted); *United States v. Caputo,* 808 F.2d 963, 967 (2d Cir.1987) (holding that "trial counsel.. exercised sound professional discretion by declining to make a plainly frivolous suppression motion"); *Bristol v. Superintendent,* No. 9:04–CV–1230 (FJS), 2008 WL 2097160, at *14, 2008 U.S. Dist. LEXIS 40388, at *43 (N.D.N.Y. May 19, 2008) (counsel's performance cannot be deemed deficient for failing to bring a frivolous motion).

**\*25** Unlike this Court, Adinolfi was involved in all of the relevant proceedings regarding Petitioner's guilty plea, had knowledge of non-record based matters, interacted with Petitioner and opposing counsel in connection to the guilty plea, and was present at the in-chambers conference in which Judge Smith allegedly made the threats that Petitioner contends forced him to plead guilty. Adinolfi was, therefore, in a better position than this Court to determine that the motion Petitioner wanted him to make to withdraw the guilty plea was frivolous. *See Richter,* 131 S.Ct. at 788 (explaining why counsel's knowledge of the relevant proceedings warrants a deferential standard of review of claims of ineffective assistance of counsel).

Furthermore, the state court record is devoid of evidence supporting Petitioner's conclusory assertion that Judge Smith issued threats that coerced him to plead guilty, or any other factually or legally supported rationale for allowing Petitioner to withdraw his guilty plea. In sum, the state court record supports a finding that "[Adinolfi] properly declined to join in [Petitioner's] *pro se* motion to withdraw his plea since the motion lacked merit, and appointment new counsel was not required." *See Hines v. Miller,* 318 F.3d 157, 161, 163 (2d Cir.2003) ("[T]he [Supreme] Court has never specifically addressed a claim ... that [a] petitioner

was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea ... or as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest [during a motion for plea withdrawal] adversely affected counsel's performance.") Therefore, applying the "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt," *Cullen,* 131 S.Ct. 1403, the Court recommends that Petitioner's claim that Adinolfi's refusal to join him in moving to withdraw his guilty plea violated his Sixth Amendment right to counsel be denied.

### 2. Ineffective Assistance of Counsel Claims that are Not Record Based

"To properly exhaust an ineffective assistance of trial counsel claim that relies on evidence outside the pretrial and trial record ... the petitioner must raise it as part of a motion to vacate judgment under CPL § 440.10 and then seek leave to appeal to the Appellate Division." [32] *Griffin v. Suffolk County,* No. 13–CV–4375 (JFB), 2013 WL 6579839, at *3, 2013 U.S. Dist. LEXIS 176421, at *7 (E.D.N.Y. Dec.16, 2013). Petitioner's counseled § 440.10 motion did not include a claim of ineffective assistance of counsel against Adinolfi regarding his representation of Petitioner on his guilty plea under Indictment No. 98–82, or Adinolfi's alleged failure to communicate with Petitioner after the plea was entered. (Dkt. No. 46–3 at 7–21.)

[32] Claims are record-based "when a reviewing court could conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts that would need to be developed through a post-conviction motion pursuant to CPL § 440.10." *Chatmon v. Mance,* No. 07–CV–9655 (KMK) (GAY), 2011 WL 5023243, at *9 n. 5, 2011 U.S. Dist. LEXIS 121453, at *26 n. 5 (Oct. 20, 2011) (citation and internal quotation marks omitted).

Inasmuch as those ineffective assistance claims were not raised in the § 440.10 motion and were not decided on the merits on Petitioner's direct appeal because they were not recordbased, *Carpenter,* 939 N.Y.S.2d at 660, Respondent is correct that the claims have not been exhausted. (Dkt. No. 44 at 34.) The Court also agrees with Respondent that those claims are not procedurally barred in state court. CPL § 440. 10, the proper vehicle for challenging ineffective assistance of counsel claims that rely on evidence outside the record, has no statute of limitations. *See Griffin,* 2013 WL 6579839,

at *3. Section 440.10(3)(c) does allows a state court to deny a motion to vacate a judgment where "[u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so." However, since denial is discretionary, the provision does not impose an absolute bar on successive motions. *See Bravo v. Unger,* No. 10 CV 5659(VB), 2014 WL 201472, at *3, 2014 U.S. Dist. LEXIS 6349, at *9 (S.D.N.Y. Jan.16, 2014). Therefore, however unlikely, it is not impossible that a state court would consider a § 440.10 motion regarding Petitioner's non-record based claims of ineffective assistance against Adinolfi.

**\*26** Even though Petitioner's claim may not be procedurally barred, because Petitioner cannot satisfy either prong of the *Strickland* standard, the claim is plainly without merit. Therefore, the Court has concluded that granting a stay of Petitioner's habeas proceeding so that he can attempt to exhaust the claim in a state court § 440.10 motion would be inappropriate. *See Rhines,* 544 U.S. at 277 (staying a mixed petition when unexhausted claims are "plainly meritless" is an abuse of discretion); *Gantt v. Martuscello,* No. 9:12–CV–657, 2014 WL 112359, at *7, 2014 U.S. Dist. LEXIS 183258, at *18 (N.D.N.Y. Jan.10, 2014) (an unexhausted claim that is not procedurally barred because it could be presented in a state court § 440.10 motion should be dismissed if it is without merit rather than allowing a petitioner to pursue it).

In his plea allocution, Petitioner answered in the affirmative when asked if he was satisfied with the services of his counsel, stated under oath that he was pleading guilty freely and voluntarily and that no one had forced or coerced him into it, and admitted his guilt. (Dkt. No. 46–1 at 28.) *See Blackledge,* 431 U.S. at 74.

On his direct appeal, Petitioner argued that Adinolfi had rendered ineffective counsel by advising him to accept the plea agreement under Indictment No. 98–82 because of Judge Smith's threats. (Dkt. No. 46–3 at 247–48.) However, Petitioner's brief contains no citation to the record supporting the claim that Adinolfi advised him to plead guilty. *Id.* at 1–61. In his Amended Petition and supporting Memorandum of Law in proceeding No. 9:10–CV–1240, Petitioner claims that Adinolfi quit on him after relaying Judge Smith's threats, despite Petitioner begging him to defend him at trial, leaving Petitioner to fend for himself with regard to the guilty plea. (Dkt. Nos. 35 at 5; 35–1 at 12.) In his Traverse, Petitioner contends that Adinolfi forced him to plead guilty. (Dkt. No. 50 at 44.) Neither claim finds support in the state court record.

In fact, Petitioner's non-record based claims that Adinolfi either advised or forced him to plead guilty are contradicted by Petitioner's August 18, 2000, affidavit in support of his *pro se* motion to withdraw his guilty plea under Indictment No. 98–82. In the affidavit, Petitioner wrote that "[c]ommendably, my attorney worked extremely hard on the defense of this case and I do not think he wanted me to plead guilty, however, he was duty-bound to convey to me what the Court had said. He left the decision up to me but I was *scared to death* of serving *life in prison* for crimes that I did not commit." (emphasis in original). (Dkt. No. 46–1 at 65.) *See Harris v. Hulihan,* No. 11 Civ. 3019(RA) (NIHD), 2012 WL 5265624, at *14, 2012 U.S. Dist. LEXIS 152361, at *38 (S.D.N.Y. Aug. 8, 2012) ("any advice about the likelihood of prevailing at trial is an important part of the decision-making process related to a plea offer.").

**\*27** Petitioner's non-record based claim that Adinolfi quit on him at the time of the plea on July 31, 2000, is also contradicted by the state court record. Petitioner's August 14, 2000, letter to Adinolfi asking him to prepare a motion to vacate the guilty plea reveals that Petitioner still considered Adinolfi to be his counsel after the guilty plea. *Id.* at 36. In addition, Petitioner's August 17, 2000, letter to Judge Smith identifies Adinolfi as his counsel on Indictment No. 98–82. *Id.* at 38. Although Adinolfi declined to make the motion, the letters clearly contradict Petitioner's claim that Adinolfi quit representing him on the day of the plea. *Id.* at 37.

Even if Adinolfi did advise Petitioner to plead guilty, Petitioner has failed to establish that Adinolfi's representation in connection with his guilty plea fell below an objective standard of reasonableness, *see Strickland,* 466 U.S. at 687–88, because under the circumstances, the plea bargain was quite favorable to Petitioner. Petitioner had been indicted on multiple counts under Indictment No. 98–82, and his plea bargain allowed him to plead to only one charge, almost certainly reducing the prison sentence that would have been imposed had he gone to trial and been convicted on all counts. (Dkt. No. 46–3 at 253–55.) In addition, the plea bargain allowed Petitioner to serve his sentence concurrently with the four to twelve year sentence he was already serving on the probation violation and his sentence under Indictment No. 99–112. *See Belle v. Superintendent,* No. 9:11–CV–0657 (NAM), 2013 WL 992663, at * 13, 2013 U.S. Dist. LEXIS 33481, at *36–37 (N.D.N.Y. Mar.13, 2013) (the highly favorable outcome as a result of the plea agreement was found to belie petitioner's ineffective assistance claims).

Finally, even assuming, *arguendo,* that Adinolfi's performance fell below an objective standard of reasonableness, habeas relief would not be warranted because of Petitioner's failure to show prejudice. "In the context of a guilty plea, the defendant must show a reasonable possibility that but for counsel's errors the outcome would have been different—*i.e.,* the accused would not have pled guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence." *Belle,* 2013 WL 992663, at * 13 (citing *Hill v. Lockhart,* 474 U.S. 52, 59–60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Plea negotiations had been ongoing between Adinolfi and the prosecution prior to the time Petitioner pleaded guilty, and Petitioner's guilty plea was not significantly different than the plea proposal to which Carpenter had agreed according to Adinolfi's June 1, 2000, letter to ADA Franklin. (Dkt. No. 46 at 240, 242.) Furthermore, while conviction may not have been certain, the finding of Petitioner's sperm on the victim's underwear does not allow for a finding that he would likely have been acquitted, or would have received a more favorable sentence. Moreover, there is no indication in the state court record that even if Adinolfi did fail to communicate adequately with Petitioner following his guilty plea, that failure prejudiced Petitioner in any way.

**\*28** In light of the foregoing, the Court recommends that Petitioner's unexhausted ineffective assistance of counsel claims relating to Adinolfi's representation on Indictment No. 98–82 be dismissed as entirely without merit.

### D. Claim that Judge Smith Lacked Jurisdiction to Require Petitioner to Withdraw His Motion to Withdraw his Guilty Plea Under Indictment No. 99–112

In his counseled § 440.10 motion, denied by Judge Ames, Petitioner argued that because the order of assignment from the Sixth Judicial District assigned Judge Smith to act as the County Court Judge solely for the purpose of handling Indictment No. 98–82, Judge Smith went beyond his geographic jurisdiction in requiring Petitioner to withdraw his pending motion to withdraw his guilty plea under Indictment No. 99–112 as a part of his plea agreement under Indictment No. 98–82. (Dkt. No. 46–3 at 15–18.) Petitioner claims that, as a result, his guilty plea is null and void. *Id.*

Petitioner asserted the claim only in terms of state law, and Judge Ames, in rejecting the claim on the merits, gave no indication the federal constitution was implicated. (Dkt. No.

46–3 at 149.) Judge Ames found in the alternative that the claim was record based and should be raised on direct appeal. Petitioner did not include the claim on his subsequent direct appeal. *Id.* at 192–252.

Proper exhaustion requires that a prisoner alert the state court to the federal nature of a claim, so that the state courts will have a full opportunity to resolve any constitutional issues. *O'Sullivan,* 526 U.S. at 845. Since Petitioner presented the jurisdiction argument solely in state law terms, he failed to exhaust the claim for purposes of federal habeas review. Furthermore, the claim would be found procedurally barred by the state court because it is record-based, and Petitioner has offered no justification for his failure to raise it on the direct appeal. *See Perez,* 510 F.3d at 390 (when state court would find a petitioner's unexhausted claim to be procedurally barred, the federal habeas court should consider it to be procedurally defaulted .) Petitioner has not demonstrated cause for the default, since there is no apparent reason in the state court record why the claim could not have been raised on his direct appeal. *Coleman,* 501 U .S. at 750. In addition, Petitioner has failed to establish actual innocence. *See Sweet,* 353 F.3d at 141.

Petitioner's jurisdiction claim is also without merit. "A violation of [a state's] laws allocating ... jurisdiction among its various counties does not create a federal constitutional issue. As we stated in *United States v. Mancusi,* 415 F.2d 205, 209 (2d Cir.1969), 'no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from provisions of state law.' "[33] *United States ex rel. Roche v. Scully,* 739 F.2d 739, 741–42 (2d Cir.1984). Therefore, Judge Ames determination of Petitioner's jurisdictional claim on the merits was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and the Court recommends that Petitioner's jurisdiction claim be denied.

[33]    New York State Constitution Art. 6, § 11(a) provides in relevant part that "[t]he county court shall have jurisdiction ... over all crimes and other violations of law," thus giving Judge Smith subject matter jurisdiction over the criminal indictments at issue. Art. 6, § 26(c) provides that "a judge of the county court may perform, the duties of his office or hold court in any county and may be temporarily assigned ... to the county court ... in any county outside the city of New York...." Judge Smith was temporarily assigned to Cortland County to

handle Indictment No. 98–82. Judge Ames noted in deciding Petitioner's § 440.10 motion that it was not unusual to settle multiple indictments in a comprehensive plea agreement even when the indictments involved different courts and different judges, and the fact that Petitioner withdrew his pending motion under Indictment No. 99–112 as a part of his plea under Indictment No. 98–82 did not mean that Judge Smith assumed jurisdiction over Indictment No. 99–112. (Dkt. No. 46–3 at 149.)

### E. Claim that the Prosecutor Used Improper Inducements to Convince Petitioner to Plead Guilty on Indictment No. 99–112

**\*29** Petitioner claims that the prosecutor used improper promises as inducements to convince him to accept a plea agreement under Indictment No. 99–112 in violation of his due process rights under the Federal Constitution. (Dkt. Nos. 35 at 6; 35–1 at 18–22.) The plea agreement provided for a three year determinate sentence and five years of post-release supervision. (Dkt. Nos. 46 at 226; 46–1 at 264.) Petitioner contends he was told that both the three year determinate sentence and the five year post-release supervision would run concurrently with the four to twelve year sentence he was serving for the probation violation and whatever sentence was imposed under Indictment No. 98–82, with the post-release supervision period beginning after three years even if he were still incarcerated. (Dkt. Nos. 35 at 6; 46–1 at 320.) Petitioner later learned that under New York law, the post-release supervision period would not commence until he was released from incarceration.[34] (Dkt. No. 46–1 at 319–321.) Petitioner's claim spills over to Indictment No. 98–82 by virtue of his assertion that when Judge Smith discussed the requirement that Petitioner withdraw his motion to withdraw his guilty plea under Indictment No. 99–112, he promised Petitioner that his sentence under that indictment would be three years determinate without a five year period of post-release supervision. *Id.* at 20–21.

[34]     In his Memorandum Decision and Order in Petitioner's New York Civil Practice and Rules Article 78 proceeding challenging DOCCS' calculation of his sentence providing for the post-release supervision period to commence after Petitioner's release from prison, Acting Supreme Court Justice Mark H. Fandrich denied the petition on the grounds that under Penal Law § 70.30(1) (a), concurrent sentences are not served separately but made into one single indeterminate sentence,

and pursuant to Penal Law § 70.45(5)(a), post-release supervision begins upon a person's release from imprisonment. (Dkt. No. 46–1 at 319–21.) The Appellate Division affirmed in *Carpenter v. Corcoran,* 75 A.D.3d 1110, 903 N.Y.S.2d 291 (4th Dep't), *lv. denied,* 79 A.D.3d 698, 912 N.Y.S.2d 291 (2010).

Petitioner did not raise the post-release supervision claim on his direct appeal. (Dkt. No. 46–3 at 192–252.) Petitioner did, however, raise the claim with regard to both indictments in his counseled § 440.10 motion. Respondent has argued that Petitioner failed to exhaust his postrelease supervision claim because the claim was asserted solely in state law terms. (Dkt. No. 44 at 32.) While it is true that Petitioner's counsel cited only state court decisions, *People v. De Cresente,* 64 A.D.2d 746, 406 N.Y.S.2d 933 (3d Dep't 1978), one of those decisions, clearly employed a constitutional analysis, relying on the Supreme Court decision in *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), in which the Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Moreover, in his supporting affirmation, Petitioner's counsel, echoing *Santobello,* argued that "[w]here the Court is a party to the plea bargain agreement and the sentence promised is one in which the Court is 'powerless' to impose, the Defendant should be given the benefit of the promise or permitted to withdraw his plea." (Dkt. No. 46–3 at 14.)

Judge Ames concluded that Petitioner's argument with regard to his guilty plea and sentence on Indictment No. 99–112 had no merit because:

The transcript of the plea clearly shows that the Court said, "I am agreeing that I would go along with a determinate sentence of three years in a New York State correctional facility, with five years post-release supervision ... and that the *determinate sentence* would run concurrent with, meaning together, with the sentence you are currently serving on a probation violation" (Emphasis added). The Court promised that the three year *determinate sentence* would run concurrent, not that the five years post-release supervision would run concurrent. The defendant received his bargained for sentence and was not promised anything different.[35]

[35]     Judge Ames also found that with regard to the claim under Indictment No. 98–82, a § 440.10

motion was not the proper method of challenging the sufficiency of a plea made on the record. (Dkt. No. 46–3 at 149–50.) The Judge relied on CPL § 440.10(2)(c) which requires the court to deny a motion where sufficient facts appear on the record to have permitted an adequate review of the issue on appeal and the defendant unjustifiably failed to take or perfect an appeal. While the Second Circuit has held that a state court's reliance on CPL § 440.10(2)(c) constitutes an adequate and independent state ground precluding federal habeas review, *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997), because Petitioner's direct appeal was delayed for ten years through no apparent fault of his own, the Court finds that he has established cause for the procedural default, *see Coleman,* 501 U.S. at 750, and will consider Judge Ames' denial on the merits.

**\*30** *Id.* at 148–49; *see also* Dkt. No. 46 at 226.

The Judge also found to be without merit Petitioner's claim that his guilty plea under Indictment No. 98–82 should be vacated because Judge Smith promised a sentence of only three years determinate under Indictment No. 99–112. (Dkt. No. 46–3 at 148–49.) The claim was rejected on the merits based upon the fact that Judge Ames, who accepted Petitioner's guilty plea and imposed sentence under Indictment No. 98–82, had told Petitioner on the record in sentencing him under Indictment No. 99–112 that the sentence included a five year period of post-release supervision. *Id.* at 149.

There is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory post-release supervision before accepting a guilty plea. *See Facen v. Cully,* 787 F.Supp.2d 278, 284–85 (W.D.N.Y.2011); *Potter v. Green,* 04–CV–1343 (JS), 2009 WL 2242342, at *6, 2009 U .S. Dist. LEXIS 64230, at *19 (E.D.N.Y. July 24, 2009) ("[A]s indicated by several other district courts in this Circuit, there is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory PRS [post-release supervision] before accepting a guilty plea."); *see also Lockhart v. Chandler,* 446 F.3d 721, 724 (7th Cir.2006) ("There is no Supreme Court precedent for the proposition that a defendant must be advised of a term of MSR [mandatory supervised release] at the time he attempts to enter a plea of guilty. Quite the contrary, the Court has expressly declined to decide such an issue in the very similar context of parole. Therefore,

[petitioner] faces an impossible hurdle in showing the state contradicted, or unreasonably applied, clearly established federal law as determined by the Supreme Court because the Court has expressly declined to decide the issue.") (citing *Lane v. Williams,* 455 U.S. 624, 630 n. 9, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982) ("We do not decide whether, to establish such a constitutional violation, respondents must claim that they in fact did not know of the parole requirement at the time they pleaded guilty or that they would not have pleaded guilty had they known of this consequence.")).

Furthermore, the state court record, as Judge Ames indicated in his rejection of Petitioner's post-release supervision claim on the merits, does reveal that the Court clearly indicated to Petitioner that it was the three year determinate sentence under Indictment No. 99–112 that would run concurrently with the other sentences, not the five year post-release supervision sentence. (Dkt. No. 46 at 226.) Therefore, the state court record does not support Petitioner's claim that he was promised by Judge Ames that the post-release supervision period would commence running after three years even if he was still incarcerated, or that he was promised by Judge Smith that the post-release supervision period would not be a part of his sentence under Indictment No. 99–112.

**\*31** Given the absence of Supreme Court precedent supporting Petitioner's due process argument, and the state court record showing that Petitioner was not promised that the five year post-release supervision period imposed under Indictment No. 99–112 would run concurrently with his probation violation prison term, the Court recommends that Petitioner's post-release supervision claim be denied.

### F. Claim of Prosecutorial Misconduct on Indictment No. 98–82

Petitioner claims that the prosecutors delayed in turning over exculpatory evidence—hospital records that in Petitioner's eyes disproved penetration—which would have mandated an affirmance by the Appellate Division of Judge Avery's order dismissing the second degree rape claim against Petitioner in Indictment No. 98–82. [36] (Dkt. No. 35 at 4, 7–9.) Petitioner argues that the prosecutorial misconduct resulted in the violation of his due process rights under the Federal Constitution. *Id.* Petitioner did not include the claim in either his counseled § 440.10 motion or on his direct appeal. (Dkt. Nos. 46–3 at 3–21, 52–53; 46–3 at 192–252.) Therefore the claim is unexhausted. However, the claim may be deemed exhausted and procedurally defaulted because it is clear that

the state court would hold the claim procedurally barred. *See Perez,* 510 F.3d at 390.

36    The claim that the prosecution engaged in misconduct by delaying the production of the victim's hospital records that showed no evidence of penetration is record based, and Petitioner did not include the claim in his direct appeal. Petitioner moved for a *subpoena duces tecum* to obtain the Cortland Memorial Hospital records relative to the criminal charges. *Id.* at 69–71. ADA Franklin responded with a February 23, 2000, letter to Adinolfi informing him that she did not realize until she reviewed the motion for a *subpoena duces tecum* that he had not received the hospital records. *Id.* at 72. According to the letter, copies of the records were enclosed. *Id.* In an April 21, 2000, Decision and Order, Judge Avery issued the requested *subpoena duces tecum* to the hospital. *Id.* at 122–25. The records were also produced by Cortland Memorial Hospital on May 12, 2000. *Id.* at 126–33.

Even if Petitioner had exhausted his prosecutorial misconduct claim on the merits, federal habeas review would be precluded under *Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). In *Tollett* the Supreme Court "reaffirm[ed] the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process.[37] When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offence with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).]"[38] *See also Coward v. Bradt,* No. 9:11–CV–1362 (LEK/CFH), 2013 WL 6195751, at *15, 2013 U.S. Dist. LEXIS 168931, *32 (N.D.N.Y. Nov.27, 2013) (claim of prosecutorial misconduct prior to guilty plea barred under *Tollett); McCormick v. Hunt,* 461 F.Supp.2d 104, 111 (W.D.N.Y. Nov.20, 2006) ("[I]t is well-settled that '[a] defendant who pleads unconditionally guilty while represented by counsel may not assert independent claims relating to events that occurred prior to the entry of the guilty plea'") (quoting *United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996)).

37    The *Brady* trilogy includes *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

38    The evidence in the state court record supports the conclusion that failure to disclose the hospital records in a timely manner was an oversight rather than prosecutorial misconduct in any event. (Dkt. No. 46–72.)

Given the foregoing, the Court recommends that Petitioner's prosecutorial misconduct claim be denied

### G. Claim Regarding Petitioner's *Pro Se* Motion to Withdraw his Guilty Plea Under Indictment No. 98–82

**\*32** Petitioner's Amended Petition can be liberally construed to assert a claim that Judge Smith violated his right to due process by denying his motion to withdraw his guilty plea under Indictment No. 98–82 or, at the very least, by not holding an evidentiary hearing. (Dkt. Nos. 35 at 4; 35–1 at 3.) Petitioner asserted the claim on his direct appeal, arguing that the motion should have been granted, or at least a hearing should be held because of: "(1) his prompt request to withdraw the plea; (2) the threats made by Judge Smith that induced Mr. Carpenter's guilty plea; (3) his continuous statements of innocence; and (4) Mr. Adinolfi acted at cross-purposes with him with regard to this motion." (Dkt. No. 46–3 at 241.) The Appellate Division found that "the plea was properly entered and that County Court did not abuse its discretion in denying the motion to withdraw his plea without a hearing." *Carpenter,* 939 N.Y.S.2d at 660.

On his direct appeal, Petitioner failed to fairly present the federal constitutional nature of his claim, relying instead on state law.[39] Therefore, Petitioner's claim is unexhausted and procedurally defaulted, and Petitioner has failed to show cause for the default or actual innocence. *See Coleman,* 501 U.S. at 750.

39    Petitioner failed to cite federal or state cases employing constitutional analysis, failed to assert the claim in terms that called to mind a protected constitutional right, failed to allege a factual

2014 WL 4105398

pattern well within the mainstream of constitutional litigation. *See Daye,* 696 F.2d at 194.

The claim is without merit in any event. The Court has rejected Petitioner's claim that his plea under Indictment No. 98–82 was not voluntary, knowing, and intelligent, *see* Part III. A, *supra,* and relies upon the same reasoning in rejecting his claim with regard to his *pro se* motion to withdraw his guilty plea.[40] Furthermore, both federal and state precedent have established that a criminal defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea. *See Hines v. Miller,* 318 F.3d 157, 162 (2d Cir.2003) (collecting cases); *see also Reed v. Brown,* No. 10 Civ. 3072(PGG)(AJP), 2011 WL 498363, at *8–9, 2011 U.S. Dist. LEXIS 14147, at *31–36 (S.D .N.Y. Feb. 14, 2011) (collecting cases). The Court concluded in *Hines* that in light of the precedents, the failure to hold an evidentiary hearing on a motion to withdraw a guilty plea "does not offend a deeply rooted or 'fundamental' principle of justice." *Id.* at 162. *See Medina v. California,* 505 U.S. 437, 442–46, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) ("[W]e should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (citations and internal quotation marks omitted).

[40]    *See also United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at plea allocations are not sufficient grounds to withdraw the guilty plea."); *United States v. Bonilla,* 17 F. App'x 11, 13 (2d Cir.2000) ( "This Circuit has consistently affirmed denials of motions to withdraw guilty pleas when the defendant's allegations are directly contradicted by his clear statements at allocution that contained sufficient factual detail about the offense.") (citation and internal quotation marks omitted).

Under AEDPA's deferential standards and the Supreme Court's decision in *Medina,* the Appellate Division's determination on Petitioner's direct appeal that the County Court did not abuse its discretion in denying Petitioner's request for a hearing on his motion to withdraw his guilty plea was not an unreasonable application of clearly established federal law. Therefore, the Court recommends that Petitioner's claim that denial of a hearing violated his due process rights be denied.[41]

[41]    In his Amended Petition in No. 9:10–CV–1240, Petitioner also claimed that his constitutional rights were violated because Judge Ames failed to hold a hearing on his postconviction counseled § 440.10 motion that would have allowed Petitioner to question Adinolfi about the off-record events that led to his involuntary guilty plea under Indictment No. 98–82. (Dkt. No. 35–1 at 4.) However, the Petitioner's claim that his guilty plea under that indictment was not voluntary or knowing involved the five years of post-release supervision, which was record based. (Dkt. No. 46–3 at 18–20.) Since that claim was record based, there would have been no need for Adinolfi's testimony on a § 440.10 motion. *See also* Part IV. A, *infra,* supporting denial of the claim.

## IV. ANALYSIS OF CLAIMS ASSERTED BY PETITIONER IN NO. 9:12–CV–957

**\*33** In his Petition in No. 9:12–CV–957, Petitioner claims that his guilty plea was not voluntary, knowing, and intelligent because he was coerced to plead guilty by Butler; that he was denied effective assistance of counsel in connection with the guilty plea for the same reason; that he was improperly denied a hearing on his § 440.10 motion; and that the Appellate Division effectively overruled Judge Ames' denial of a hearing on Petitioner's § 440.10 motion,[42] erred in failing to recognize that Petitioner had filed a § 440.10 motion, and erred in failing to decide his plea-coercion and ineffective counsel claims even though Petitioner had preserved his claims by bringing a § 440.10 motion to vacate his guilty plea.[43] (No. 9:12–CV–957, Dkt. Nos. 1 at 4–5; 1–2 at 6–7, 21–22, 25–26, 30.)

[42]    Although the Appellate Division found that Petitioner's coercion and ineffective assistance of counsel claims which implicated matters outside the record were more properly addressed in a § 440.10 motion, there is no language in the Court's decision either explicitly or impliedly overruling Judge Ames' denial of a request for a hearing. *See Carpenter* 93 A.D.3d 950, 939 N.Y.S.2d 658. In fact, Judge Ames' denial of Petitioner's § 440.10

motion was not before the Appellate Division for review on the direct appeal. *See People v. Finn,* 63 A.D.3d 755, 879 N.Y.S.2d 720 (2d Dep't 2009).

43 Even if Petitioner were correct in his claim that the Appellate Division erred in finding that he had not moved to vacate the judgment of conviction, and thus erroneously applied New York law with respect to the preservation rule, habeas relief does not lie for mere errors of state law that do not otherwise constitute a violation of federal law. *See Swarthout,* 131 S.Ct. at 861. Such errors must rise to the level of the federal constitution or federal law for habeas relief to lie. Petitioner's claim is without merit in any event. The non-record challenges to his guilty plea and legal representation in his § 440.10 motion were not before the Appellate Division on the direct appeal, and the record on that appeal would not have placed the Appellate Division on notice of the § 440.10 motion, on which the Appellate Division had previously denied leave to appeal. *See Finn,* 879 N.Y.S.2d at 720 (finding defendant's challenge to her guilty plea was unpreserved because she had failed to move to withdraw the plea prior to sentencing even though she had made a § 440.10 motion to vacate the judgment of conviction because that motion was not properly before the Appellate Division on the direct appeal). Furthermore, since the Petitioner was statutorily foreclosed from obtaining review of record based claims on his § 440.10 motion, see CPL § 440.10(2), that motion would not have given the state courts "one full opportunity" to resolve the Petitioner's record based claims of plea coercion and ineffective assistance of counsel as required for exhaustion. *See O'Sullivan,* 526 U.S. at 845. In addition, because Petitioner failed to include the claimed errors by the Appellate Division in his application for leave to appeal to the Court of Appeals, those claims are unexhausted, and Petitioner has failed to show good cause for failure to exhaust or actual innocence. *See DeLee v. Graham,* No. 9:11–CV–653 (MAD/CFH), 2013 WL 3049109, at *7, 2013 U.S. Dist. LEXIS 84519 ( N.D.N.Y. June 17, 2013) (claims petitioner failed to include in his application for leave to appeal to the Court of Appeals are unexhausted).

**A. Petitioner's CPL § 440.10 Motion**

In his counseled § 440.10 motion to vacate his guilty plea under Indictment No. 00–112, made by Petitioner prior to the perfection of his direct appeal, he asserted a claim that his guilty plea was not knowing and voluntary inasmuch he was coerced by Butler to make admissions and plead guilty. [44] (Dkt. No. 46–3 at 11–12.) Petitioner alleged that in non-record communications prior to the plea, Butler told him that because he owed Butler money and could not complete payments under the retainer agreement, Butler would not represent him zealously, would not prepare adequately, and would not provide a reasonable defense if the case went to trial. (Dkt. No. 46–3 at 52.) Judge Ames declined to hold an evidentiary hearing and denied the motion. *Id.* at 148, 150. The Appellate Division denied leave to appeal. [45] *Id.* at 188. One of the grounds asserted by Petitioner in his habeas Petition in No. 9:12–CV–957 is that his § 440.10 motion was improperly denied because Judge Ames declined to order a hearing on the non-record communications between Butler and Petitioner that coerced Petitioner to plead guilty under Indictment No. 99–112. [46] (No. 9:12–CV–957, Dkt. No. 1 at 5.) Respondent concedes that Petitioner has exhausted his claim that his guilty plea under Indictment No. 99–112 was not voluntary, knowing, and intelligent. (Dkt. No. 44 at 31.)

44 The § 440.10 motion can also be liberally construed to assert an ineffective assistance of counsel claim intertwined with Petitioner's coercion claim. However, the ineffective counsel claim was not fairly presented as a federal claim and, as argued by Respondent, is unexhausted. (Dkt. No. 44 at 34–35. *See Gantt,* 2014 WL 112359, at *9 (failure to exhaust ineffective assistance of counsel claim where petitioner did not employ a federal constitutional analysis or cite federal cases employing relevant constitutional analysis). The claim is, in any event, without merit given Petitioner's plea allocution indicating he was satisfied with Butler and the lack of evidence in the state court record showing that Butler's representation fell outside of "the wide range of professionally competent assistance" to which Petitioner was entitled. *Strickland,* 466 U.S. at 690. Furthermore, the highly favorable outcome as a result of the plea agreement—allowing a guilty plea to only one of four charges and a concurrent sentence—belies Petitioner's claim of ineffective counsel. *See Belle,* 2013 WL 992663, at * 13.

45      "Although New York's Criminal Procedure Law does not provide for an appeal as a matter of right from a decision denying a motion pursuant to Section 440.10, an aggrieved defendant can apply for leave to appeal from such a decision to the Appellate Division." *Diaz v. Conway,* No. 04 Civ. 5062(RMB)(HBP), 2008 WL 2461742, at * 16, 2008 U.S. Dist. LEXIS 46808 (S.D.N.Y. June 17, 2008). As a matter of federal constitutional law, there is no right to appeal from collateral criminal proceedings such as a § 440.10 motion. *See, e.g., Murray v. Giarratano,* 492 U.S. 1, 10, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989).

46      Butler has also asserted a claim that he was unconstitutionally denied a hearing on the § 220.60(3) motion in Indictment No. 99–112 that he withdrew as a part of his guilty plea under Indictment No. 98–82. (Dkt. No. 1 at 5.) Since the Court has recommended that Petitioner's coercion and ineffective assistance claims with regard to Indictment No. 98–82 be denied, it finds that the withdrawal of his motion to withdraw his guilty plea moots his claim regarding his § 220.60(3) motion. *See also Hines,* 318 F.3d at 162 (both federal and state precedent have established that a criminal defendant is not entitled as a matter of right to an evidentiary hearing as a motion to withdraw a guilty plea).

In *Word v. Lord,* 648 F.3d 129, 132 (2d Cir.2011), the Second Circuit held that "alleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief." [47]  *See Lackawanna County Dist. Attorney v. Coss,* 532 U.S. 394, 402, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) (holding that the Constitution does not compel states to provide post-conviction proceedings for relief).

47      Before, *Lord,* a number of district courts in the Second Circuit had concluded that "habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings." *Jones v. Duncan,* 162 F.Supp.2d 204, 217–18 (S.D.N.Y.2001) (denying habeas relief on a claim that the trial court failed to hold an evidentiary hearing); *see also, e.g., Ferrer v. Superintendent,* 628 F.Supp.2d 294, 309

(N.D.N.Y.2008) ("Federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.")

In *Lord,* the Court also acknowledged that a majority of its sister courts had accordingly concluded that procedural errors in state post-conviction proceedings do not provide a basis for redress. *Id. See, e.g., Lawrence v. Branker,* 517 F.3d 700, 717 (4th Cir.2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error in state post-conviction proceedings represent an attack on a proceeding collateral to detention and not the detention itself."); *Bell–Rey v. Roper,* 499 F.3d 752, 756 (8th Cir.2007) ("Because the Constitution does not guarantee the existence of state post-conviction proceedings ... an infirmity in a state post-conviction proceeding does not raise an issue cognizable in a federal habeas application.") (citations and internal quotation marks omitted).

   **\*34**  A number of district courts in this Circuit have relied upon *Lord* in ruling that claims that a trial court erred in not granting a hearing on a post-conviction motion do not implicate federal law and are not cognizable for habeas review. *See Simpkins v. New York,* No. 13–CV–3228 (JG), 2013 WL 2948082, at *1, 2013 U.S. Dist. LEXIS 83998, at *2 (E.D.N.Y. June 14, 2013) (claim that petitioner was denied "fair process" on his application for a writ of *coram nobis* is not proper under § 2254, which is not a vehicle for challenging deficiencies in state court post-conviction proceedings); *Peters v. Poole,* No. 03–CV–2919 (ARR), 2013 WL 6048994, at *11, 2013 U.S. Dist. LEXIS 162231, at *29–30 (E.D.N.Y. Nov.13, 2013) (finding petitioner's claim that summarily denying his request for a hearing on his ineffective assistance of counsel claim in a § 440.10 motion violated his due process rights in a state post-conviction proceeding not cognizable on federal habeas review); *Smalls v. Bradt,* No. 11–CV–0915 (MAT), 2012 WL 3722222, at *10, 2012 U.S. Dist. LEXIS 121419, at *31 (W.D.N.Y. Aug.27, 2012) (petitioner's claim that state court erred in denying his request for a hearing on his CPL § 330.30 state postconviction motion does not implicate federal law and is not cognizable for habeas review); *Strong v. Warden, Attica Correctional Facility,* No. 10 CV 3452(MKB), 2012 WL 1886957, at *5, 2012 U.S. Dist. LEXIS 72114, at *15–16 (E.D.N.Y. May 22, 2012) (petitioner's claim of a procedural right to a hearing on a post-conviction motion under CPL § 330.30 does not implicate federal law and is not cognizable for habeas review).

Those decisions all appear to assume that denial of a hearing on § 440.10 is a procedural determination. There is, however, a split among district courts in the Second Circuit as to whether denial of a hearing on a § 440.10 motion is procedural, in which case under *Lord,* Petitioner's claim would not be cognizable for habeas review, or constitutes a determination on the merits for purposes of habeas review. In *Garcia v. Portuondo,* 104 F. App'x 776, 779 (2d Cir.2004), an unreported decision without precedential value, the Second Circuit held that the state court's refusal to hold a hearing on the defendant's § 440.10 motion was a determination on the merits and, therefore, not procedurally barred as an "independent and adequate state procedural ground" preventing habeas review absent a showing of cause and prejudice. *Id.* at 778. The Court's determination was based upon CPL § 440.30(4)(c), which provides that a court presented with a motion to vacate a judgment pursuant to § 440.10, "[u]pon considering the merits of the motion, ... may deny it without conducting a hearing if ... [a]n allegation of fact essential to support the motion is conclusively refuted by unquestionable documentary proof." CPL § 440.30(4)(c) (2005).

District courts are divided as to whether denial of § 440.10 motion under § 440.30(4)(b) also constitutes a determination on the merits. Section 440.30(4)(b), which although not specifically cited in Judge Ames decision denying Petitioner's motion appears applicable, provides that "[u]pon considering the merits of the motion, the court may deny it without conducting a hearing if ... the motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts, as required by subdivision one." CPL § 430.30(4)(b) (2005). *See, e.g., Giraldo v. Bradt,* No. 11–cv–2001 (JFB), 2012 WL 3835112, at *8–9, 2012 U.S. Dist LEXIS 126083, at *25–26 (E.D.N.Y. Sept. 5, 2012) (applying the reasoning in *Garcia* to denial of a § 440.10 motion under § 440.30(4)(b) and finding denial of a hearing to be a determination on the merits); *Williams v. Duncan,* No. 9:03–cv–568 (LEK/RFT), 2007 WL 2177075, at *14, 2007 U .S. Dist. LEXIS 103100, at *40 (N.D.N.Y. July 27, 2007) (holding that because "section 440.30(4) applies, by its own terms, only when a trial court denies a motion to vacate '[u]pon a consideration of the merits,' a denial pursuant to CPL § 440.30(4) is a decision on the merits."); *compare Williams v. McGinnis,* No. 04 Civ 1005(NGG), 2006 WL 1317041, at *10, 2006 U.S. Dist. LEXIS 29400, at *31 (E.D.N.Y. May 15, 2006) (holding that denial under § 440.30(4)(b) would be an independent and adequate state

law procedural grounds due to the inadequacy of petitioner's papers).

**\*35** In this case, because Petitioner's claim that his guilty plea under Indictment No. 99–112 plea was not voluntary, knowing, and intelligent, and his related ineffective assistance of counsel claim with it, fail on both procedural [48] and substantive grounds, it is not necessary for the Court to take a position on the issue of whether denial of a hearing is procedural or on the merits. *See White v. West,* No. 04–CV–2886 (RRM), 2010 WL 5300526, at *24, 2010 U.S. Dist. LEXIS 128500, at *69 (E.D.N.Y. Dec.6, 2010) (court found it unnecessary to take a position on the issue because petitioner's claim failed on both procedural and substantive grounds).

[48]    If Petitioner's hearing claim is deemed procedural, it fails under *Lord,* 648 F.3d at 132.

The evidence submitted by Petitioner in support of the claim that he was coerced by Butler to plead guilty under Indictment No. 99–112 and essentially abandoned by Butler, was limited to his self-serving affidavit and a letter affidavit from his grandmother who had personal knowledge of the financial situation with Butler, but no personal knowledge of Butler's alleged coercion. [49] (Dkt. No. 46–3 at 52–53, 55–56.) Thus, the moving papers failed to include "sworn allegations substantiating or tending to substantiate all the essential facts," CPL § 440.30(4)(b), lending support to Judge Ames' denial of the motion on the merits without a hearing.

[49]    Petitioner has submitted a report by a Robert Frost, allegedly retained by the Public Defender's Office, regarding an interview with a corrections officer at Cayuga Correctional Facility in which the officer claimed to have overheard an argument between Petitioner and Butler when he was transporting Petitioner to court. (Dkt. No. 1–4 at 17.) The report does not appear to have been a part of the state court record and may, therefore, not be considered by the Court. *See Cullen,* 131 S.Ct. at 1398–1401. The report is not particularly probative in any event.

Moreover, Petitioner's affidavit, accusing Butler of coercing him to plead guilty, directly contradicts his plea allocution. In his plea allocution before Judge Ames, Petitioner acknowledged that he was ready to enter a guilty plea to Sexual Abuse in the First Degree and answered Judge Ames' questions in the following manner:

Court: Have you discussed this plea with your attorney?

Defendant: Yes, your honor.

Court: Are you entering this plea with his advice and consent?

Defendant: Yes.

Court: Are you satisfied with the services provided to you by Mr. Butler?

Defendant: Yeah.

\* \* \*

Court: Is there any reason why you do not understand what's happening here today?

Defendant: No.

Court: Do you understand if you enter this plea you are confessing your guilt to this charge?

Defendant: Yes, your Honor.

Court: This is a class D violent felony offense, do you understand that?

Defendant: Yeah, I'm aware of that.

Court: ... I am agreeing that I would go along with a determinate sentence of three years in a New York state correctional facility, with five years postrelease supervision ... and that that determinate sentence would run concurrent with, meaning together with the sentence you are currently serving on a probation violation.

\* \* \*

Court: Have any other promises been made to you other than what's been put on the record here today?

Defendant: No.

\* \* \*

Court: Do you understand by pleading guilty you are giving up your right to have a jury trial?

Defendant: Yes.

Court: ... Do you understand if I accept your plea of guilty you can't raise any of [your] defenses either to the court or to the jury, do you understand that?

**\*36** Defendant: Yes.

Court: You can't come back here in three or four weeks and say "I changed my mind, I now want to have a trial and assert defenses I want the jury or the court to hear," do you understand that?

Defendant: I understand that.

Court: Has anyone threatened you to get you to plead guilty today?

Defendant: No, your Honor.

Court: Are you pleading guilty to this crime of your own free will?

Defendant: Yeah.

(Dkt. No. 46–3 at 47.) During the plea allocution Petitioner admitted to having tied his estranged wife's hands behind her back against her will and having engaged in sexual intercourse with her. *Id.* at 44–45.

As previously noted, sworn statements made by a defendant in entering a plea carry a "strong presumption of verity," *Blackledge,* 431 U.S. at 74, and "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *Torres,* 129 F.3d at 715. At his plea allocution, Petitioner expressed satisfaction with Butler's legal representation and clearly answered no when Judge Ames asked him if anyone had threatened him to get him to plead guilty.

In addition, the guilty plea entered into by Petitioner was favorable to him. Plaintiff was indicted on four felonies under Indictment No. 99–112 and was allowed to plead guilty to only one. (Dkt. No. 46 at 152–55.) He was also allowed to serve the three year sentence imposed concurrently with his sentences for probation violation and under Indictment No. 98–82.

Finally, even after Butler was replaced by Adinolfi, and Petitioner's motion to withdraw his guilty plea under Indictment No. 99–112 was awaiting a hearing before Judge Ames, Petitioner agreed to withdraw his motion to withdraw his guilty plea as a part of his guilty plea under Indictment

No. 98–82. (Dkt. No. 46–1 at 17–19.) The Court has already recommended rejection of Petitioner's claims that his guilty plea under Indictment No. 98–82, including the withdrawal of his motion, was not voluntarily, knowingly, and intelligently and was not made with the effective assistance of Adinolfi as counsel.

In light of the foregoing, the Court concludes that there is nothing in the state court record or applicable law that would render Judge Ames' decision on Petitioner's § 440.10 motion so erroneous that "there is no possibility fairminded jurists could disagree it conflicts with [the Supreme] Court's precedents," *Richter,* 131 S.Ct. at 786, as to either the voluntary nature of Petitioner's guilty plea or the effectiveness of Butler's representation. Therefore, the Court recommends that Petitioner's claim that his guilty plea under Indictment No. 99–112 was not voluntary, knowing and intelligent be denied, and to the extent his § 440.10 motion can be construed to assert an ineffective assistance of counsel claim, that claim be denied as well.

### B. Petitioner's Direct Appeal
**\*37** Among the claims raised by Petitioner on his direct appeal included that his guilty plea under Indictment No. 99–112 was not voluntary, knowing, and intelligent because he was coerced to plead guilty by Butler, and that Butler had provided ineffective assistance of counsel with regard to the plea. *Id.* at 193. The claims were based upon essentially the same factual allegations as Petitioner's § 440.10 motion. The Appellate Division found the claims were unpreserved for review on the appeal because Petitioner had withdrawn his motion to withdraw his guilty plea and had not moved to vacate the judgment of conviction. *Carpenter,* 939 N.Y.S.2d at 660. The Court also concluded that the factual basis of Petitioner's claim that Butler failed to adequately communicate with him and coerced him into pleading guilty involved matters outside of the record and was not properly the subject of a direct appeal.[50] *Id.* at 660–61.

[50]     Respondent has conceded that Petitioner exhausted his claim that his guilty plea was not knowingly, voluntarily, and intelligently made because it was coerced by Butler. (Dkt. No. 44 at 31.) Respondent asserts, however, that because the Appellate Division found that Petitioner's ineffective assistance of counsel claim involved matters outside of the record and was, therefore, not properly the subject of a direct appeal, the claim is

unexhausted. *Id.* at 34–35. Petitioner's ineffective assistance argument is also likely not exhausted because on the direct appeal the argument was couched in state law terms and relied solely upon New York cases analyzing the claim under New York law and the New York Constitution, with no mention of the *Strickland* standards. *See generally* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Gantt,* 2014 WL 112359, r at \*9. Inasmuch as the claims are procedurally barred from federal habeas review in any event, the Court finds it unnecessary to engage in a detailed analysis of the exhaustion issue.

1. *Determination that Petitioner's Plea Coercion and Ineffective Assistance of Counsel Claims Were Not Preserved for Appellate Review*
It is well-settled that a petitioner's federal claim may be procedurally barred from federal habeas review if the state court resolved the issue on an "adequate and independent" state procedural ground.[51] *Coleman,* 501 U.S. at 729–33; *see also Cone,* 556 U.S. at 465. ("It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."); *Harris v. Read,* 489 U.S. 255, 260, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (when the state court has explicitly relied upon a procedural default to dispose of a claim, there is an "adequate and independent state ground" for the judgment and federal habeas review is prohibited").

[51]     In *Trevino v. Thaler,* —— U.S. ——, 133 S.Ct. 1911, 1917, 185 L.Ed.2d 1044 (2013), the Supreme Court noted its recognition in *Martinez v. Ryan,* —— U.S. ——, 132 S.Ct. 1309, 1315–16, 182 L.Ed.2d 272 (2012) of both the "historic importance of federal habeas corpus proceedings as a method for preventing individuals from being held in custody in violation of federal law," and the "importance of federal habeas corpus principles designed to prevent federal courts from interfering with a State's application of its own firmly established, consistently followed, constitutionally proper procedural rules."

A state procedural rule is considered adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999). To be

independent, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (internal quotation marks omitted).

The doctrine barring procedurally defaulted claims from being heard is not without exceptions and does not apply if the petitioner can show either: (1) "cause for the default and actual prejudice" attributed thereto; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. " 'Cause' requires a showing that 'some objective factor external to the defense impeded counsel's efforts to raise the claim in state court' or that the basis for a claim was not reasonably available to counsel." *Brown v. Bradt,* No. 11–CV–972 (GLS/CFH), 2013 WL 1636070, at *11, 2013 U.S. Dist. LEXIS 55058, at *33–34 (N.D.N.Y. Mar.25, 2013) (quoting *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 127 (2d Cir.1995)). Unless a petitioner establishes cause, the question of prejudice is not reached. *Cotto v. Herbert,* 331 F.3d 217, 242–43 (2d Cir.2003). To show prejudice, a petitioner must demonstrate that the error by the state court worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski,* 316 F.3d 147, 152 (2d Cir.2003) (internal quotation marks omitted). A fundamental miscarriage of justice involves showing that the petitioner is actually innocent of the crime. *Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir.2003).

**\*38** "In determining whether New York's preservation rule constitutes an adequate state ground, [courts] look to the state's statutes and case law interpreting the rule." [52] *Richardson v. Greene,* 497 F.3d 212, 218 (2d Cir.2007). New York courts have long relied on the preservation requirement to deny challenges to guilty pleas and claims of ineffective assistance of counsel. *See, e.g., People v. Pascale,* 425 N.Y.D.2d 547, 547 (1980) ("The argument that the defendant should be relieved of his guilty plea was not raised by motion in the court of first instance prior to conviction and therefore has not been preserved for our review."); *see also People v. Jones,* 114 A.D.3d 1080, 981 N.Y.S.2d 465 (3d Dep't 2014) (claim that guilty plea was coerced by court's alleged threat to defendant to illegally sentence him was unpreserved because he withdrew his motion to withdraw his plea and the record did not reveal that he moved to vacate the judgment); *People v. Hernandez,* 110 A.D.3d 919, 972 N.Y.S.2d 697, 698–99 (2d Dep't 2013) ("The defendant's contention that her

plea of guilty was not knowing, voluntarily, and intelligently entered into is unpreserved for appellate review, since she did not move to withdraw her plea on the ground prior to the imposition of sentence."); *People v. Bressard,* 112 A.D.3d 988, 976 N.Y.S.2d 302, 304 (3d Dep't 2013) (defendant's challenge to voluntariness of his guilty plea is unpreserved "because the record fails to indicate that he moved to withdraw his plea or vacate the judgment of conviction"); *People v. Carthage,* 85 A.D.3d 1198, 925 N.Y.S.2d 894, 895 (2d Dep't 2011) ("defendant's contention that his plea was not knowing, voluntary and intelligent is unpreserved for appellate review since he did not move to withdraw his plea on that ground prior to sentencing"); *People v. Finn,* 63 A.D.3d 755, 879 N.Y.S.2d 720, 720 (2d Dep't 2009) ("defendant's contention that his plea of guilty was not knowing, voluntary, and intelligent is unpreserved for appellate review since he did not move to withdraw his plea of guilty prior to sentencing"); *People v. Douglas,* 38 A.D.3d 1063, 831 N.Y.S.2d 585, 586 (3d Dep't 2007) ("Defendant's challenges to the validity of his plea and to the effectiveness of defense counsel's representation as it impacts the voluntariness of his guilty plea are unpreserved for our review given his failure to move to withdraw his plea or vacate the judgment of conviction.").

52    New York's preservation rule at CPL § 470.05(2) "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error ." *Richardson,* 497 F.3d at 218 (citation and internal quotation marks omitted)

Habeas courts in this Circuit have recognized that failure to move to withdraw a guilty plea or move to vacate a judgment of conviction constitutes an independent and adequate state procedural rule barring federal habeas review. [53] *See, e.g., Rojas v. Heath,* No. 11 Civ. 4322(CS)(PED), 2012 WL 5878679, at *7, 2012 U.S. Dist. LEXIS 166853, at *21 (S.D.N.Y. Oct. 18, 2012) (well-settled that preservation of challenges to the validity of a guilty plea for appeal in New York requires a motion to withdraw the plea or motion to vacate the judgment of conviction); *Garcia v. Boucaud,* No. 09 Civ. 5758(RJH)(GWG), 2010 WL 1875636, at *6, 2010 U.S. Dist. LEXIS 142951, at *18 (S.D.N.Y. May 11, 2010) (failure to withdraw a guilty plea before sentencing constitutes an independent and adequate ground for the state court decision); *Moore v. Lape,* No. 08–CV–0474 (MAT),

2014 WL 4105398

2010 WL 3522227, at *3, 2010 U.S. Dist. LEXIS 93372, at *7 (W.D.N.Y. Sept.8, 2010) ("[h]abeas courts in this Circuit held have held that the failure to move to withdraw a guilty plea before sentencing constitutes an adequate and independent state ground barring habeas review.").

53        As with state court decisions, some federal preservation decisions specify that under New York law challenges to guilty pleas must be made by a pre-sentence motion to withdraw the plea, while others require that guilty pleas be challenged in a motion to withdraw under CPL § 220.60(3) or a motion to vacate the judgment of conviction under CPL § 440.10.

**\*39** This Court too concludes that the Appellate Division determination that Petitioner failed to preserve his challenge to his guilty plea under Indictment No. 99–112 and his related ineffective assistance of counsel claim constitutes a procedural bar to habeas review of the claims by this Court absent a showing by Petitioner of cause for the default and prejudice or his actual innocence. The Court also finds that the Appellate Division did not apply the preservation rule in an exorbitant manner in this case. 54

54        In *Lee v. Kemna,* 534 U.S. 362, 376, 381, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002), the Supreme Court concluded that in a limited category of "exceptional cases," when the state appellate court has applied a firmly established and regularly followed procedural ground in an "exorbitant" manner, so that the application of the ground was inadequate, federal courts are not barred from reviewing such a claim on the merits. The Second Circuit, in *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003), identified the following three factors for consideration in making the determination: "(1) whether the alleged procedural rule was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied with the rule give the 'realities of trial.' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate state interest." The Court has considered these factors in concluding that the procedural bar was not exorbitant in this case.

Petitioner blames his failure to move to withdraw his guilty plea on his having been coerced by Judge Smith and Adinolfi into agreeing to withdraw his pending motion as a part of his plea agreement under Indictment No. 98–82, and on Adinolfi's ineffective assistance of counsel. However, the Court has rejected Petitioner's coercion claim under Indictment No. 98–82, as well as his claim that Adinolfi failed to provide effective assistance of counsel in connection with the plea, *see* Part III. A and C, *supra,* and likewise rejects the circumstances of Petitioner's guilty plea under that indictment as good cause for the default in moving to withdraw his guilty plea under Indictment No. 99–112. Furthermore, the Court finds that Petitioner has not provided evidence of his actual innocence. To the contrary, he admitted guilt in his plea allocution. (Dkt. No. 46–1 at 23–25.)

*2. Merits*
Were the Court permitted to address the merits of Petitioner's direct appeal claims of plea coercion and ineffective assistance of counsel, they would fail on the merits for the reasons set forth in Part IV. A, *supra.*

Therefore, the Court recommends that Petitioner's direct appeal claims be denied.

**ACCORDINGLY,** it is hereby

**RECOMMENDED** that Petitioner's Amended Petition for a Writ of Habeas Corpus in No. 9:10–CV–1240 (Dkt. No. 35) be **DENIED,** and it is further

**RECOMMENDED** that Petitioner's for a Writ of Habeas Corpus in No. 9:12–CV–957 (No. 9:12–CV–957, Dkt. No. 1) be **DENIED,** and it is further

**RECOMMENDED** that no certificate of appealability should be issued with respect to any of Petitioner's claims in Nos. 9:10–CV–1240 and 9:12–CV–957 as he has not made "a substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2). *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000); and it is hereby

**ORDERED** that the Clerk's Office provide Petitioner with copies of all unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,*

984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**\*40** Filed March 28, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4105398

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.